RUBEN FEBO JR #BHH44H
SANTA RITA JAIL - 2FS
5325 BRODER BLVD.
DUBLIN, CA. 94568

PLAINTIFF, PRO SE,

**FILED**

FEB 14 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

1

2

3 | RUBEN FEBO JR,

4 |      PLAINTIFF,

5 | V.                      CV 19  803

                          CASE NO. _____  (PR)

6 | THE ALAMEDA COUNTY SHERIFF'S

7 | DEPARTMENT; ALAMEDA COUNTY              **COMPLAINT BY PRISONER**

8 | SHERIFF GREGORY J. AHERN;              **UNDER THE CIVIL RIGHTS**

9 | SANTA RITA JAIL CAPTAIN DAVID.         **ACT (§1983).**

10 | HESSELEIN; SANTA RITA JAIL

11 | SERGEANT JOHN CALEGARI;

12 | SANTA RITA JAIL DEPUTY JUSTIN

13 | LINN; SANTA RITA JAIL DEPUTY           **TRIAL BY JURY DEMANDED**

14 | ERIK MCDERMOTT; THE CRIMINAL

15 | JUSTICE MENTAL HEALTH SYSTEM;

16 | SANTA RITA JAIL PSYCHIATRIST

17 | JENNIFER CHAFFIN, MD.; SANTA

18 | RITA JAIL CLINICIAN JESSICA

19 | OSMOND; SANTA RITA JAIL CLINICIAN

20 | LEONICIA CASTRO; SANTA RITA

21 | JAIL CLINICIAN GUADALUPE YANEZ;

22 | SANTA RITA JAIL CLINICIAN ROBERT

23 | HEATH; THE CALIFORNIA FORENSIC

24 | MEDICAL GROUP SERVICES; SANTA RITA

25 | JAIL PHYSICIAN JOHN NIENOW, MD.;

26 | SANTA RITA JAIL MEDICAL DIRECTOR

27 | MARIA MAGAT, MD.; SANTA RITA JAIL

CIVIL RIGHTS COMPLAINT (§1983)                    PAGE 1 OF 162

FILED

FEB 14 2019

1  REGISTERED NURSE KATHERINE - )
2  MARIE CONOVER ; SANTA RITA JAIL )
3  REGISTERED NURSE GUADALUPE )
4  GARCIA ; SANTA RITA JAIL REGISTERED )
5  NURSE MICHELLE TADEO ; SANTA RITA )
6  JAIL LICENSE VOCATIONAL NURSE )
7  MELISSA BROWN ; SANTA RITA )
8  JAIL REGISTERED NURSE CHAGGER )
9  SUMEET ; SANTA RITA JAIL )
10 REGISTERED NURSE JULIE VALDEZ ; )
11 SANTA RITA JAIL NURSE PRACTICIONER )
12 BELKIS ZHONGLI ; SANTA RITA JAIL )
13 REGISTERED NURSE SUSANA OBISPO ; )
14 SUED IN THEIR INDIVIDUAL AND )
15 OFFICIAL CAPACITIES. )
16          DEFENDANTS, )
17 _____ )

18

19          COMES NOW, RUBEN ANTHONY FEBO JR # BEM444, PLAINTIFF PRO SE,
20 WHO REPRESENTS HIMSELF, PRESENTS THE FOLLOWING CIVIL RIGHTS COMPLAINT AND
21 CLAIM FOR COMPENSATORY , INJUNCTIVE , DECLATORY , ECONOMIC AND PUNITIVE
22 RELIEF AS FOLLOWS :

## I. INTRODUCTION

23

24          1. THIS PLACE ACTION BEFORE THE COURT IS A LAWSUIT INVOLVING
25 THE ALAMEDA COUNTY SHERIFF'S DEPARTMENT, THE ALAMEDA COUNTY SHERIFF,
26 AND THE ADMINISTRATION OF THE ALAMEDA COUNTY SANTA RITA JAIL, WHO IS
27 CHARGED WITH THE CARE, CUSTODY AND CONTROL OF ABOUT 3,000 INMATES ; THIS INCLUDING

1   pre-trial and sentenced detainees – including Santa Rita Jail contracted

2   medical and mental health personnel.

3       2. This complaint alleges multiple violations to Ruben Febo Jr.'s (herein)

4   ("Plaintiff") rights which are secured to him under the United States Constitution,

5   encompassed by a number of violations to Plaintiff's rights secured to him under

6   the California State Constitution, as well as those rights secured to him

7   under the Alameda County Santa Rita Jail facilities rules, regulations and policies.

8   These alleged violations consist of inadequate care, assistance and protection,

9   cruel and unusual punishment, medical indifference, humiliation, militarised

10   mind games or torment, exposure to dangerous living conditions, indirect

11   and direct assult, retaliation with the intent to harm, retaliation to free

12   speech and redress of grievances, threats, harassment, failure to provide

13   due process, and an on-going deprivation of basic entitlements and other

14   rights, done so by the hands of and lor at the direction of, enabling of, the

15   benifit of, facilitating of, and the assistance of, the Alameda County Santa

16   Rita Jail HU(2) Deputies in concert with this facilities Grievance Unit, the

17   Classifications Unit, Sheriff Housing Control officials or (Technicians), the

18   California Forensic Medical Group employees, the California Alameda County

19   Criminal Justice Mental Health employees, and several Commanding officials,

20   many acts being carried out with the use of third party inmates. All

21   officials acting under color of state law.

22       3. In this complaint Plaintiff will attempt to provide proof of all

23   allegations by explaining each situation thoroughly, to include incident, dates,

24   parties involved – be them suspect, victim and lor third party – and any

25   outcomes. Plaintiff will include personal opinion in many Facts so to bring

26   light to possible theories, motives and lor unwritten customs. Plaintiff will

27   utilize established jail house policies, routines, customs as well as any

1  statements made by administration officials and other employees so to
2  add substance to these facts. Incorporated into this complaint are several
3  documents attached as "EXHIBITS" (located at the back of this complaint)
4  which will also help provide substance to the complaint which involves incidents
5  dating back to 2012. Any and all evidence that which Plaintiff is not in possession
6  of at this time, however relys on in his Facts are indicated first with the
7  directorial "refer to....."; a verification of all Exhibits is also attached.

## II. PARTIES

9  PLAINTIFF:

10      4. Ruben Febo Jr. (PFN#BEM444) ("Plaintiff") is presently a pre-
11  trial detainee (with no bail) in the care, custody and control of the Alameda
12  County Sheriff's Department, 5325 Broder blvd., Dublin CA. 94568 Santa
13  Rita Jail.

14  DEFENDANTS:

15      5. Gregory J. Ahern ("Defendant Mr. Ahern") at all times relevant
16  to this action was/is employed as "Sheriff" of Alameda County, head of the
17  Alameda County Sheriffs Department –including– Santa Rita Jail; 5325
18  Broder blvd., Dublin CA. 94568; charged with the care, custody and control of
19  all inmates of this jail facility, this includes Plaintiff. Defendant Mr. Ahern is the
20  Sheriff's Department's highest authority responsible for the employment, the
21  termination, the appointment, and oversight of this jail facilities Deputies and
22  other employees, the oversight of facility operations generally, and maintaining
23  order through –and– communication with his Santa Rita Jail Commanding
24  officials (ie., Captains and lieutenants), these officials include those with
25  the final appellate authority over inmate grievances and concerns. At all times
26  relevant to this complaint, Defendant Mr. Ahern acted and failed to act while
27  under color of State law. He is hereby sued in his official capacity, jointly and

CIVIL RIGHTS COMPLAINT (§1983)                    PAGE 4 OF 162

1  severally, for those acts and omissions carried out by his employees which are
2  described fully below.

3      6. Erik McDermott ("Defendant Mr. McDermott") and Justin Linn
4  ("Defendant Mr. Linn"), at all times relevant to this action were Deputies employed
5  at the Santa Rita Jail facility; 5325 Broder blvd., Dublin CA. 94568; employed to
6  provide care, custody and control, charged specifically with the duty of providing the
7  inmates in Housing Unit (2)-Pods (A),(B),(C),(D),(E) and (F)- with the necessities
8  of life, ie., food, water, clothing, medical care/aid, safety, safe housing, and
9  humane living conditions. At all times relevant to this complaint, Defendant Mr. Linn
10 and Defendant Mr. McDermott acted and failed to act while under color of State law.
11 They are hereby sued in their individual as well as official capacities, jointly and
12 severally, for those acts and omissions described fully below.

13     7. David Hesselein ("Defendant Mr. Hesselein"), at all times relevant to
14 this action was/is a Captain employed at the Santa Rita Jail facility; 5325
15 Broder blvd., Dublin CA., 94568; employed to provide oversight alongside fellow
16 Commanding officials (ie., Captains and lieutenants) and over supervising
17 staff (ie., Sergeants and Deputies); these officials include those with the final
18 apellate authority over inmate grievances and concerns, those with authority over
19 inmate housing, and those charged specifically with the duty of providing the inmates
20 in all Housing Units with the necessities of life, ie., food, water, clothing, medical
21 care/aid, safety, safe housing, and humane living conditions. Charged ultimately with
22 ensuring that the care, custody and control of inmates is lawfully maintained. At
23 all times relevant to this complaint, Defendant Mr. Hesselein acted and failed to
24 act while under color of State law. He is hereby sued in his official capacity, jointly
25 and severally, for the acts and omissions carried out by his subordinate officials
26 which are described fully below.

27     8. John Calegari ("Defendant Mr. Calegari"), at all times relevant to this

1  action was/is a Sergeant employed at the Santa Rita Jail facility; 5325 Broder
2  blvd., Dublin. CA. 94568; employed to provide oversight alongside fellow supervising
3  officials (ie., Sergeants) and over the Deputy employees specifically in the Class
4  Unit, these Class Deputies include those charged with properly housing and
5  protecting inmates from injury by fellow inmates, deputies and/or housing
6  conditions, and specifically in Housing Unit (2) where Plaintiff resides. At all times
7  relevant to this complaint, Defendant Mr. Calegari acted and failed to act while
8  under color of State Law. He is hereby sued in his individual and official capacities,
9  jointly and severally, for those acts and omissions carried out by himself and his
10 subordinate officials, which are described fully below.

11      9. The California Forensic Medical Group and the following (CFMG)
12 employees: Katherine-Marie Conover (RN), Julie Valdez (RN), Chagger Sumeet
13 (RN), Guadalupe Garcia (RN), Susana Obispo (RN), Michelle Tadeo (RN), Belkis
14 Zhong Li (NP), Melissa Brown (LVN), at all times relevant to this action were/are
15 employees at Santa Rita Jail, contracted to, and charged with the duty of,
16 providing adequate medical care to inmates; further employees: Maria Magat
17 (MD) and John Nienow (MD), at all times relevant to this action were/are employees
18 at Santa Rita Jail, contracted to, and charged with the duty of, providing adequate
19 care to inmates and professional oversight to nurses and nurse practitioners; further
20 the (CFMG), at all times relevant to this action was/is contracted to provide
21 professional medical services and employees to the (SRJ) facility. At all times
22 relevant to this complaint, the (CFMG) Defendants acted under color of State law.
23 They are sued in their individual and official capacities, jointly and severally, for
24 those acts and omissions described fully below.

25      10. The Criminal Justice Mental Health and the following (CJMH) employees:
26 Robert Heath, Jennifer Chaffin, Guadalupe Yanez, Leonicia Castro, and Jessica
27 Osmond, at all times relevant to this action were/are employees at Santa Rita Jail,

CIVIL RIGHTS COMPLAINT (§1983)          PAGE 6 OF 162

1  contracted to, and charged with providing professional mental health services and employees to
2  the (SRJ) facility, those employees charged with providing adequate therapy and/or psycho-
3  theraputics to inmates. At all times relevant to this complaint, the (CJMH) Defendants
4  acted under color of State law. They are hereby sued in their individual and official capacities,
5  jointly and severally, for those acts and omissions described fully below.

### III. JURISDICTION AND VENUE

7      11. Jurisdiction is asserted pursuant the United States Constitution
8  and 42 U.S.C §1983, To redress the deprivation of rights secured by the
9  United States Constitution ; Deprived by persons acting under color of
10  state law. The court has jurisdiction over these matters pursuant to 28 U.S.C.
11  §§ 1331, 1343 (a)(3),

12      and. Plaintiff's claim for injunctive relief is authorized pursuant to 28
13  U.S.C. §§ 2283, 2284,

14      and The United States District court for the Northern District of
15  California, in the County of Alameda, city of Oakland, is the appropriate
16  venue for trial pursuant to 28 U.S.C. §1391 (b)(2); the County of Alameda is
17  where the events complained of have occurred.

### IV. PREVIOUS LAWSUITS

19      12. Plaintiff has never before filed a civil lawsuit, nor has there
20  been previous litigation regarding any of the issues described in this complaint.
21  Criminal charges have since been filed by the Alameda County District Attorneys
22  Office against Defendant McDermott and Defendant Linn, however as to
23  the specifics of the Defendants criminal proceedings, Plaintiff is unaware at this
24  time, however, a pre-liminary is set for (7-24-18) at Rene C. Davidson Court room.

### V. STATEMENT OF FACTS

26      13. On May 11th 2012 Plaintiff was involved in a fight with a hispanic
27  inmate who violated Plaintiffs personal space. Fearing a possible on-coming
28  assult Plaintiff engaged in hand combat (See Incident/Criminal Report No.
29  12-007994) (Attached hereto as "EXHIBIT A (a)(b)(c)").

CIVIL RIGHTS COMPLAINT (§1983)                    PAGE 7 OF 162

14. Due to this altercation Plaintiff was re-classed ⟨re housed⟩ to Housing Unit ⟨4⟩ ⟨id, "EXHIBIT A ⟨b⟩ line ⟨3⟩.⟩ Plaintiff was told by the Classification Deputies ⟨"Class"⟩ ⟨Unknown at this time⟩ that they ⟨Class⟩ had just got done moving some young hispanics into Housing Unit ⟨4⟩ ⟨C⟩Pod, due to a racial riot recently occurring between hispanic and african inmates. Plaintiff explained to Class that he did not want to go to this pod that he was already comfortable in his prior Housing Unit ⟨"HU"⟩ of ⟨3⟩⟨E⟩, that the new location was sure to be hostile. Class stated "what? you aint scared are you?" Plaintiff did not respond. Plaintiff was then told he had "no choice", and that "you will survive".

15. When Plaintiff arrived to HU⟨4⟩⟨C⟩, He was approached by hispanic inmate Raul Acosta ⟨PFN#BHCO56⟩ ⟨"Acosta"⟩ upon the first commencement of recreation that evening ⟨5-11-12⟩ and informed that Class had re housed all prior residing hispanics after a riot between hispanic and african inmates. No african inmates were re housed, as it is not abnormal for Class to deem the hispanic inmates the aggressors. Acosta stated that Class had re housed him and ⟨3⟩ other young hispanics to the hostile location from previously comfortable locations, and that the ⟨4⟩ of them were being extremely oppressed by the african inmates who denied them equal access to their entitlements, ie. phones, tables, newspaper, television and showers. This oppression is not abnormal in this facility due to the extreme unequal ratios between hispanics and african inmates, the hispanics always the minority; for an example ⟨ see, "EXHIBIT B ⟨e⟩ "infra⟩.

16. Plaintiff has known Class to re house all hispanic inmates from a Pod or Section of Pods and/or even a Unit, after a race riot, deeming them ⟨hispanics⟩ the aggressors and discriminatively isolating them in the Administrative Segregation ⟨"Ad.-Seg."⟩ Units or scattering them in different

LOCATIONS, FROM EXPERIENCE AND PERSONAL KNOWLEDGE.

17. THIS OPPRESSION STATED IN FACT (#15) WAS WITNESSED AND ENDURED BY PLAINTIFF OVER THE COURSE OF THE NEXT SEVERAL DAYS. PLAINTIFF DECIDED TO NOTIFY HU(4) DEPUTY MR. M. FOLEY DURING P.M. CHOW ON MAY 18TH 2012, THAT PLAINTIFF AND FELLOW MEXICAN INMATES WERENT BEING TREATED FAIRLY BECAUSE THE AFRICANS WERE STILL UPSET ABOUT THE RIOT, AND THAT THE PLAINTIFF AND MEXICANS WERENT GETTING TO USE THE PHONE IN THE PHONE DUE TO AFRICAN INMATES SMASHING ON THE PHONES. MR. M. FOLEY STATED TO PLAINTIFF THAT HE WOULD "LOOK INTO AFTER DINNER".

18. THE AFRICAN INMATES HAD OVERHEARD THIS CONVERSATION AND PLAINTIFF BELIEVES THAT IT IS WHAT SPARKED THE INCIDENT BECAUSE AS SOON AS PLAINTIFF RETURNED TO THE POD WITH HIS DINNER TRAYS STILL IN HAND, PLAINTIFF WAS ASSULTED BY AFRICAN INMATES. DURING THE ASSULT I OBSERVED OTHER FIGHTS TAKING PLACE AROUND MYSELF WHICH LOOKED TO BE AFRICANS AND MEXICAN INMATES (SEE INCIDENT/CRIMINAL REPORT NO. 12-008461) (ATTACHED HERETO AS "EXHIBIT B (a), (b), (c), (d), (e)".). PLAINTIFF WAS ASSULTED BY A TOTAL OF (8) AFRICANS BEFORE PLAINTIFF WAS KNOCKED UNCONSCIOUS AND AWAKING IN HU (3) MULTIPURPOSE ROOM.

19. PLAINTIFF SUSTAINED MULTIPLE LUMPS TO THE BACK OF HIS HEAD, SMALL LACERATIONS TO HIS EARS AND FOREHEAD AND A LUMP TO HIS FOREHEAD AS INDICATED IN ("EXHIBIT B (c) PARA. (4)") ALSO PLEASE REFER TO (PLAINTIFF'S MEDICAL RECORDS).

20. PLAINTIFF WAS THEN PLACED INTO ADMINISTRATIVE SEGREGATION ("AD-SEG.") FOR THIS INCIDENT WHICH PLAINTIFF DID NOTHING WRONG AND STILL PLAINTIFF'S LIFE WAS JEAPORDIZED AND HIS FILE WAS COLORED WITH GANG MOTIVES AND FALSIFICATIONS WHEN CLEARLY THIS ASSULT WAS FORSEEABLE AND COULD HAVE BEEN PREVENTED BY CLASS DEPUTIES; AGAIN PLEASE SEE ("EXHIBIT B (b)").

21. THIS INCIDENT THAT TOOK PLACE ON MAY 18TH 2018 WAS GRIEVED BY PLAINTIFF AT A LATER DATE (SEE INMATE GRIEVANCE FORM # 17-1191) (ATTACHED

HERETO AS "**EXHIBIT** C⟨a⟩ THROUGH ⟨i⟩, SPECIFICALLY C⟨f⟩ PARA ⟨2⟩") ONCE
PLAINTIFF WAS ABLE TO SECURE A COPY OF THIS INCIDENT REPORT FROM HIS CRIMINAL
DEFENSE ATTORNEY IN THE MIDDLE OF 2016 - AT WHICH TIME PLAINTIFF WAS INFORMED
THAT THE ALAMEDA COUNTY DISTRICT ATTORNEY MR. ELGIN LOWE WAS FROM THAT
POINT IN POSSESSION OF SEVERAL OF PLAINTIFF'S SANTA RITA JAIL INCIDENT/CRIMINAL
REPORTS AND WOULD BE UTILIZING THEM, INCLUDING THE INCIDENT ABOVE, IN PLAINTIFF'S
CRIMINAL PROSECUTION AS EVIDENCE OF SO CALLED GANG ACTIVITY. THE INCIDENT IS
ON-GOING AS PLAINTIFF HAS BEEN INFORMED NUMEROUS TIMES IN GRIEVANCE RESPONSES
FROM 2013 THROUGH 2017 THAT PLAINTIFF WAS IN AD.-SEG. HOUSING DUE TO ⟨THOUGH
IN SOME RESPONSE NOT SOLELY⟩ "THE FACT THAT" PLAINTIFF WOULD "ALWAYS GET INTO
ALTERCATIONS WITH OTHER INMATES", FURTHER DUE TO PLAINTIFF'S "RACIAL PREJUDICES".
THE LAST GRIEVANCE RESPONSE STATING THIS IN MAY OF 2017, WHEREBY PLAINTIFF
WAS **DENIED** BY SGT., P. KENNEDY, FURTHER, PLAINTIFF'S APPEAL WAS **DENIED** BY
LT., LANCE E. DELBRIDGE AND **CONCURRED** BY COMMANDING OFFICER LT., P.H.
SLAUGHTER ⟨SEE INMATE GRIEVANCE FORM AND RESPONSE #17-0737⟩
⟨ATTACHED HERETO AS "**EXHIBIT** D⟨a⟩, ⟨b⟩, SPECIFICALLY D⟨b⟩ PARA ⟨2⟩"⟩
WHEREBY THEREIN NEW FACTORS WERE STIPULATED TO JUSTIFY PLAINTIFF'S AD.-SEG.
PLACEMENT.

    22. JULY 2013 PLAINTIFF WAS INVOLVED IN A FIGHT WITH A HISPANIC
INMATE WHO HAD VIOLATED PLAINTIFF'S PERSONAL SPACE. FEARING A POSSIBLE
ON-COMING ASSULT PLAINTIFF ENGAGED IN HAND COMBAT ⟨REFER TO INCIDENT/
CRIMINAL REPORT # UNKNOWN AT THIS TIME⟩. PLAINTIFF WAS CONTACTED BY CLASS
DEPUTIES MR. BOUNDS ⟨"JOHN DOE" DEFENDANT⟩ AND MR. C. VARGAS AND THEN
ESCORTED TO THE YARD. PLAINTIFF COOPERATED AND STATED HE WAS JUST DEFENDING
HIMSELF AGAINST A LOOSE CANON STYLE INMATE. PLAINTIFF WAS PLACED BACK INTO
HIS HOUSING UNIT-HU⟨4⟩⟨F⟩- AND ALLOWED TO RESUME HIS PROGRAM. THE
HISPANIC INMATE WAS RE CLASSIFIED. HOWEVER, PLAINTIFF WOULD SOON BE TARGETED

1  BY CLASSIFICATION ONCE AGAIN APPROXIMATELY 1 WEEK LATER.

2      23.  JULY 2013 PLAINTIFF WAS CONTACTED AT HIS CELL HU(4)(F)

3  (14) BY CLASS OFFICIALS AND TOLD TO PACK HIS PROPERTY THAT HE WAS BEING

4  RE CLASSIFIED FROM HU(4)(WHICH IS KNOWN AS THE PROGRAM UNIT) TO HU(3),

5  AND WILL BE RELOCATING ALONG WITH CELLMATE MR. YONI LEDESMA AND

6  TWO OTHER INMATES FROM HU(4)(D)POD - ONE OF WHICH WAS MR. RAUL

7  ACOSTA (PFN#BCH056). PLAINTIFF STATED TO CLASS OFFICIALS THAT HE DID

8  NOT WISH TO GO TO HU(3) BECAUSE THERE HAD BEEN TALK AMONGST THE

9  INMATES THE DAY BEFORE, THAT THERE WAS A RACE RIOT BETWEEN THE

10  MEXICAN AND AFRICAN INMATES THAT HAD JUST OCCURRED IN HU(22)

11  WHERE THE INMATES FROM HU(3) WERE TEMPORARILY BEING HOUSED IN

12  SAID UNIT DUE TO THE HU(3) SETTING BEING ON QUARENTINED AND CLEANED.

13  PLAINTIFF KNEW FROM EXPERIENCE THAT IT WAS WAY TOO SOON TO PUT A GROUP

14  OF MEXICANS BACK INTO SUCH A HOSTILE ENVIRONMENT, ESPECIALLY A SMALL

15  NUMBER SUCH AS 4, AND PLAINTIFF FELT STRONGLY ABOUT THIS. HOWEVER,

16  PLAINTIFF WAS ONCE AGAIN TOLD THAT HE HAD NO CHOICE, AND SO PLAINTIFF

17  COMPLIED (PLEASE REFER TO SANTA RITA JAIL INCIDENT/CRIMINAL REPORT

18  RECORDS OF THIS RACE RIOT FOR COPROBORATION).

19      24.  PLAINTIFF WAS THEN ESCORTED TO HU(3) ALONG WITH THE

20  3 ABOVE MENTIONED MEXICAN INMATES, MR. LEDESMA, MR. ACOSTA AND

21  ONE OTHER. PLAINTIFF WAS PLACED INTO HU(3)(C)POD ALONG WITH PRIOR

22  CELLMATE MR. LEDESMA AND THE OTHER TWO WERE PLACED INTO A NIEGHBORING

23  CELL (REFER TO JAIL RECORDS FOR HOUSING). THE HU(3) EAST SIDE

24  SETTING LOOKED TO BE COMPLETELY EMPTY, WHICH CONFIRMED THE FACT THAT

25  HU(3) INMATES HAD BEEN TEMPORARILY RELOCATED. SOON THERE AFTER PLAINTIFF

26  OBSERVED OFFICIALS PROCEED TO ESCORT THE HU(3) PRIOR RESIDING INMATES BACK INTO

27  THEIR RESPECTIVE PODS (A),(B),(C). THE INMATES THAT WERE RE INTEGRATED BACK

1 INTO HU(3)(C) POD WERE ALL AFRICAN AMERICAN, AN APPROXIMATE TOTAL OF
2 26 -TWENTY SIX- AND WHOM ALL LOOKED TO RETURN TO THEIR OLD CELLS.

3    25. UPON THE COMMENCEMENT OF RECREATION SOON THEREAFTER,
4 PLAINTIFF EXITED HIS CELL ALONG WITH ALL OTHER RISIDING INMATES AND
5 PROCEEDED TO THE RECREATION (DAY ROOM) AREA. PLAINTIFF WAS APPROACHED BY
6 MR. ACOSTA AND HIS CELL MATE WHO VOICED CONCERN ABOUT BEING ASSULTED
7 DUE TO THE ALLEGED RACE RIOT AND BEING OUTNUMBERED WITH EXTREMELY
8 UNBALANCED RATIOS AND THE OBVIOUS TENSION THAT WAS IN THE AIR. PLAINTIFF'S
9 CELLMATE MR. LEDESMA HAD VOICED THESE SAME CONCERNS REGARDING A POSSIBLE
10 ATTACK AND WAS ALSO QUESTIONING PLAINTIFF ABOUT HIS IDEAS OF WHY CLASSIFICATION
11 HAD MOVED THE 4 INMATES AND WHAT SHOULD BE DONE. PLAINTIFF STATED TO THE
12 3 INMATES, WHO VOICED THE OPINION THAT CLASSIFICATION PICKED THE 4 INMATES
13 SPECIFICALLY AND PURPOSEFULLY TO RETALIATE AGAINST THEM, THAT "YES" IT
14 SEEMED TO BE A CAPRICIOUS AND ORCHESTRATED MOVE BY CLASSIFICATION,
15 HOWEVER PLAINTIFF "HAD A PLAN" TO REVERSE THE SITUATION.

16    26. IMMEDIATELY PLAINTIFF AND THE THE 3 OTHER MEXICAN INMATES
17 WERE APPROACHED BY A GROUP OF AFRICAN INMATES WHO STATED THAT THEY HAD
18 JUST BEEN INVOLVED IN A RIOT AND HAD BEAT UP SOME MEXICANS, THAT
19 CLASSIFICATION HAD MOVED ALL THE BLACKS BACK INTO THE POD, HOWEVER,
20 (CONTINUE ON PAGE 13 OF 182)

1  that Class rehoused all the hispanics and that they were "ready to fight again if"
2  Plaintiff "had any problem with it". Plaintiff stated to them that "to fight" would be to
3  "give Class the show they wanted to see". Plaintiff stated he came "in peace" as did
4  the other hispanics and that Plaintiff simply sought what he was entitled too, which
5  was "equal access to tables, showers, newspaper and phone". No incident occurred
6  that day between hispanic and african inmates, nor did any incident occur between
7  the races thereafter, as Plaintiff was able to difuse the situation with diplomacy
8  and prevent harm to himself or anyone else. The hispanic inmates in < Fact # 23;
9  supra > can corroborate to the above statements made in < Facts # 23 to 26 >.
10  These types of capraciously manufactured situations are done all the time
11  by Class and most inmates are unaware of the practice and thus feed into it,
12  and this situation specifically show both that the practice exists and more
13  importantly that Plaintiff never had nor does he have any intentions to carry out
14  and/or carry on prejudice riots, gang customs or unjustified combat.

15      27. _September 2013_ an incident occurred involving hispanic inmates in the
16  HU<3><C> where a group of hispanics were engaged in combat with an single
17  hispanic inmate (refer to jail Incident/Criminal Report records). Plaintiff was
18  not involved, however later that night Plaintiff was once again rehoused by Class
19  and placed into another predominantly african american setting where it was now
20  Plaintiff and his hispanic cellmate Noel Cruz as the sole hispanic inmates in
21  the HU<7><F> location; a ratio of <24 to 2>. Plaintiff was told he was re-
22  housed due to a supposed "Keep Seperate From" (KSF) an inmate found to have been
23  located on the opposite side of HU<3>.

24      28. _September 28th 2013_ Plaintiff was contacted at his cell and told
25  to cuff up and exit, at which time he was escorted to an interview room located
26  upstairs in the HU<7> visiting area, where Plaintiff was read his rights. Plaintiff
27  waived his right to remain silent and complied with all lines of questioning

CIVIL RIGHTS COMPLAINT <§1983>                    PAGE 13 OF 162

1  (refer to Incident/Criminal Report No. 13-016564; Supplemental Report and/or
2  recorded interview by Detective Brian Kimzey (Badge # 1455) and Sergeant
3  James Russell (Badge # 1331).

4      29. Plaintiff was told that he was a suspect in an assult on an inmate.
5  Plaintiff stated he was "not involved" and that he "did not witness an assult", further
6  stating that he was "watching t.v." (see Declaration of Probable Cause; "EXHIBIT
7  G (a) para. (5)") (Attached here to as "EXHIBIT G (a),(b),(c)".). Plaintiff was
8  then further questioned about gang involvement and his personal, family and friend
9  associations. Once the interview was over Plaintiff was rehoused to Ad.-Seg.
10 HU (2)(F)(14) by Class and told he is to await pending charges. Plaintiff was not
11 given a hearing where he can call witnesses in his defense.

12      30. Plaintiff once again was targeted by Class in this situation. Plaintiff's
13 cellmate Noel Cruz was rehoused to HU (2)(E)(3) a relatively sanitized
14 and decent location, and Plaintiff was placed into (2)(F)(14) which was
15 covered in feces and urine, both dry and fresh. Plaintiff was made to go into
16 this cell involuntarily by HU (2) Deputies (Unknown at this time). The (2)(F)
17 Pod reeked of feces and urine, as did the cell. Plaintiff was not given cleaning
18 supplies to sanitize cell.

19      31. October 2013 Plaintiff attempted an informal (verbal) grievance to
20 HU (2) Deputy Mr. Obeshuire (Badge # 1206) who had been working the p.m.
21 shift. Plaintiff asked Mr. Obeshuire if Plaintiff can change cells due to the
22 unsanitary issues. Mr. Obeshuire stated Plaintiff did not belong in this said
23 location because it was for "J-Cats" (the term "J-Cats" is a common term
24 used amongst Deputies and inmates in reference to inmates who display loud,
25 sporadic and indecent behavior). Mr. Obeshuire immediately took the
26 initiative to accomodate Plaintiff's complaints and rehoused Plaintiff to (2)
27 (A) Pod (refer to jail housing records) which was a completely sanitized

CIVIL RIGHTS COMPLAINT (§1983)                    PAGE 14 OF 162

1  setting. The very next morning Class contacted Plaintiff at his cell and was
2  told by Mr. Bounds ⟨full information unknown at this time⟩ ⟨"John Doe" –
3  Defendant⟩ to pack his property and cuff up that he was being re housed back
4  to ⟨2⟩⟨F⟩⟨14⟩. Plaintiff stated to Class that it was unsanitary in the ⟨2⟩⟨F⟩
5  setting. Once again Mr. Bounds stated Plaintiff had no choice in the matter. The
6  next night Plaintiff was told by Mr. Obeshuire that he did not agree with Class's
7  decision to move Plaintiff back to ⟨F⟩ Pod. Mr. Obeshuire went on to say that
8  Class was doing Plaintiff "dirty" and to be on his "best behavior" so to work on
9  getting to a "better pod".

10  32. October 2013 Plaintiff was gassed for the first time by a
11  residing inmate in ⟨2⟩⟨F⟩ Pod whereby this inmate smeared feces over the
12  outside of Plaintiffs cell door and squirted liquid feces into Plaintiff's cell with
13  a bottle ⟨ the act of "gassing" is when a person squirts, throws or spits, either
14  feces, urine, blood or saliva onto another with the intent to harm or humiliate⟩.
15  Plaintiff immediately made an informal ⟨verbal⟩ grievance to HU ⟨2⟩ Deputy
16  Mr. Earnhardt ⟨full information unknown at this time⟩ who had been working
17  the a.m. shift. Plaintiff informed Mr. Earnhardt of what happened as well as
18  what inmate it was. Plaintiff was then allowed to disinfect the mess and take
19  a shower. Mr. Earnhardt then confronted the suspect "gasser" which Plaintiff
20  commends. Plaintiff was unfortunately told that he could not be re housed at this
21  time per Classification.

22  33. October 2013 Plaintiff was contacted at his cell by Intake and
23  Release Deputies. ⟨Unknown⟩ and told to cuff-up that he was to be finger
24  printed and booked on charges of Attempted Murder with gang enhancements.
25  Plaintiff complied with this process and was escorted back to his cell without
26  incident. Plaintiff was arraigned a couple days later at the Gale-Schenone
27  Hall of Justice in Pleasanton California where he pleaded not guilty.

34. October 2013. Plaintiff was contacted at his cell by Class Deputies Mr. Vargas and Mr. Bounds ("John Doe" Defendant) and asked whether Plaintiff was "okay to cell up with an inmate named Shawn Thomas"? Plaintiff stated he did not know the inmate "however he was okay with being celled up with anyone", to please get him "out of this dirty pod". Plaintiff was then rehoused to HU (2)(E) Pod which was a completely sanitized setting. It became apparent to Plaintiff that (2)(F) Pod was was some type of discipline pod whereas Class places inmates for periods of time to exert their departmental authority, degrade inmates and/or subject them to being victimized by the residing inmates (Plaintiff will discuss this opinion specifically and indepth throughout this complaint herein), as Plaintiff came to personally experience once again in 2015 and 2016 through 2018.

35. September 2013 through December 2017 Plaintiff made several informal (verbal) grievances to numerous Class Deputies requesting to be re-housed back to the General Population, that Plaintiff was not involved in the alleged assult on an inmate. These Class Deputies are, but not limited too: Mr. Vargas, Mr. Bounds ("John Doe" Defendant), Mr. Latu, Mr. Phixitxohn, Mr. McBride ("John Doe" Defendant; incorporated in Facts infra), Mr. Evans, Mr. Courtney, Mr. Mills, Mr. Dolan, Mr. Hall, Mr. Dagnue, Mr. Matedne, and Mr. Wilkenson ; (all full information is unknown at this time), all of whom stated different yet corroborating reasons why Plaintiff could not be re-housed, such as Plaintiffs assult history, Plaintiff's influence amongst the general populace, Plaintiff "must have pissed off someone with rank", Plaintiff's reputation, Plaintiff's alleged involvement in the attempted murder on an inmate, or that it was "beyond their" (Class) authority. These informal grievances were made during Class's routine visits to Plaintiff's cell over the years.

36. Plaintiff further made several formal (written) grievances regarding his housing status to Class, approximately (10) to (12) times, the first of which

CIVIL RIGHTS COMPLAINT (§1983)                    PAGE 16 OF 162

1  is dated March 26th 2014 < see Inmate Grievance Response # 14-0403)
2  <Attached hereto as "EXHIBIT H" >, and the last one being dated June 6th 2017
3  < see Inmate Grievance and Response # 17-0900) <Attached hereto as "EXHIBIT
4  I <a> <b>) all grievances DENIED, all grievances appealed and DENIED
5  again for multiple reasons. Plaintiff remained persistant in his pursuit to be re-
6  housed as he was innocent of the accusations of assult and attempted murder,
7  that he was advised that should he continue to grieve this issue he would therein
8  be "placed on a grievance restriction plan" <see Inmate Grievance Response #
9  15-0557) <Attached hereto as "EXHIBIT J").

10  37. April 2014 while Plaintiff was housed in his cell <2><E><4> his cell
11  door was popped open via the Housing Control <Technician) station < located in
12  the center of the HU and electronically controls all lights, power and doors).
13  Plaintiff was utilizing the restroom <toilet> at the specific instant the door was
14  popped, however Plaintiff hastingly finished and approached his door and opened
15  it. Plaintiff stepped out the cell and noticed that all inmates cells had been popped
16  open at once as many inmates were roaming and running around the pod area.
17  After approximately <30> to <45> seconds of taking in the situation Plaintiff
18  closed his cell door to prevent being possibly assulted. Officers were then
19  observed running into the pod in full riot gear yelling for everyone to "get back into
20  your cells", which everyone complied without incident.

21  38. Plaintiff soon thereafter was contacted at his cell by HU <2> Deputy
22  Mr. D. Freliegh <Badge # 1818> who was working the a.m. shift. Mr. Freliegh
23  was accompanied by <2> other Deputies <unknown> who instructed Plaintiff to
24  step out his cell for a cell search. Plaintiff complied without incident. Nothing of
25  evidentiary value was located during the search. Plaintiff was then questioned about
26  an assult that allegedly taken place during the incident. Plaintiff stated he did not
27  know of an assult and when asked to sign a statement Plaintiff respectfully

1  refused due to him not being involved in any assult nor witnessing an assult (see
2  Incident/Criminal Supplemental Report No.# 14-006790) (Attached here to as
3  "**EXHIBIT K**"). Primary Report No.#14-006790 is not available at this time,
4  Plaintiff was not provided the entire report, only what has been attached.

5      **39.** Plaintiff mentions this incident because again it is a situation where
6  Plaintiff was vulnerable to danger, a danger created by the Deputies, one of whom
7  then attempted to manipulate Plaintiff into implementing and incriminating himself
8  into a crime he was not involved in, so to cover himself for liability purposes, and
9  still this incident was another of those which the Alameda County District Attorneys
10  Office has sought to use against Plaintiff in his Criminal case proceedings (Docket
11  No.'s # H56135B and H58414) introducing this report into Plaintiff's Criminal
12  case discovery as exculpatory evidence to slander his character and further
13  bolster the District Attorney's speculated "gang activity" motive.

14      **40.** <u>August 2015</u> while Plaintiff was housed in his cell (2)(E)(4)
15  he observed HU(2) Deputy Mr. Stavert (full information unknown at this
16  time), who was working the p.m. shift, passing out commissary orders to
17  inmates door to door. Plaintiff overheard a verbal dispute between this
18  Deputy and inmate Mr. Miguel Rodriguez (PFN #UNKNOWN) cell (2)(E)(6),
19  in which Mr. Rodriguez called Deputy Mr. Stavert a "Bitch" loud enough to
20  be heard by the entire pod.

21      **41.** Deputy Mr. Stavert then contacts Plaintiff at his cell asking
22  him "can I come in?", Plaintiff states "yes". Deputy Mr. Stavert enters the
23  cell and states "get him when he comes out in the shower" and "keep it PG.13".
24  Plaintiff states "okay". After exiting the cell and closing the door, Mr. Stavert
25  then keyed the door a second time, thus allowing it to remained unlocked.
26  Plaintiff knows this Deputy to be a "no non-sense" type Deputy from the
27  many observations of this Deputy and his interactions with inmates.

1  Mr. Rodriguez soon thereafter was popped out his cell for pod (recreation)
2  time and entered the shower. Plaintiff then exited the cell and entered the
3  shower and began punching Mr. Rodriguez until he was prone on the ground and
4  yelling for the Deputies assistance. Mr. Stavert then enters the pod with another
5  Deputy (unknown at this time) and stated for Plaintiff to "lay down", at which time
6  Plaintiff complied. Plaintiff was then escorted to the (2) East Isolation cell where
7  he seen a nurse and was cleared of injury.

8      42. Plaintiff was contacted while in the Isolation cell by Mr. Stavert
9  who stated to Plaintiff "just go along with the story and I will take care of
10 everything", Plaintiff stated "okay". Plaintiff was then contacted by Class Deputy
11 Mr. Hall (full information unknown) who asked Plaintiff "so you popped open your
12 cell door?", Plaintiff then shook his head indicating that he did open his door. Plaintiff
13 was then placed back into his cell without incident. Deputy Mr. Stavert then handed
14 Plaintiff a letter and stated "I found this while searching his (Mr. Rodriguez) cell,
15 your gonna laugh, this dude is a whimp". Plaintiff read the letter that was addressed
16 to his sister (unknown) that stated something along the lines that he got high
17 on drugs while housed in the general population (minimum security) and felt that
18 others were out to get him so he decided to "roll up" or call on Class to be re housed
19 out of fear. Plaintiff was then contacted again at his cell by Deputy Mr. Stavert
20 who stated "did you read it, it was funny huh?" Plaintiff stated "Yeah", Deputy
21 Mr. Stavert then stated "just say you found this letter and that is why you beat
22 him up". Plaintiff stated "okay, what do I do?", Deputy Mr. Stavert stated
23 just give it to your Class Deputy. Plaintiff then wrote a message to Class
24 Deputy Mr. Dolan (full information unknown) that stated something along
25 the lines that Plaintiff assulted Mr. Rodriguez for what was written in the
26 letter found (Plaintiff attached letter to the message).
27     43. The next morning (third week of August 2015) Plaintiff was

CIVIL RIGHTS COMPLAINT (§1983)                    PAGE 19 OF 162

1  contacted at his cell by HU(2) Deputy Mr. Helfricks (full information
2  unknown) and another Deputy (unknown) (refer to HU(2) logs) whom
3  directed Plaintiff to cuff up and exit the cell, and Plaintiff complied without incident.
4  Plaintiff was then escorted to (2)(F)(1). Plaintiff was stripped of his clothes
5  and given his property, minus clothing, and also given a green safety blanket
6  (normally given to inmates on an intensive observation watch for suicide).

7      44. The cell Plaintiff was placed in was full of feces and urine, both
8  dried and fresh. Plaintiff did not want to go into this cell and stated to the
9  Deputies "theres shit in this cell man", at which time the Deputy stated "we'll
10 bring your property so you can clean it". Plaintiff was not given disinfecting
11 solution to sanitize the cell. Deputies (including Class) re house inmates into
12 these types of pods, specifically into unsanitary cells with feces, as a form
13 of punishment with the intentions to degrade and humiliate so to pass the
14 message of "we are in control here" to inmates. Plaintiff did not grieve the
15 situation because Plaintiff feared retaliation. Plaintiff simply cleaned the cell
16 with his shampoo. Last known occupant of cell (2)(F)(1) prior to Plaintiff
17 was inmate Robert Andrews (PFN# A I J444) who was known to "gas" inmates
18 with his feces as well as live in his own created unsanitary conditions.

19     45. February 2015 Plaintiff submitted a grievance after several failed
20 attempts to request education opportunities, requests made formally (written)
21 that went unresponded to by the Inmate Services Unit Officials (see Inmate
22 Grievance Response #15-0137) (Attached hereto as "EXHIBIT L") DENIED
23 on (2-20-15) by Sgt. R. Macintire, on grounds that Plaintiff was "not
24 eligible for any programs while classified as Ad.-Seg." CONCURRED by L.T., M
25 Farruggia (Badge #1436).

26     46. August 2015 through November 2015 Plaintiff remained in cell (2)
27 (F)(1) and was constantly gassed by inmates. Plaintiff made numerous informal

1  ⟨verbal⟩ complaints to HU⟨2⟩ Deputies however Plaintiff received no assistance
2  from them. These Deputies are, but not limited too; Mr. Helfricks, Mr. Hughes,
3  Mr. Dorbinson, Mr. S. Johnson, Mr. Divine, Mr. McDaniels, Mr. Stavert,
4  Mr. Latu, Mrs. McKenzie, and Ms. Bender, also including but not limited to
5  the following Class Deputies; Mr. Bounds, Mr. Vargas, and Mr. Dolan.

6      47. November 2015 Plaintiff was gassed by an inmate named Mr.
7  Perez ⟨full information unknown⟩, whom had just been transfered from HU
8  ⟨1⟩⟨F⟩ after being involved in an incident with HU⟨1⟩ Deputy Mr. Maria
9  ⟨full information unknown⟩, where this inmate approached Plaintiff's cell
10 and squirted his urine into Plaintiff's cell with a bottle. Plaintiff told the
11 inmate to get away from his cell. The inmate went around the pod talking trash
12 to Plaintiff and started stating for Plaintiff to "pop" the cell door open, as he
13 was somehow informed of why Plaintiff was in the pod. Plaintiff then, with the
14 intentions solely to scare this inmate and get him away from the cell, ripped
15 apart a sheet and stuffed it through the crack of the door and told the inmate
16 to "pull the sheet and open the door tough guy". HU⟨2⟩ Deputy Mr. Divine ⟨full
17 information unknown⟩ having been watching the entire incident from the
18 Housing Control ⟨Technician⟩ station. alerted fellow HU⟨2⟩ Deputy Mr.
19 McDaniels who entered the pod and took the sheet cut the door and stated
20 for Plaintiff to "leave Perez alone, he's a J-Cat⟩ and Plaintiff complied by
21 stating he was "just trying to scare him".

22      48. November 2015 Plaintiff was contacted at his cell by Class Deputies,
23 one of whom was Mr. Phixitxohn ⟨full information unknown⟩ who directed
24 Plaintiff to cuff up and exit the cell and was escorted to HU⟨1⟩ East Isolation
25 cell where Plaintiff was made to reside for approximately 4½ months. For
26 pod ⟨recreation⟩ time Plaintiff was escorted to HU⟨1⟩⟨F⟩ Pod for 1 hour
27 every 48 hours, give or take.

CIVIL RIGHTS COMPLAINT ⟨§1983⟩                PAGE 21 OF 162

49. <u>November 2015</u> through <u>March 2016</u> Plaintiff resided in HU (1)
East Isolation. Plaintiff made numerous informal (verbal) complaints to
HU (1) Deputies to be rehoused as it was difficult being isolated alone
and trying to sleep in a hallway where there is constant movement and noise.
These HU (1) Deputies were, but not limited too; Mr. McDermott, Mr. Hoodi,
Mr. Weaver, Mr. Badial, Mr. Maria, Mr. Quigliaria, Mr. Mateen, Ms.
Guichard, Mr. Hamilton, Mr. Singh, Mr. Solvek, Mr. Panconi, and Mr.
Barao; also including but not limited to the following Class Deputies; Mr.
Bounds, Mr. Phixitxohn (ACCOMPANIED BY MS. A. Rankin), MR. MILLS, Mr. Vargas,
Mr. Matedne, Mr. Courtney, and Sgt. Mrs. Tucker; all of whom stated
different yet corroborating reasons why Plaintiff could not be rehoused, such
as Plaintiff's assult history, Plaintiff's influence amongst the general populace,
Plaintiff's reputation, Plaintiff "must have pissed off someone with rank", it
was "beyond" their (Class) authority, Plaintiff's alleged involvement in the
attempted murder of an inmate, and that it is due to Plaintiff's ability to defeat
the cell door locking mechanism.

50. From Plaintiff's observation HU (1) (F) Pod was another location in the
Santa Rita Jail Ad.-Seg. setting that was known as the "shit pod" and used to
discipline inmates and humilate inmates by placing them into this pod which was
used to house inmates known for inhumane and indecent behavior. There were also
inmates strategically housed in these settings who were "known gassers" who
would be encouraged to gas inmates who fell in disfavor with Deputies. HU (1) (F)
Pod constantly reeked of feces and urine and Plaintiff often refused his pod
(recreation) time unless Plaintiff had to call his then girlfriend, at which
time Plaintiff would distressfully ask to be placed into a decent pod. Plaintiff
would be denied often times, and still other times Plaintiff would be allowed
to recreation in a normal sanitized pod with decent inmates such as (A)

1  (B)(E) Pods. This shows that Plaintiff did not pose an immediate threat, and
2  no threat at all in Plaintiff's opinion, by being allowed to recreation in a normal
3  setting, and that those Deputies who made Plaintiff recreation solely in the (F)
4  Pod setting did so to continue an underlining intention to humiliate and degrade Plaintiff,
5  if nothing short of harass and intimidate him.

6      **51.** December 2015 Plaintiff overheard, while housed in his cell (1) East
7  Isolation, Deputies on the morning shift, specifically Deputy Mr. Erik McDermott
8  (Badge# 2229)("Defendant Mr. McDermott"), laughing and hollering, hooting
9  and cheering, that an inmate had been gassed real good. Plaintiff could determine
10 that the Deputies were in close proximity and were standing just outside of HU(1)
11 (F) Pod, approximately 20 feet from Plaintiff's cell just outside the vestibule.
12 Plaintiff overheard Defendant Mr. Mr. McDermott state "My boy Preacher dont
13 play, he got him good". Plaintiff overheard incidents such as this approximately a
14 dozen times while housed in the (1) East Isolation. Sheriff HU Technician Mrs.
15 Erikson (full information unknown) was on duty this specific day.

16     **52.** December 2015 Plaintiff observed, while being escorted to pod
17 (recreation) time in HU(1)(E) Pod, specifically Defendant Mr. McDermott with
18 other (unknown) Deputies, all of whom were laughing at an inmate while he was
19 being gassed by an inmate Plaintiff soon came to understand to be Mr. William
20 Bernard Epting, who was using what looked to be a shampoo bottle full of feces
21 to squirt into an inmates cell, and wearing blue latex gloves on both hands. At
22 Mr. William Bernard Epting's ("Mr. Epting") feet stood approximately 3 bottles
23 filled with brown substances Plaintiff believed were feces. Plaintiff remembers
24 thinking to himself "how disgusting, these people are sick". Plaintiff made no comment
25 and went too and from recreation without incident. Sheriff HU Technician Mrs.
26 Erikson was on duty this specific day.

27     **53.** December 2015 or January 2016 Plaintiff observed while in the (1) East

CIVIL RIGHTS COMPLAINT (§1983)                          PAGE 23 OF 162

1 | Isolation, Sheriff HU Technician. Mrs. Erikson conversating with Defendant
2 | Mr. McDermott. It is not abnormal for the HU Technicians and HU Deputies to give
3 | each other commands (verbally) or hold casual /work related conversations
4 | through the Housing Control (Technicians) mail slot located on the Housing Control
5 | wall adjacent to the Isolation cell in the vestibule. Plaintiff overheard HU Technician
6 | Mrs. Erikson state to Defendant Mr. McDermott " Mr. Wilts (full information
7 | unknown) in cell (F)(8) Keeps ringing up about being gassed, you know I dont
8 | give a fuck about none of that, if he keeps bothering me I'm going to find something
9 | to write him up for", at which time Defendant Mr. McDermott responds " you know
10 | I aint tripping, let me know Mrs. E because you run the show."

11 |    54. <u>December 2015</u> Plaintiff is contacted at his cell by Defendant Mr.
12 | McDermott for recreation escort to (1)(F) Pod. While being escorted Defendant
13 | Mr. McDermott states to Plaintiff that if Plaintiff needs anything while in (F) Pod
14 | " just get with Preacher ( Mr. Epting ) in cell (1)(F)(6), because he runs the
15 | pod for us and Keeps our J-Cats in check". Plaintiff responded that he did not approve
16 | of inmates who "play with their shit". Defendant then stated "Preacher is a good
17 | dude, you should holler at him". Plaintiff then stated he "didnt need nothing".

18 |    55. Plaintiff never once approached Mr. Epting's cell, nor any cell while in
19 | the (1)(F) Pod. Plaintiff simply showered and used the phone and thats it.

20 |    56. <u>March 2016</u> Plaintiff was contacted by ("John Doe" Defendant) Deputy
21 | Mr. Stavert (full information unknown) who stated "are you ready to be
22 | re housed to My building?" Plaintiff packed his property and complied with the
23 | transfer, even though Plaintiff understood this transfer to the HU(9) Isolation
24 | cell was another form of humiliation intended by the Classification officials,
25 | Plaintiff did not want to cause incident. Housing Unit (9) is the Mental Health
26 | Unit and not a Unit a normal, decent and clean living inmate would want to be
27 | housed. However, Deputies have made it their practice to allow normal inmates

1   to reside in this Unit, who are generally chosen and appointed as Unit workers
2   for efficency. Plaintiff bared witness to these normal inmate, alongside the
3   enabling and/or participation of HU(9) Deputy Mr. Stavert, assult and/or
4   plot to assult, many HU(9) inmates.

5         57. March 2016 through September 2016 Plaintiff bared witness
6   to these assults and/or the plot to assult inmates, by Deputy Mr. Stavert
7   alongside inmates in the HU(9) location. Inmates who can corroborate this
8   specific fact are, but not limited too; Devin Woodard, Daniel Chavez Estrella,
9   Foley Caldwell, Antwan Phifer, Demetrius Cells, Breshawn Clark, and
10  Scott Sullavitch (full information of these inmates unknown at this time).

11        58. March 2016 Plaintiff arrived to HU(9) and was told by Deputy
12  Mr. Stavert that "they thought they were gonna need an extraction team
13  on you", Plaintiff asked in response "why"?, Mr. Stavert stated "they thought
14  you would put up a fight having to be rehoused to this fucked up Unit".
15  Plaintiff stated that "thats not how I get down" and Deputy Mr. Stavert then
16  stated "I know, I told them you were cool, you were a team player."

17        59. After being placed into the HU(9) West Isolation, Plaintiff was
18  then told by Deputy Mr. Stavert that his Sergeant did not want him in the
19  West Isolation cell, since the East Isolation cell was used to house "lice
20  infected inmates" it would need a few days to clear for safe housing. Plaintiff
21  was taken back to HU(1) East Isolation. Three days later Plaintiff was again
22  contacted at his cell, this time by Class Deputy Mr. Vargas who directed for
23  Plaintiff to cuff up he was going to HU(9) East Isolation. Plaintiff complied
24  without comment nor incident.

25        60. The Isolation cell was extremely dirty. The HU(9) Deputy Mr.
26  Paredes, who was working the morning shift, stated it had been cleaned and
27  given the necessary time for all the bugs to die. The "lice warning" sign was

CIVIL RIGHTS COMPLAINT ($1983)                          PAGE 25 OF 162

1  then removed from the door and Plaintiff was placed into the cell. Plaintiff was
2  not provided disinfecting solution to sanitize cell, Plaintiff simply cleaned the
3  cell with shampoo.

4      61. <u>March 2016</u> Plaintiff began experiencing intense heat flashes
5  and dry, itching and rashing skin problems, within the first week of his
6  arrival to the isolation cell. Plaintiff submitted an inmate medical request
7  form (refer to Plaintiff's medical records) (Exhibit not available) to be seen
8  for his rash and itching and burning sensations. Plaintiff was soon there-
9  after seen by a nurse who could not make a diagnosis or prescribe any
10 antibiotics or (Tac) cream because Plaintiff did not show signs of a rash
11 that day. Plaintiff was told it was not serious. Plaintiff believes he had a bad
12 reaction to the dirty cell due to it not being properly disinfected after its
13 previous use for housing lice infected and unsanitary living inmates.

14      62. <u>March 2016</u> through <u>September 2016</u> Plaintiff underwent
15 a difficult transition of living being made to be housed in HU(9) hallway
16 cell, a difficult time for Plaintiff psychologically and physically. While housed
17 in the isolation cell Plaintiff rarely was able to sleep. The noise of the daily
18 and nightly activity was constant. Doors opening, closing and banging, Deputies
19 coming and going, inmates in and out the retunda, nurses and psychiatrists in
20 and out, and all the constant conversations held with HU Technician, all led
21 Plaintiff to an insomnia state, sleep deprivation, stress, claustraphobia,
22 and depression.

23      63. HU(9) Deputies would not allow Plaintiff to communicate with
24 other inmates while in the isolation cell, often stating for Plaintiff to "stop
25 talking to inmates" or "stop bothering inmates" when Plaintiff would attempt
26 to hold casual conversation to inmates in the hallway. These HU Deputies were,
27 but not limited too; Mr. Youmon, Mr. Bump, Mr. Kuwitzsky, Mr. Cummings,

1  us "and" dude is over there crying". Mrs. Krause was the HU (1) Deputy working the
2  p.m shift (5:00 p.m. to 5:00 a.m.) and Plaintiff believes from personal
3  Knowledge that inmate Mr. Epting was acting under the direction of Mrs. Krause
4  most likely after Mrs. Krause was disrespected by the inmate victim. From
5  personal observation Plaintiff knows Mrs. Krause to call on Deputy Mr. Stavert
6  when she is disrespected by an inmate and Mr. Stavert would assult the inmate.
7  Plaintiff believes Mrs. Krause was informed of Mr. Eptings willingness to gas
8  inmates for Deputies through Mr. Stavert or other informed Deputies and
9  thus utilized, assisted, enabled and committed assults on inmates with,
10 Mr. Epting in the HU (1) (F) Pod.

11      66. August 2016 through September 2016 Plaintiff meets with 4
12 (CJMH) employees : (1) Mrs. Leonicia Castro on (8-20-16) requesting a
13 plan for sleep and depression medications. Plaintiff was referred to (2) Mr.
14 Khenu Singh, MD., who seen Plaintiff on (8-24-16) and after suggesting
15 Plaintiff try breathing techniques for anxiety stated Plaintiff did not require
16 medication, Plaintiff was referred to clinician (3) Mrs. Elva Mouton to
17 be seen on (9-2-16) who after speaking with Plaintiff suggested looking into
18 a possible medication plan. The next clinician (4) was Mrs. Guadalupe Yanez
19 whom Plaintiff was told by HU (9) Deputy Mr. Bump (full information unknown)
20 was a "good counselor" (refer to Plaintiff's Mental Health records).

21      67. September 8th 2016 Plaintiff submitted an inmate message
22 request form to Ms. Guadalupe requesting to be placed on her case load in
23 which she responded to stating she would attempt to schedule an appointment
24 soon (see Inmate Message Request) (Attached hereto as "EXHIBIT M").
25 Plaintiff was contacted at his cell the next day by Ms. Guadalupe at which time
26 Plaintiff explained how he did not wish to be housed in HU (9) East Isolation
27 and that it was driving him crazy. She explained the decision was solely left up

CIVIL RIGHTS COMPLAINT (§1983)                    PAGE 28 OF 162

1 | Mr. MaHaffey and Mr. Phixitxohn, also including HU Technician Mrs. B
2 | (full information unknown) (refer to HU Tech logs). These Deputies would also
3 | place Plaintiff in HU (9) (A) Pod for recreation, which was used to house the
4 | more low capacity and indecent behaving mental health inmates. Plaintiff
5 | developed a split personality trait and thus submitted an inmate medical
6 | request to see the HU (9) Psychiatrist (refer to Plaintiffs medical records).

7 | 64. Deputy Mr. Stavert at times would bend the custom and allow
8 | for Plaintiff to recreation in a normal and more sanitized location such as
9 | HU (9) (B) Pod, where Plaintiff was granted the oppertunity to interact
10 | with inmates, and also allowed for Plaintiff to hold a casual conversation
11 | with a passerby inmate when in my cell. Plaintiff asked Deputy Mr. Stavert
12 | why he was being so cool when other Deputies were not, at which time he
13 | stated "I owe you for not snitching me out, thats how I work". Deputy Mr.
14 | Stavert eventually stated that he had to stop allowing inmates to associate
15 | with Plaintiff due to intake Deputies making complaints of Plaintiff having
16 | inmates at his cell.

17 | 65. Deputy Mr. Stavert would occassionally contact Plaintiff at his
18 | cell and tell Plaintiff of an inmate he had just assulted or had assulted by the
19 | Unit workers. Mr. Stavert would conversate with Plaintiff on one topic or
20 | another, including how he was intimately involved with female Deputy Mrs.
21 | Sarah Krause and how they would screw around in the HU Deputy office
22 | and /or nurse's sick call room at night. Plaintiff would often witness the
23 | two Deputies enter the nurse sick call room for these routine tryst.
24 | Mr. Stavert once held a conversation with Plaintiff asking if Plaintiff
25 | Knew an inmate named "Preacher" or "Epting". Plaintiff stated he had "heard
26 | of him". Mr. Stavert then stated that "he takes care of HU (1)" and Plaintiff
27 | stated "oh yeah?", Mr. Stavert stated "yeah, he just gassed some punk for

1  to Classification, however she would not mind looking into being Plaintiff's counselor.

2      68. Plaintiff spoke to Ms. Guadalupe approximately 4 to 5 times over the
3  next 2 ½ weeks. Plaintiff didn't get the feeling that he was articulating
4  his struggles well enough to Ms. Guadalupe and had gotten the impression
5  that she felt she couldn't do or wouldn't do anything for him. Plaintiff noted
6  that Ms. Guadalupe would be accompanied by HU⟨9⟩Deputy Mr. Phixitxohn
7  who, when asked if he could provide Plaintiff some space to talk confidentially
8  with Ms. Guadalupe, stated "NO!". Plaintiff wanted to discuss the treatment
9  he was receiving from the Class Deputies as well as speak about Plaintiff's current
10  Criminal case and the possible "debriefing" ⟨the official process of severing
11  one's self from any gang affiliations⟩ that Plaintiff had been considering for
12  some time, however felt uncomfortable discussing openly around Deputies,
13  especially Class Deputies because they had been known to spread rumors about
14  inmates amongst the general populace whenever it was beneficial for them to
15  do so; and Mr. Phixitxohn was a Class Deputy at that time.

16      69. Plaintiff then devised a plan to confide in Ms. Guadalupe of the
17  above stated struggles in Fact #⟨68⟩ however, before Plaintiff would do
18  that he instead wrote her a personal letter asking her to date him because he
19  found her attractive and other compliments that were not at all inappropriate.
20  Plaintiff gave this letter to Ms. Guadalupe personally and with the idea that
21  if she did not inform Deputies of the letter, whether she accepted or not,
22  Plaintiff could then trust to confide in her things regarding the Deputies.

23      70. The next day Ms. Guadalupe entered the Unit and walked to the
24  Housing Technician station and spoke with HU⟨9⟩Technician Mrs. B. Plaintiff
25  was standing at his cell door window looking directly at Ms. Guadalupe who
26  was looking directly at Plaintiff and responded to a question made by Mrs. B
27  ⟨question unheard⟩ stating "I don't get mad, I'm just gonna get even."

Ms. Guadalupe then walked away and Plaintiff never spoke with her again. It was evident that she felt disrespected with Plaintiff's approach, and that she spoke to the deputies and/or her supervisors. The next day Plaintiff's Mental Health case file had been closed by (Defendant) Psychiatrist Ms. Jennifer Chaffin, MD., for unknown reasons (refer to Plaintiff CJMH files).

71. September 26th 2016 Plaintiff was contacted at his cell by Sgt., Ms. Jones (Badge #1118) and HU(9) Deputies Mr. Mahaffey and Mr. Cummings and was asked if Plaintiff was "ready to go back to HU(2)?", Plaintiff stated "yes", and was told to cuff up and exit cell. Plaintiff was escorted to HU(2)(F) Pod by HU(9) Deputies Mr. Cummings and Mr. Mahaffey (full information unknown at this time) without incident. HU(2) Deputy Mr. Hammod (full information unknown at this time) ("John Doe" Defendant), stood by cell (2)(F)(5) awaiting Plaintiff's arrival.

72. Upon Plaintiff's arrival into the (2)(F) Pod he was immediately made aware of the unsanitary conditions, especially the strong odor of feces, the smell was strong enough to make Plaintiff gag. The escorting and the awaiting Housing Deputies did not seem to have a problem with the way these conditions were.

73. Plaintiff was placed into this cell that was completely saturated in feces. The stench was unbearable and Plaintiff was made to go in this cell involuntarily, however Plaintiff entered without incident. The entire floor was covered in feces and urine, both dry and fresh, as if someone had recently smeared feces over the entire cell. The cell was not sanitized before Plaintiff's arrival. The ceilling was splattered with feces, the desk and bunk beds was smeared with feces, and the toilet bowl full of feces.

74. Plaintiff made an immediate informal (verbal) complaint to HU(2) Deputy Mr. Hammod who had been working the a.m. shift this day. Plaintiff stated he "shouldn't be in this cell because it isnt right", at which time Mr. Hammod stated Plaintiff "should be lucky to have a t.v. shot", indicating that

1   Plaintiff was placed into a cell with a clear view of the pod television set from
2 the cell window which was considered a luxury to inmates, as there are a number of
3 cells that do not have the view of the t.v. set and these cells are another
4 form of discipline.

5     75. HU(2) Deputy Mr. Hammod handed Plaintiff a toilet bowl brush
6 and a spray bottle of watered down disinfecting solution and stated to
7 Plaintiff to clean his own cell, when Plaintiff indicated it needed to be cleaned.
8 Plaintiff did not put up a fight nor did he grieve out of fear of retaliation. The
9 unsanitary conditions of the (2)(F) Pod and (2)(F)(5) cell were obvious to,
10 and unbearable to, the senses, and Plaintiff was shocked that he would have to
11 be made to live there. By this time Plaintiff was aware that officers utilized this
12 location, and other <F>Pod locations, for severe mental health inmates who hold a
13 lower capacity for decency and sanitary living standards, and also those inmates
14 who have been deemed a program failure. Plaintiff learned this through conversations
15 with many Deputies and inmates, as well as from personal observation or awareness
16 of the patterns in Class's housing methods. Plaintiff did not think that he did
17 [anything] so disruptive or disrespectful to the Deputies to have had to be sent to the
18 "shit" pod, as it was known amongst all. The awareness of this treatment had an
19 adverse affect on Plaintiff and he immediately underwent a mental vicissitude.

20     76. September 28th 2016 Plaintiff, being aware that he was being
21 punished by being placed into this specific location, submitted a grievance
22 expressing the need to be rehoused (see Inmate Grievance and Response # 16-
23 1600) (Attached hereto as "EXHIBIT N (a)(b).") DENIED on (10-18-16) by Sgt.,
24 P.Kennedy, on grounds for the "role" Plaintiff played in the attempted murder on an
25 inmate as well as "unsafe behavior" Plaintiff has engaged in while in Ad.-Seg..
26 Appeal DENIED on (10-22-16) by L.T., K.M.Johnson (Badge#1318) CONCURRED
27 by L.T., P.H.Slaughter (Badge#1068). Criminal Justice Mental Health ("CJMH")

CIVIL RIGHTS COMPLAINT (§1983)        PAGE 31 OF 162

1   clinicians were never contacted regarding Plaintiff's mental health concerns.

2   77. September 29th 2016 (or otherwise the 4th week of September)
3   Plaintiff observed Defendant Mr. McDermott enter (2)(F)Pod and contact
4   inmate Mr. Fernando Soria ("Mr. Soria") at his cell (2)(F)(6) and told him to
5   move to cell (2)(F)(7). Mr. Soria was moved without incident. Defendant
6   Mr. McDermott then exited the pod, only to return with (2) african inmates
7   approximately 45 minutes later. One of these inmates was Mr. William Bernard
8   "Preacher" Epting ("Mr. Epting") who was placed into cell (2)(F)(6) and the
9   other (full information unknown) inmate was placed into cell (2)(F)(8).

10   78. September 29th 2016 Plaintiff overheard these 2 newly arrived
11   inmates speak to each other, by yelling out the cell door, discussing all that
12   had transpired leading up to their rehousing. Mr. Epting began the conversation
13   by stating to his friend that he "got ol' boy good, ha?!". The other inmate then
14   responds "I never seen nothing like that before bro", Mr. Epting responds "I got
15   a lot of juice with the Deputies and they let me do what I do", the other inmate
16   then asked "how were you able to get us moved?", and Mr. Epting answers
17   "McDermott is my boy, he heard about what I did and since he moved Units,
18   he wanted me to come over to his new unit and take care of this pod. I told him
19   I need my boy to come with me too". The other inmate then says "I aint never
20   seen no inmate have juice like that, where the police would just let you out
21   your cell whenever to do your thang", and Mr. Epting concludes with "I got
22   these young Deputies wrapped around my finger, I know how to play their game.
23   I know how they work .... anyway, Ill holla at you when I come out." Plaintiff
24   got the impression that officers allowed Mr. Epting to gas an inmate or an
25   inmates cell in the (1)(F)Pod location.

26   79. This same day Plaintiff observed Defendant Mr. McDermott enter
27   into (2)(F)Pod and allow for Mr. Epting to hang out in the pod, outside of his

1  scheduled recreation time, which became a routine incentive afforded to Mr.
2  Epting. During this specific occassion. Plaintiff observed Defendant Mr.
3  McDermott hand Mr. Epting a handful of latex gloves (blue), 1 large grey
4  bucket, and garbage bags. Mr. McDermott stated "you better take care of this pod or
5  you got nothing coming... kick your ass like rodney King". Mr. Epting said "aite big dog".

6      80. Mr. Epting then approaches Plaintiff's cell and states "are you the
7  one they call ' Twilight '?", Plaintiff stated "yes!". Mr. Epting then states
8  " I've heard of you" and that he wants "to be cool with" Plaintiff. Plaintiff then
9  states that he "dont mind associating with" him "however, understand that I
10 do not condone the practice of gassing other inmates, nor the practice of bullying
11 inmates". Mr. Epting then stated that "there is a reason behind why he "does" what
12 he "does". Mr. Epting continued to state that he does it for the Deputies and it
13 gives him a "sense of freedom to be out his cell and other privileges", so he "plays
14 the game". Plaintiff then concludes that he understands but for Mr. Epting to
15 "not bring any of that business" to Plaintiff's cell. Mr. Epting stated "alright".

16     81. Mr. Epting then is overheard by Plaintiff talking with an inmate
17 named Mr. James Duckett ("Mr. Duckett") at cell (2)(F)(2) where Mr.
18 Duckett was housed. Plaintiff overhears Mr. Epting state "now we're both
19 up in here, it's about to get messy" and Mr. Duckett responded "aint nothing
20 changed". Mr. Duckett then asked "McDermott moved you?" Mr. Epting
21 answered "yeah, you know that's my boy", Mr. Duckett concludes "yeah,
22 we're good over here with McDermott". Plaintiff knew that Mr. Duckett
23 and Mr. Epting had been housed together previously in the (1)(F) Pod and
24 while Defendant Mr. McDermott was assigned to the HU(1) during that
25 time. Plaintiff further knew that these inmates were of a like mind regarding
26 gassing inmates and receiving incentives or privileges from Deputies. Plaintiff
27 was already aware of Mr. Ducketts indecent behavior from Plaintiff previous

stay in the (2)(F)Pod, where Plaintiff was housed in cell (2)(F)(1) and Mr.
Duckett was housed in cell (2)(F)(2) and observed Mr.Duckett gassing inmates
and going without discipline.

82. September 29th 2016 through November 20th 2016 Plaintiff made
several informal (verbal) complaints to HU(2) Deputies requesting to be re-
housed from the (2)(F) setting due to unsanitary issues and foul play by inmates
being allowed to gas other inmates. These Deputies were, but not limited too;
Mr. Boutwell, Mr. A. Smith, Mr. McDermott (Defendant), Mr. Linn (Defendant)
Mr. Bump, Mr. Hammod, Mr. Sims, Mr. Prasad, Mr. Divine, Mr. K. Parker and
to other Deputies passing through the pod; Mr. Hamilton, Mr. J. Bailey, Mr.
Badial, Mr. lovel, Ms. Boughman, Mr. Stavert, Mr. Cummings, Mr. Lemmon,
Mrs. Mckenzie, Mr. Panconi, Mr. Sarcos, and to Class Deputies; Mr. Latu,
Mr. Bounds, Mr. Vargas, and Mr. McBride; all of which would state different
but corroborating responses such as " I dont know why they got you in a pod
like this, but I cant do nothing for you, you must of pissed somebody of high
rank off "or statements to that affect. Class Deputy Mr. Latu (full information
unknown) once stated that Plaintiff's "treatment/placement" was a "show of
who is in control".

83. September 29th 2016 through November 20th 2016 Plaintiff
bared witness, with his 3 senses, specifically; sight, sound and smell, to
foul play at the hands of, and speech of, several Deputies, along with the aid of
inmates, carried out upon several inmates in the (2)(F) Pod setting. This foul
play was done so mainly on the a.m. shift under the watch of Defendants
Mr. McDermott and Mr. Justin Linn (Badge #2248) ("Defendant Mr. Linn").
The HU Technician on duty during these a.m. shifts was Mr. Atkinson (full
information unknown at this time) ("John Doe" Defendant; incorporated into
Facts infra )(refer to HU Tech logs).

CIVIL RIGHTS COMPLAINT (§1983)                    PAGE 34 OF 162

84. <u>In the year 2016</u> Housing Deputies did not retain the authority to re house inmates within their HU without there being on immediate threat/concern present and /or the prior consent or command to do so by the Class Unit Officials. This fact was spoken to Plaintiff numerous times upon his numerous informal (verbal) requests to HU(2) Deputies, (listed in Fact #82; supra) to be re housed to a more normal pod. An example of this departmental authority can be seen in Fact (#31; supra) between HU Deputy Mr. Obeshuire and Class Deputy Mr. Bounds ("John Doe" Defendant). This proffers the fact that any and all inmates housed in the (2)(F) Pod as well as any and all inmates brought into and taken out of the (2)(F) Pod had been done so, and is still done so, by the Class Unit Officials' consent, direction, assistance and /or approval.

85. <u>September 29th 2016</u> through <u>November 20th 2016</u> Plaintiff observed Defendants Mr. McDermott and Mr. Linn orchestrate, enable, facilitate, and carry out many inhumane acts bordering torture and terrorism to many inmates in the (2)(F) Pod, both directly (physically partaking in the act) and indirectly (through the use of other inmates), violating a number of inmates rights, jail policies, rules and regulations, as well as state and federal laws. The inmates Plaintiff observed the Defendants Mr. McDermott and Mr. Linn violating, and at times alongside HU (2) Deputies Mr. Bump (full information unknown) and Mr. Hammod (full information unknown), are, however not limited too (due to lack of inmate information at this time) ; Mr. Preston Miller ("Mr. Miller"), Mr. Jeffery McMasters ("Mr. McMasters"), Mr. Fernando Soria ("Mr. Soria"), Mr. Micheal Rice ("Mr. Rice"), Mr. Will Allen ("Mr. Allen"), Mr. Nicanor Martinez ("Mr. Martinez"), Mr. Victor Acosta ("Mr. Acosta"), Mr. Vincent Charan ("Mr. Charan"), Mr. Rhaj Rhaj (PFN# BKA262)("Mr. Rhaj"), Mr. Jeremiah Cooper ("Mr. Cooper"), Mr. Ajuwon Muhammad ("Mr. Muhammad"), Mr. Kenneth Watkins ( violated in 2017)("Mr. Watkins") and Mr. Larry Bell

1  ⟨violated in 2017⟩ ⟨"Mr. Bell"⟩ and an inmate named Mr. Madrano ⟨full name is
2  unknown at this time⟩ who resided in cell ⟨2⟩⟨F⟩⟨1⟩ during the above dated
3  time period. All inmates were violated in their ⟨2⟩⟨F⟩ Pod cells.

4      86. Plaintiff observed Defendants Mr. McDermott and Mr. Linn, also
5  HU ⟨2⟩ Deputies Mr. Hammod, Mr. Bump, violating inmates, either along side
6  one another and/or independently from one another, directly and/or indirectly
7  with the willful aid of inmate Mr. William Bernard "Preacher" Epting ⟨PFN #
8  AQP388⟩ ⟨"Mr. Epting"⟩ and Mr. James Duckett ⟨PFN # BCW121⟩ ⟨"Mr. Duckett",
9  ⟨"Mr. Duckett" was involved in 2017⟩. Plaintiff observed all acts and in actions
10  throug sight, sound and smell from his ⟨2⟩⟨F⟩⟨5⟩ cell and cell window.

11      87. September 29th 2016 through October 2016 Plaintiff observing
12  Mr. Hammod while working the a.m. shift during the above time period, and is
13  approximately ⟨5:00 a.m. to 5:00 p.m.⟩, had on numerous occassions and on
14  different days, witnessed, enabled and encouraged ⟨verbally⟩ Mr. Epting's
15  routine episodes of gassing, specifically squirting feces into Mr. Miller's cell
16  ⟨2⟩⟨F⟩⟨9⟩. Mr. Hammod was overheard by Plaintiff stating to Mr. Epting to
17  "get him good" and "good job Preacher" ⟨"Preacher" is Mr. Epting's jail house
18  moniker⟩. Mr. Epting would use an empty shampoo bottle for which he would
19  fill with his feces to squirt into Mr. Millers cell.

20      88. These gassings would not be reported, to Plaintiff's opinion
21  ⟨refer to HU logs⟩, and Mr. Hammod would not contact Crime Scene
22  Restoration ⟨"CSR"⟩ workers ⟨contracted by the Santa Rita Jail facility for
23  sanitation/hazardous cleanings⟩ ⟨again refer to HU logs⟩ and would instead
24  ignore Mr. Miller's unsanitary conditions. Mr. Hammod had made it evident
25  verbally over the tier for all to hear that he disliked Mr. Miller. It is to the opinion
26  of Plaintiff that these two individuals, Mr. Hammod and Mr. Miller, had a history
27  and did not like, nor respect, one another, as Mr. Miller would in turn trash talk

1  to Mr. Hammod each day.

2       89. Mr. Hammod would at times not feed Mr. Miller his lunch or dinner
3  meals by walking past his cell stating "how do you like that shit?" At no time
4  did Plaintiff observe Mr. Miller retaliate by gassing either Mr. Hammod or Mr.
5  Epting, nor any other person. Mr. Miller would often times verbally state over
6  the tier to incoming Deputies that he was "being mistreated" by Mr. Hammod,
7  and the Defendants Mr. McDermott and Mr. Linn, also inmate Mr. Epting,
8  however, not one Deputy stopped to help ameliorate the situation or address
9  the obvious conditions, this including non-sworn personel.

10      90. September 29th 2016 through October 2016 Plaintiff recalls
11  ("CJMH") Psychiatrist Dr. Edwards (full information unknown at this time) ("Dr.
12  Edwards) and clinician Mr. Daniel (full information unknown at this time) ("Mr.
13  Daniel") were two primary Mental Health employees who bared witness too,
14  with their 3 senses of sight, sound and smell, Mr. Miller's conditions of
15  living and did not attempt to address these conditions, as no changes were made.

16      91. September 29th 2016 through October 2016 Plaintiff recalls
17  ("CFMG") Nurses Mrs. Melissa Brown ("Mrs. Brown"), Ms. C. Cox (full information
18  unknown at this time) ("Ms. Cox"), Ms. Michelle Tadeo ("Ms. Tadeo") and Ms.
19  Susana Obispo ("Ms. Obispo") being the four primary Medical employees who
20  bared witness too, with their 3 senses of sight, sound and smell, Mr. Miller's
21  conditions of living and did not attempt to address these conditions, as no
22  changes were made.

23      92. September 29th 2016 through November 20th 2016 Plaintiff
24  observing Defendants Mr. McDermott and Mr. Linn as well as HU Deputy
25  Mr. Bump while working the a.m. shift during the above time period, and is
26  approximately (5:00 a.m to 5:00 p.m and /or 7:00 a.m. to 7:00 p.m.), had on
27  numerous occassions, and on different days, witnessed, encouraged, plotted,

1  facilitated, orchestrated, directed, enabled, and committed; alongside one
2  another, and/or independently from one or the other, and with the willful aid and
3  use of inmates Mr. Epting and Mr. Duckett and inmate pod worker Mr. Shane
4  Jacob Woodcook (full information unknown at this time) ("Mr. Woodcook"); assult,
5  intimidation, torture, starvation, gassings, humiliation, threats, druggings,
6  and dehumanizing act and/or in actions towards Plaintiff and the following
7  inmates on the following occassions, though not limited to the following described
8  occassions (as the occassions were daily or routine on these Deputies shift):

9  93. (1) Defendants Mr. McDermott and Mr. Linn as well as HU(2)
10  Deputy Mr. Bump (who was directed to participate by, and introduced to
11  the following unlawful custom by, Defendant Mr. McDermott, on one particular
12  occassion in a commanding fashion or tone over the tier for all to hear) denied
13  Mr. Micheal Rice (2)(F)(13) his lunch and dinner meals. During the above
14  dated time period these Deputies were passing out lunch and dinner meals together
15  at 4:00 p.m. dinner time. Plaintiff overhears Mr. Rice being denied his meals at
16  least three times a week on Defendants shift, where Mr. Rice would have to
17  rely solely on the p.m. shift Deputies (who would disacknowledge Mr. Rice's
18  complaints of not receiving lunch or dinner) to provide him a 4:00 a.m.
19  breakfast meal.

20  94. Plaintiff, on these occassions, would overhear Mr. Epting directing
21  Defendant Mr. McDermott and/or Defendant Mr. Linn, in a pre-established
22  code, upon their entering the pod to feed and hollering to Mr. Epting "what
23  are the Diets today?", state in response "Clear Dot for cells #(9)(11)(13)
24  and (14) and Vitamin D for cells #(7) and (10)." At which time these
25  Deputies would direct the pod worker Mr. Woodcook on who not to feed,
26  whos meals are to be given to Mr. Epting to receive medications before
27  being given to the inmate, and all extra meals to be given to Mr. Epting.

95. "Clear Dot" was a code word used between Mr. Epting and these Deputies to mean "no meal" for the targeted inmate. "Vitamin D" was another code word used between Mr. Epting and these Deputies to mean "remron meal" for the targeted inmate ("remron" is a psychiatric medication prescribed to inmates for depression and mood swings, that have the known side effects for sleeping and hunger) wherefore this medication would be added into the inmates meal without them being aware. Other code words were used between these individuals, Plaintiff will incorporate them accordingly and explain them below.

96. The unlawful "Clear Dot" act was carried out on inmates; Mr. Miller, Mr. Rice, Mr. Soria, Mr. McMasters, Mr. Allen, Mr. Martinez, Mr. Rhay, and Mr. Charan, several times. The unlawful "Vitamin D" act was carried out on inmates; Mr. Soria, Mr. Allen and Mr. Rice, several times.

97. Plaintiff was told directly by Mr. Epting, through the ventilation shaft, the two adjoining cells share, of what the codes were, what they meant and who (Deputies) knew about them. It is to the Plaintiff's opinion that Mr. Epting revealed this information to him to show just how well connected Mr. Epting is with the group of rouge Deputies in this facility, to make an impression on the Plaintiff. These other Deputies that were mentioned are; Mr. Stavert, Mrs. Krause, Mr. Pelk, Mr. Hamilton, Mr. Panconi, Mr. Maria, Mr. Badial, Mr. Sarcos, Mr. McBride, Mr. J. Bailey, Mr. W. Kauffman, Mr. Weaver, Mr. Plosser, Mr. Quigliaria, Mr. Reese, and Mr. Lovel; all knowing of, and what, the codes were, and had taken part, independently from one another, in carrying out, enabling or directing Mr. Epting on one or more of them on at least one occassion while in the HU(1)(F) Pod, also stating specifically that "Mr. Lovel is the most evil of them all".

98. Plaintiff was also informed of the many codes or "plays" (as Mr. Epting called them) in which he would carry out or "run" (as Mr.

Epting referred to it as) with the Deputies including, but not limited too;
"Clear Dot", "Invisible Man", "Contact Visit", "Vitamin D", "Court Date",
"Quarterback Sneak", "Home Invasion", "CSI", and "Restriction". Plaintiff
will attempt to describe each of these acts within this complaint accordingly.

99. Defendants Mr. McDermott and Mr. Linn denied Mr. Rice his
visitation with his father and other visitors on HU(2) scheduled visiting
days (Wednesdays and Saturdays) on at least (4) occassions, where
Defendant Mr. McDermott would state out loud "no visiting for you today Rice",
and then would falsely advise the visiting technician that Mr. Rice did not want
to come to visiting, that he "refused", a statement Plaintiff would overhear
from being in the visiting booths and listening to the Defendant's statements.
Defendant Mr. Linn would be present and not disagree. Plaintiff, once during
these false refusals of Mr. Rice's visiting, had asked his then girlfriend Ms.
Maria Viloria Sebastian ("Ms. Sebastian") to inform Mr. Rice's father of what
was going on with his son and the mistreatment he was suffering. Ms.
Sebastian stated to me she had indeed spoken to Mr. Rice's father, and that
he was even further concerned having been told by his son Mr. Rice that he was
not receiving the on-line commissary food orders that his father was ordering
him, and that the money was not in turn returned to his credit card. Mr. Rice's
father was suspicious that someone was stealing the packages upon arrival
to the HU(2).

100. Defendants Mr. McDermott and Mr. Linn have assulted Mr. Rice
on more than one occassion, where these officers would punch Mr. Rice or
push him while in hand cuffs, pepper spray him, or open his cell and allow
Mr. Epting to gas him. On one occassion particularly, before an a.m. visit,
Plaintiff observes Defendant Mr. McDermott enter the pod and address
Mr. Epting that he (Mr. McDermott) was going to take their "buddy" to

CIVIL RIGHTS COMPLAINT (§1983)                    PAGE 40 OF 162

1  a visit, and that he will "leave the door open for home invasion". Mr. Rice
2  was then escorted to visiting, his cell door being left open. Plaintiff was then
3  escorted to visiting, his door closed. Upon Plaintiff's return from visiting, he
4  observed Mr. Epting exiting out of cell (2)(F)(13), belonging to Mr. Rice,
5  in a hurried fashion as if having been notified to hurry due to visiting recall,
6  bucket in hand, gloves on hands, and sweating. Mr. Epting ran down the stairs
7  and into his cell. Upon entering the pod Plaintiff could smell the unbearable
8  stench of feces and gagged. Defendant Mr. McDermott gagged as well. After
9  being placed into his cell, Plaintiff observed Defendant Mr. McDermott let
10  Mr. Epting back out his cell after informing him he needed a quick shower.
11  Defendant Mr. McDermott then exited the pod and returned with Mr. Rice,
12  who was escorted to his cell. Plaintiff then overheard Mr. Rice state "I
13  cant go in there", Defendant Mr. McDermott responded "get in your cell Rice",
14  Mr. Rice then "man, I aint going in there". Plaintiff then overhears a tussle,
15  that ended in a loud thump and a metal bang, then the cell door being slammed
16  shut. Plaintiff was able to conclude that Defendant Mr. McDermott either pushed
17  or body slammed Mr. Rice into the cell and locked him inside. Mr. Rice was left
18  in hand cuffs until hours later, and the cell never sanitized. The technician on
19  duty this shift was Mr. Atkinson.

20        101. Plaintiff was then told by Mr. Epting that he had covered Mr.
21  Rice's cell with feces including his bunk, mattress, sink, toilet, walls and
22  desk. Mr. Epting then returned to his cell. At no time did Plaintiff observe or
23  overhear Mr. Rice retaliate against Defendants Mr. McDermott and Mr. Linn,
24  or Mr. Bump or Mr. Epting in anyway in response to or in connection to
25  these many acts of mistreatment.

26        102. September 29th 2016 through November 20th 2016 Plaintiff recalls
27  ("CJMH") Psychiatrist Dr. Edwards and clinician Mr. Daniel were two primary

1  Mental Health employees who bared witness too, with their 3 senses of sight,
2  sound and smell, Mr. Rice's conditions of living and did not attempt to address
3  these conditions, as no changes were made.

4      103. <u>September 29th 2016</u> through <u>November 20th 2016</u> Plaintiff recalls
5  ("CFMG") Nurses Mrs. Melissa Brown, Ms. Michelle Tadeo, Ms. C. Cox and Ms.
6  Susana Obispo were four of the primary Medical employees who bared witness too,
7  with their 3 senses of sight, sound and smell, Mr. Rice's conditions of living and did
8  not attempt to address these conditions, as no changes were made.

9      104. (2) Defendant Mr. McDermott and HU(2) Deputy Mr. Bump
10  entered the pod and passed out lunch meals. This was one of those rare days
11  where these officers passed out the lunch meal on time, at approximately 10
12  a.m to 11 a.m., as HU(2) Deputies (Defendants) were known to wait until the
13  4 p.m dinner meal to feed the unit at one time. <u>Mr. Nicanor Martinez</u> (2)
14  (F)(4) was not fed his lunch this day and instead passed up. Mr. Martinez had
15  been placed into an unsanitary cell and had addressed concerns to Defendant
16  Mr. McDermott the day before, whom in turn stated "I dont care, clean it up
17  yourself." Mr. Martinez could be heard stating the cell "smells like shit man".

18      105. After being skipped for lunch meal, Mr. Martinez began calling
19  Defendant Mr. McDermott a "bitch ass cop" and Kicking the door in anger.
20  Plaintiff then overheard Mr. Epting state "he needs a contact visit." The
21  Deputies then exited the pod only to return approximately two minutes later.
22  Defendant Mr. McDermott entered Mr. Martinez cell followed by Mr. Bump,
23  at that time Plaintiff overheard Defendant Mr. McDermott state "Dont fuck
24  with us, we aint the one's" and "Keep your mouth shut in this pod". Plaintiff
25  could also hear an assult taking place, bumping of the wall and scuffling,
26  and then Plaintiff hears Mr. Martinez cry out "I didnt do nothing man"
27  and "okay, okay, I cant breathe." The Deputies then exited the cell and

exited the pod.

106. Later this day at 4 p.m. dinner time, Defendant Mr. McDermott did not open Mr. Martinez cell tray slot and Mr. Martinez was not provided his dinner meal. Plaintiff then called to Mr. Martinez through the cell doors and asked him if he was alright. Mr. Martinez stated "they wont feed me" and that "Mr. McDermott punched me, slammed me, pinned me down" and "choked me out" to the point of blacking in and out. He stated he was coughing up blood. Plaintiff told him to alert the nurse.

107. The next day Plaintiff observed Mr. Martinez attempt to alert the nurse. Ms. Michelle informally (verbally) of his condition. Ms. Michelle was accopanied by Defendant Mr. McDermott who was over heard stating to the nurse "He's okay, he's just bullshitting, he's a cat" and directed the nurse to move onto the next cell. This nurse did not proceed as she should have with questions to determine the seriousness of Mr. Martinez's notice. Mr. Martinez stated he was "coughing up blood". The Technician on duty this shift was Mr. Atkinson.

108. <3> Defendants Mr. McDermott and Mr. Linn were observed by Plaintiff entering the pod and further observed through the reflection of the pods west wall (glass) entering Mr. Fernando Soria's cell <2><F><11> and Defendant Mr. McDermott is overheard stating for Mr. Soria to "cuff up" and that he was "going to the yard". Mr. Soria was escorted out the pod, his door was left open. Defendants Mr. McDermott and Mr. Linn then return and let Mr. Epting out his cell and Mr. McDermott state "got everything you need for Home Invasion?" and Mr. Epting replied "yup". The Deputies then exited the pod.

109. Plaintiff then observed Mr. Epting walk up the stairs with a grey storage bucket filled with what looked like brown liquid and smelled like feces. Mr. Epting was wearing gloves. Mr. Epting then approached <2><F><11>

1  and began smearing the feces on the inside of the door, the walls and Plaintiff
2  alleges also onto the cell bunk and floor. Mr. Epting then exits the cell, and
3  takes a shower, then returns to his cell.

4      110. Defendants Mr. McDermott and Mr. Linn then escorted Mr. Soria
5  back to his cell and Plaintiff observes Mr. Soria hesitate and refuse to enter
6  his cell. Defendant Mr. McDermott then shoves Mr. Soria into the cell and Mr.
7  Linn slams the door closed. Mr. Soria is heard banging on the door. Defendant
8  Mr. McDermott was seen laughing at Mr. Soria through the window before exiting
9  the pod. Mr. Soria was not uncuffed until hours later and his cell was never
10 sanitized. The technician on duty this shift was Mr. Atkinson.

11     111. Defendants Mr. McDermott and Mr. Linn were observed by
12 Plaintiff entering the pod and opening Mr. Epting's cell door. Defendant Mr. Linn
13 stated "wassup Quarterback" and Mr. McDermott stated "you good?", Mr.
14 Epting stated "yeah". Defendants Mr. Linn was then seen walking upstairs,
15 and Mr. McDermott exited out the side pass through door into <2><E> Pod.
16 Defendant Mr. Linn then stood by Mr. Soria's cell for a brief moment, keyed
17 it open and exited through the side pass through door into <2><E> Pod,
18 however before exiting he signaled for Mr. Epting to come out his cell by
19 whistling. Mr. Epting then is seen going upstairs with a gray bucket full of
20 liquid down feces and stops in front of Mr. Soria's cell, sets the bucket down,
21 open the door, pick up the bucket and step inside the cell and Plaintiff hears a
22 splash and Mr. Epting closes the door and hurrys back to his cell. Mr. Soria
23 was made to remain in the cell without <"CSR"> being called out to sanitize
24 the cell and Mr. Soria did not get to shower that day. At no time did Plaintiff
25 observe or overhear Mr. Soria retaliate against Defendants Mr. McDermott and
26 Mr. Linn, or Mr. Epting in any way in response to or in connection to this act or
27 any act of mistreatment.

CIVIL RIGHTS COMPLAINT <§1983>

112. September 29th 2016 through November 20th 2016 Plaintiff recalls ("CJMH") Psychiatrist Dr. Edwards and clinician Mr. Daniel were two of the primary Mental Health employees who bared witness too, with their 3 senses of sight, sound and smell, Mr. Soria's conditions of living and did not attempt to address these conditions, as no changes were made.

113. September 29th 2016 through November 20th 2016 Plaintiff recalls ("CFMG") Nurses Mrs. Melissa Brown, Ms. Michelle Tadeo, Ms. C. Cox and Ms. Susana Obispo were four of the primary Medical employees who bared witness too, with their 3 senses of sight, sound and smell, Mr. Soria's conditions of living and did not attempt to address these conditions, as no changes were made.

114. (4) Defendant Mr. McDermott was overheard by Plaintiff talking to Mr. Epting at his cell door. Mr. Epting is overheard telling Defendant Mr. McDermott to "bring" him cell (2)(F)(14) (inmate information unknown at this time) because Mr. Epting got "vitamin D" for him, also stating he has some for "Uncle Will" or Mr. Will Allen (2)(F)(7) as well. Defendant Mr. McDermott then instructs pod worker Mr. Woodcook to "bring Preacher these guys trays" and Mr. Woodcook stated "okay". Once all dinner meals were passed out Mr. Woodcook brought down cell (2)(F)(14) dinner tray and handed it to Mr. Epting. Defendant Mr. McDermott was then observed lingering around Mr. Epting's cell for about 1½ minutes, while Plaintiff believes Mr. Epting crushed psychotheraputic medications into these inmates food trays. Mr. Woodcook had exited the pod as did the other pod worker. Plaintiff then overhears Mr. McDermott "here Uncle Will, eat your beans, there from Preacher" and then Plaintiff observes Defendant Mr. McDermott walk upstairs with a dinner meal tray and overheard him state "here (unknown name) dinner time buddy" opening and closing the cuffing port and exiting the pod.

115. Mr. Epting then called to Plaintiff through the ventilation and told

of how Mr. Epting had crushed "Remron" into the dinner meals. Mr. Epting stated how he specifically crushed 7 "Remron" pills into Mr. Will Allen's "beans" and that Mr. Epting was "trying to kill his ass". Mr. Epting stated that he had done this because these inmates made "too much noise at night" and it "disturbed his sleep". Plaintiff would thereafter notice these inmates would be skipped for pod time (recreation) as a "restriction" multiple times. Plaintiff would not hear these inmates voices for days at a time. It is to Plaintiff's understanding that these inmates were sleeping due to the medication placed into their food. Plaintiff never heard these inmates complain about this treatment, and Plaintiff does not believe these inmates knew of this act that was carried out more than once.

116. The unlawful "Restriction" act was another code meaning "no pod time (recreation)" for an inmate, that would range anywhere from 1 day to 1 month. This act would be carried out on at least 1 inmate each day the Defendants Mr. McDermott and Mr. Linn were on duty. The unlawful "Restriction" act was carried out on inmates; Mr. Miller, Mr. Charan, Mr. Soria, Mr. Allen, Mr. Muhammad, Mr. Rice and Mr. Rhaj.

117. September 29th 2016 through November 20th 2016 Plaintiff overhears Defendant Mr. McDermott make the following comments out loud while in the (2)(F) Pod; "Soria, you don't want any problems, we already broke your arm"; "Preston, better shut your scary ass up bitch, or you wont eat"; "Take Preacher some gloves and bags" (directing Mr. Woodcook to aid Mr. Epting with materials needed to gas); "We treat our friends well around here" (when providing Mr. Epting with other inmates lunch meals as incentive); "Its 3 on 1 around here" (talking to Mr. Martinez while in the presence of Mr. Linn and Mr. Bump, said to intimidate inmate); "who is not eating today?" (overheard on the cell intercom asking Mr. Epting which

inmates Mr. Epting had on "diets" that day); "who is not coming out today?" (overheard on the cell intercom asking Mr. Epting which inmates Mr. Epting had on "restriction" that day); "all our buddies say 'wassup Preach'" (talking to Mr. Epting and referring to other deputies) and "Sergeant said good job Preach" (talking to Mr. Epting and referring to Mr. Epting being directed to gas inmates one saturday morning before a group of young adults was to tour the (2)(F) Pod. On this occassion Mr. Epting created an extremely unbearable stench with feces by gassing a number of inmates after being let out his cell by Defendant Mr. McDermott, that was so bad the young adults were running out the pod.).

118. September 29th 2016 through November 20th 2016 Plaintiff observes HU (2) overtime Deputy Mr. M. Panconi (full information unknown) talking with Mr. Epting at Mr. Epting's cell and openly in the pod for anyone to hear, about an incident that took place in HU (1)(F) Pod. Mr. Epting asked if Mr. Panconi and Mr. Hamilton "left" inmate (unknown, though it possibly may have been an inmate name Mr. Gabriel Weathersby) "in the cell?" Mr. Panconi stated that "we left him in there for a while but then I moved him because I felt bad, not even I could stand the smell", then further stated "Mr. Hamilton" (full information unknown) was impressed but mad cuz he had to smell it all night". Mr. Epting then asked Mr. Panconi to "tell Ms. Krause to come see him", Mr. Panconi stated he would "tell her". Mr. Epting was bragging to Mr. Panconi how he "really did a number on" inmate (unknown, though it possibly may have been inmate Mr. Gabriel Weathersby) and how Mr. Epting heard "he was crying when they put him back into his cell". Mr. Panconi shook his head indicating that the inmate indeed was crying. It is to Plaintiff's opinion that Mr. Panconi knew of Mr. Eptings activity, and involvement in this unlawful act, if not complicit.

119. September 29th 2016 through November 20th 2016 Plaintiff observes HU (2) overtime Deputy Mr. Hamilton talking with Mr. Epting at Mr.

Epting's cell and openly in the pod for anyone to hear, about what the Plaintiff believes is the same incident Mr. Epting and Mr. Panconi were speaking of in Fact #⟨118; supra⟩. Mr. Hamilton stated to Mr. Epting how that guy Mr. Epting "gassed" was "gassed good" and was "crying" when he was left in his cell" and how they eventually "moved" the inmate. It is to Plaintiff's opinion that Mr. Hamilton knew of Mr. Epting's activity and involvement in this unlawful act.

120. It is to Plaintiff's opinion that Mr. Epting was enabled and assisted by HU⟨1⟩ Deputies to gas an inmates cell while the inmate was away, and this inmate was placed back into his cell upon his return. The inmate was made to live in this cell after it had been violated by Mr. Epting, and that Mr. Panconi and Mr. Hamilton, whom were both HU⟨1⟩ regular Deputies for the p.m. shift around this time ⟨August 2016 through late September 2016⟩, were two of the Deputies "in the know" of Mr. Epting's activity and took part in this incident by allowing for this inmate to remain in this unsanitary condition, and covered up the incident so it would not be investigated by the Sheriff's Office, a practice that had begun to be custom.

121. September 29th through November 20th 2016 Plaintiff overheard a conversation held between ⟨"CFMG"⟩ Nurse Ms. C. Cox, while working the HU⟨2⟩ p.m. shift ⟨3:00 p.m. to 11:00 p.m.⟩, and Mr. Epting. This conversation took place at Mr. Epting's and openly in the pod for anyone to hear, while Ms. Cox was passing Mr. Epting his night medication, at which time Ms. Cox stated to Mr. Epting that she was directed by HU⟨1⟩ Deputy Mr. Hamilton, after being gassed by an unknown inmate while passing out medication in HU⟨1⟩ earlier in the evening, to tell Mr. Epting about it. Ms. Cox stated "Hey Mr. Epting.... I got gassed today.... Mr. Hamilton told me to tell you, he said that you would know what to do, whatever that

means." Mr. Epting stated "Oh yeah? Ill take care of it." Plaintiff understood this as being a message passed from a Deputy to an inmate, through a nurse – whom seemed genuinely unaware of the purpose behind this message – to relay said message with the intentions of orchestrating a future assult or gassing on said inmate.

122. September 29th 2016 through November 20th 2016 Plaintiff overheard Mr. Epting ask the following Deputies to relay the same message he had asked Mr. Panconi to relay to Deputy Ms. krause in Fact (#118; supra), to Ms. Krause; Mr. Hamilton, Mr. Sarcos, and Mr. Stauert. All requests made to Deputies independently on seperate occassions and done so openly in the pod for anyone to hear.

123. September 29th 2016 through November 20th 2016 Plaintiff was gassed by inmate Mr. James Duckett (2)(F)(2) whom at this time was a "known gasser". Mr. Duckett was an inmate who if not given his way would create a scene that would place others in harms way, this including Deputies and inmates alike, threatening to gas others and/or the (2)(F) Pod area. Mr. Duckett, while outside his cell for recreation, had begun to throw his feces at Plaintiff's cell door and smearing it over the outside of cell window and squishing it through the cell door speaking grate. Mr. Duckett displayed this behavior several times to several different inmates throughout the above time frame and continued this behavior well beyond (examples to be incorporated in Facts infra).

124. September 29th 2016 through November 20th 2016 Plaintiff observed Defendant Mr. McDermott enter the pod upon his arrival to work the a.m. shift (approximately 7:00 a.m to 7:00 p.m) carrying restraint shackles and contact Mr. Epting at his cell. Plaintiff hears Defendant Mr. McDermott state to Mr. Epting "I added Soria to the

1  list for a "court date" today", Mr. Epting responded "all day?" and Defendant
2  Mr. McDermott says "well see how he acts". Defendant Mr. McDermott then
3  contacted Mr. Soria (2)(F)(11) opening his cell door and placing Mr. Soria
4  in the shackles. Mr. Soria was left in his cell shackled until the completion
5  of 4:00 p.m. dinner meal, approximately 4:30 p.m.. Prior to this specific
6  incident, inmates for court had already been staged or shackled at 6:00 a.m.
7  by Defendant Mr. Linn who had arrived to work the a.m. shift at approximately
8  5:30 a.m.. Mr. Soria would be unshackled and told "no court today Soria".

9      125. This unlawful "court date" act was another code meaning an
10  inmate would be "shackled" in his cell ranging anywhere from morning until
11  evening (5:00 p.m) before the next shift of Deputies arrived. This unlawful
12  act was carried out several times by Defendant Mr. McDermott, whom at
13  times was accompanied by Defendant Mr. Linn and carried out on inmates; Mr.
14  Soria, Mr. Rice and Mr. E. Madrano (PFN# BEN325).

15      126. November 19th 2016 Plaintiff observed Defendants Mr. Linn and
16  Mr. McDermott entering the (2)(F) Pod and contacting Mr. Epting at his cell.
17  Defendant Mr. McDermott stated "wassup Preacher?", Mr. Epting responds "wassup
18  big dog?". Plaintiff then overheard the following conversation; Mr. Epting
19  stated to the Defendant Deputies "you trying to watch the 'Invisible Man'?",
20  Defendant Mr. Linn responded "yeah, well see whats up....maybe around
21  after 4 o'clock", Defendant Mr. McDermott asked, "what channel is it on?"
22  and Mr. Epting answers "Channel 15". Defendant Mr. Linn concludes by stating
23  "okay okay". The Defendant Deputies then exit the pod.

24      127. Later this day, at approximately 4:30 p.m., after p.m. dinner
25  meals were distributed, Defendants Mr. McDermott and Mr. Linn were observed
26  by Plaintiff entering the pod. Defendant Mr. Linn walked upstairs and Defendant
27  Mr. McDermott keyed open Mr. Epting's cell door and immediately exited out the

1   pod through the side pass through door into ⟨2⟩⟨E⟩ Pod. Mr. Epting then exits
2   his cell and walks upstairs with a number of shampoo bottles filled with brown
3   liquid feces. Plaintiff hears a cuffing port being opened and Mr. Epting begin
4   verbally cursing Mr. Soria telling him to "shut the fuck up" and "smell this
5   shit". Plaintiff then hears the cuffing port being closed and observed Defendant
6   Mr. Linn exit the pod through the side pass through door into ⟨2⟩⟨E⟩ Pod. Mr.
7   Soria was not allowed to sanitize his cell nor take a shower. Mr. Epting remained
8   outside of his cell for extra recreation time. The technician on duty this shift
9   was Mr. Atkinson ⟨"John Doe" Defendant⟩.

10      **128.** November 20th 2016 Plaintiff is awaken by the sound of Mr.
11  Epting's cell door being keyed open, at approximately 5:45 a.m., prompting
12  Plaintiff to get out of bed and look out of the cell window. Plaintiff observes
13  HU⟨2⟩ overtime Deputy Mr. Lovel walking past his cell after keying open
14  Mr. Epting, Plaintiff then observes Mr. Lovel stop in front of cell ⟨2⟩⟨F⟩⟨1⟩
15  and open the cuffing port and exit out the pod through the side pass through
16  door into ⟨2⟩⟨E⟩ Pod. Mr. Epting then exits his cell and walks past Plaintiff's
17  cell with a number of shampoo bottles filled with what Plaintiff believed to
18  be feces, walking to cell ⟨2⟩⟨F⟩⟨1⟩ where Mr. Epting began gassing or
19  squirting into cell ⟨2⟩⟨F⟩⟨1⟩. The occupant ⟨unknown African inmate, only
20  housed in this cell a total of two days⟩ was overheard saying "what the
21  fuck are you doing man? Stop! Aye, officer... Help!". Mr. Epting then hurried
22  back to his cell closing the door. Mr. Lovel returned several minutes later and
23  locked ⟨2⟩⟨F⟩⟨1⟩ cuffing port and exited the pod.

24      **129.** November 20th 2016 Plaintiff observes HU⟨2⟩ overtime
25  Deputy Mr. Barao entering the ⟨2⟩⟨F⟩ Pod for what looked to be a count
26  ⟨inmate counts are done periodically throughout the day and night⟩ however,
27  Mr. Barao became immediately distracted by the smell of the pod and the

dirtiness of the pod, and Mr. Barao ⟨full information unknown⟩ begin taking pictures of the pod area with his cellular phone. Mr. Barao was making open comment such as "this is disgusting" and "is nobody doing their job around here?". Mr. Barao then began to walk the tier going door to door looking into each cell with a little more attention than normal, and can be heard asking inmates "let me see your cell". It is at this time Mr. Barao noticed Mr. Soria's living conditions that ⟨unbeknownst to Mr. Barao⟩ was created just the day before. Mr. Barao then has Mr. Soria ⟨2⟩⟨F⟩⟨15⟩ removed from his cell and contacted ⟨"CSR"⟩ workers.

130. Later this day, approximately noon time, ⟨"CSR"⟩ worker Mr. Andrew Ramirez, who had been the designated restoration worker around this time, arrived to the ⟨2⟩⟨F⟩ Pod and was directed to cell ⟨2⟩⟨F⟩⟨15⟩. Mr. Andrew Ramirez had been contacted and directed to ⟨2⟩⟨F⟩ Pod on a previous occassion after an incident occurred when HU⟨2⟩ over time Deputy Mr. Joseph Bailey had pepper sprayed Mr. Will Allen ⟨2⟩⟨F⟩⟨4⟩ through the cuffing port while staging or opening cuffing ports for a.m. breakfast meal, which led Mr. Allen to throw the contents of his toilet out into the pod. The episode ended with the pod floor being covered in feces for a total area of 72ft. which led Mr. Ramirez being contacted the next day.

131. After several hours of cleaning and sanitizing ⟨2⟩⟨F⟩⟨15⟩ Mr. Ramirez exited the pod. Mr. Soria was placed back into his cell with no incident. Mr. Ramirez was observed entering the ⟨2⟩⟨F⟩ Pod again the very next day, approximately noon time, stating to Plaintiff, who had said "hello", "I'm back to finish the job." Mr. Micheal Rice was escorted out of his cell ⟨2⟩⟨F⟩⟨13⟩ just prior to Mr. Ramirez's arrival, and Plaintiff is led to believe that on ⟨11-20-16⟩ Mr. Ramirez had been directed to also clean ⟨2⟩⟨F⟩⟨13⟩ but due to time, was unable too, thus returning the

1  next day.

2   132. <u>September 26th 2016</u> through <u>November 20th 2016</u> Plaintiff
3  lived in an unsanitary and disgusting environment. The pod area reeked
4  extremely bad. The feces smell would permeate Plaintiff's cell day and
5  night. Plaintiff at times would throw up or vomit, times where Plaintiff would
6  tell Mr. Epting that what he "was doing wasn't right." The feces problem was
7  never addressed, as feces was evident on doors, on the cielling ⟨which Mr.
8  Epting had thrown onto the cielling to give the pod a constant reeking
9  smell⟩, on the pod floor, on the pod walls, and in the cells. It was evident, to
10 Plaintiff, that this environment was being maintained and facilitated for discipline
11 purposes, as well as to humiliate inmates including Plaintiff, and Mr. Epting was
12 carrying out the Deputies dirty work. Other inmates had gassed the pod area
13 and into other inmates cells, such as Mr. Duckett and Mr. Allen ⟨examples
14 provided in Facts supra⟩, what seemed to be done independently from Deputy
15 facilitation, however, the overall unsanitary environment was being encouraged
16 and orchestrated by Defendants Mr. McDermott and Mr. Linn and others, through
17 inmate Mr. Epting, and later Mr. Duckett, and the entire time Plaintiff was made to
18 live humiliated in this environment with these types of inmates and officers.

19  133. At no time did Plaintiff ever participate in the unlawful activity of
20 gassing, nor did Plaintiff retaliate against any inmate or Deputy in relation to this
21 unlawful activity in the ⟨2⟩⟨F⟩ Pod. Plaintiff was afraid of retaliation and for the
22 safety of himself and his property, and waited for the moment to confidentially
23 inform the right officials. During the above time frame. Plaintiff alerted his
24 family and friends of his living conditions and the mistreatment he witnessed,
25 however they told Plaintiff not to get involved because they feared for Plaintiff's
26 safety as well.

27  134. September 26th 2016 through November 20th 2016 Plaintiff did

not once observe any HU(2) regular, or other, Deputy attempt to utilize the HU(2) Pod workers to clean the pod, let alone disinfect or sanitize the pod, nor were there any signs of improvement to the pod conditions which would have indicated an officer had addressed the conditions or inquired into the possibilities of fixing these conditions.

135. Medical nor Mental Health employees were not once observed addressing the unsanitary conditions in the (2)(F)Pod, individuals cells or individuals complaints, such as; the flys (by the hundreds) hovering on doors and windows of the pod and cells; the trash piled up on the pod area floor; the trash piled high in inmates cells such as Mr. Madrano (2)(F)(1) where Psychiatrist Dr. Edwards would witness this inmates (and others) unsanitary living conditions and make no recommendations for assistance to sanitize the cell; or stop to consider the possibility that inmates concerns were genuine when yelled out in the pod while employees were in the pod such as Mr. Miller (2)(F)(9) where Psychiatrist Dr. Edwards would overhear this inmate (and others) yell to him that "Preacher in cell (6) threw shit in my cell" or that "McDermott aint give me my lunch", and after Defendant Mr. McDermott (or other HU Deputy) would make a comment to the effect of "Dont worry about him, he been yelling all day", he would exit the pod without concern. These employees as well as deputies were conducting business in this pod, in these conditions, and observed gagging, coughing, covering their noses, covering their shoes with blue hair nets, and on some occassions wearing masks. These employees were all led to believe, which led them to ignore the conditions, that these inmates were gassing each other or themselves. This was a cover up however, to mislead these employees.

136. November 20th 2016 After witnessing Mr. Barao and his concern for the pod conditions as well as the inmates individual cell conditions

1  Plaintiff, seeing this Deputies actions as the oppertunity he had been waiting for,
2  began to write a message to Mr. Barao, addressed simply as "B", where Plaintiff
3  gave a brief but concise description about the facilitation of gassing done by
4  deputies and a certain inmate. Plaintiff listed no names, stating in the message
5  that Plaintiff just wanted to let Deputy Mr. Barao know so he is aware of
6  what is going on, as he seemed genuinely concerned. Plaintiff stated he did
7  not want him to say anything about it due to fear of retaliation.

8        137. Plaintiff knew Mr. Barao from previous housing units where
9  this Deputy would be assigned as the regular HU Deputy and Plaintiff knew
10  him to be a "by the book" Deputy, cordial, fair though not friendly, and liked
11  his unit clean. Plaintiff decided that it was either "now or never", and thus,
12  working up the courage, Plaintiff handed this message, which was about 1 1/2
13  pages long front and back (lined paper), to the HU(2) Deputy Mr. Prasad
14  (full information unknown) who in turn gave it to Mr. Barao, as directed to.
15  (see copy of message addressed to "B") (Attached here to as "EXHIBIT N(C)
16  (1)(2)") (Plaintiff did not originally make a copy of this message and had to request a
17  copy from his court appointed attorney after the deposition-incorporated infra)

18        138. Approximately 1 hour later Mr. Prasad enters the pod and
19  contacted Plaintiff by opening the cell door cuffing port and whispered
20  to Plaintiff "that aint cool, that aint cool at all, I didnt know this was
21  going on." Plaintiff never seen Mr. Barao again that day or for a while after
22  that, however the next day Plaintiff was contacted by Mr. Prasad once again
23  regarding the message.

24        139. November 21st 2016 Plaintiff is contacted at his cell door
25  by Mr. Prasad who whispered to Plaintiff, through the door, stating Plaintiff's
26  message "made its way through the ranks to the Captains". Plaintiff stated
27  "thank you". This same day Plaintiff observes HU(2) Deputies Mr. Prasad and

1  Mr. Sims (full information unknown) enter the pod and contact Mr. Epting
2  at his cell (2)(F)(6). Mr. Epting was handcuffed and escorted to the (2)
3  East Dining area where he met with some kind of social worker. It is at
4  this time Mr. Sims re-enters the pod and enters Mr. Epting's cell for a cell
5  search, which had not been conducted before that at any time, and recovered
6  plastic bags, latex gloves and shampoo bottles full of feces that Mr. Epting
7  had been keeping stored in his cell. Plaintiff observed these items as Mr.
8  Sims exited the cell. Mr. Epting was then escorted back to his cell. Mr. Epting,
9  once aware of a search having been conducted, became angry and started
10  yelling and cursing the Deputies, making threats to "Kiss their ass", because
11  these Deputies had refused to comform to the ideology and methods of
12  Mr. Epting's way of doing things, as he had become accustomed to with
13  other Deputies.

14      140. Plaintiff began to feel as if maybe things would change, as the
15  next few days passed relatively peaceful. HU(2) Deputies Mr. Prasad and
16  Mr. Sims even had the pod workers clean the pod. Plaintiff was hoping
17  that Mr. Epting would be re-housed, as the housing officers seemed to know
18  of his behavior. However, things became worst for Plaintiff and he began
19  to suffer from many forms of harassment in retaliation that would last
20  for months to come.

21      141. November 24th 2016 Plaintiff, while looking outside his cell
22  window, observed Class. Sgt. Mr. John Calegari (Badge Number unknown)
23  ("Defendant Mr. Calegari") recognized from past encounters, entering the
24  (2) East dining area where he meets with HU(2) Deputy Mr. Bump and HU(2)
25  Deputy Defendants Mr. McDermott and Mr. Linn. Mr. Calegari held a conversation
26  that lasted approximately 10 minutes and looked as if he were informing or
27  abreasting these HU(2) Deputies of something. As the minutes passed on,

CIVIL RIGHTS COMPLAINT (§1983)          PAGE 56 OF 162

1  APPROXIMATELY 10 MINUTES, THE DEFENDANT DEPUTIES MR. MCDERMOTT AND MR.
2  LINN BEGAN TO LOOK PLAINTIFF'S WAY, EVEN MAKING EYE CONTACT, AS IF PLAINTIFF'S
3  NAME WAS BEING MENTIONED IN THIS CONVERSATION, AND PLAINTIFF IMMEDIATELY
4  KNEW - AND STRONGLY FELT - THAT THIS SERGEANT DEFENDANT MR. CALEGARI TIPPED
5  THE DEFENDANTS OFF OF PLAINTIFF'S MESSAGE REGARDING HOUSING UNIT DEPUTY
6  MISCONDUCT. PLAINTIFF BECAME REAL FRIGHTENED AT THAT POINT. PLAINTIFF JUST KNEW
7  HE WAS IN FOR IT. PLAINTIFF WAS BECOMING FULLY AWARE OF THE DEPUTIES WELL
8  STRUCTURED AND CORRUPT ACTIONS OF MISTREATMENT AND THE MANY WAYS THEY CAN
9  ASSULT AN INMATE, PHYSICALLY AND /OR MENTALLY. THE FIRST OF MANY EPISODES OF
10 FRANTIC THINKING AND THOUGHTS OF TERROR RAN RAMPANT IN PLAINTIFF'S HEAD,
11 "WILL THEY HAVE ME GASSED?", "WILL THEY HAVE ME BEAT UP?", "WILL THEY
12 SPREAD THE RUMORS OF WHAT I HAD DONE?", "WILL THEY START STEALING/WITHHOLDING
13 MY MAIL?", "STEAL MY PROPERTY?". THIS WAS A DIFFICULT TIME FOR PLAINTIFF TO
14 DEAL WITH MENTALLY, AS IT WAS ALL SO NEW AND PLAINTIFF TRULY DID NOT KNOW
15 HOW TO DEAL WITH IT ALL.

16       142. IMMEDIATELY AFTER DEFENDANT SGT., MR. CALEGARI EXITED
17 THE HU(2) EAST DINING AREA - PRESUMABLY TO EXIT THE HOUSING UNIT -
18 DEFENDANTS MR. MCDERMOTT AND MR. LINN ENTERED THE (2)(F) POD AND WENT
19 DIRECTLY TO CELL (F)(6) MR. EPTING. PLAINTIFF WAS UNABLE TO OVERHEAR
20 ANY OF THE CONVERSATION AS HE NORMALLY COULD AS THEY HAD CLEARLY BEEN
21 WHISPERING. BOTH DEFENDANTS MR. MCDERMOTT AND MR. LINN WERE INSIDE MR.
22 EPTING'S CELL. THE CONVERSATION LASTED APPROXIMATELY 7-10 MINUTES AT WHICH
23 TIME THE DEFENDANTS CLOSED MR. EPTINGS CELL AND THEN EXITED THE POD. MR. EPTING
24 SOON THEREAFTER CALLED PLAINTIFF'S NAME THROUGH THE CELL'S VENTILATION AND
25 STATED THAT HE "CAN NO LONGER FUCK WITH" PLAINTIFF. PLAINTIFF STATED "OKAY"
26 AS HE HAD ALREADY FIGURED THIS WOULD HAPPEN AND DIDNT WANT TO ENCOURAGE
27 THE UNCOMFORTABLE CONVERSATION ABOUT WHAT MR. EPTING WAS POSSIBLY TOLD.

143. NOVEMBER 24TH 2016 (AFTERNOON HOURS) MR. EPTING WAS THEN ELECTRONICALLY POPPED OUT HIS CELL AT WHICH TIME HE CAME DIRECTLY TO PLAINTIFF'S CELL. THE HU(2) DEPUTY MR. BUMP AND DEFENDANTS MR. MCDERMOTT AND MR. LINN WERE NOT PRESENT IN PLAINTIFF'S LINE OF SIGHT THE ENTIRE TIME MR. EPTING WAS AT HIS CELL, PRESUMABLY IN THE TECHNICIANS BOOTH-OR-HOUSING CONTROL WITH TECHNICIAN MR. ATKINSON AS THESE DEFENDANTS ARE KNOWN BY ALL INMATES TO BE DURING THEIR SHIFT UNLESS ESCORTING MEDICAL/MENTAL HEATH EMPLOYEES AROUND AT THEIR RESPECTIVE TIMES. MR. EPTING BEGAN SAYING HOW PLAINTIFF IS AN "INFORMANT" AND THAT PLAINTIFF SNITCHED ON THE DEPUTIES AS WELL AS MR. EPTING REGARDING THEIR "ACTIVITY". MR. EPTING STATED THAT HE WAS GOING TO "KILL" PLAINTIFF" AND UNTIL THEN HE WAS GOING TO "GAS" PLAINTIFF "EVERY DAY", THAT PLAINTIFF HAD "NO BUSINESS SPEAKING ON BLACK GORILLA FAMILY BUSINESS". PLAINTIFF STATED TO MR. EPTING THAT THERE HAD BEEN A MISTAKE, THAT PLAINTIFF HAD NOT SNITCHED ON ANYBODY THAT IT MUST HAVE BEEN SOMEONE ELSE. MR. EPTING WAS ADAMENT THAT PLAINTIFF HAD INFORMED ON HIM AND THE DEPUTIES ALSO STATING THAT PLAINTIFF HAD "ONLY SUCCEEDED IN MAKING" HIS TIME "HARDER" FOR HISSELF BECAUSE DIDNT PLAINTIFF "KNOW THAT THE DEPUTIES ARE A BROTHERHOOD?" AND THAT "THEY ARE ALL WORKING TOGETHER" AND THAT "THEY TOLD ON YOUR STUPID ASS--THE WORD IS OUT". MR. EPTING STATED THE HE WAS "TOLD" THAT PLAINTIFF DID IT AND THAT PLAINTIFF "FUCKED UP". PLAINTIFF AND MR. EPTING BEGAN A VERBAL BACK AND FORTH DEBATE FOR ABOUT 5 MINUTES. PLAINTIFF ENDED UP WALKING AWAY FROM THE DOOR. MR. EPTING THEN PROCEEDED TO WALK AROUND THE POD AREA STATING OUT LOUD "WE HAVE A RAT IN THE POD, HIS NAME IS RUBEN FEBO EVERYBODY." AFTER A SHORT PERIOD OF THIS BEHAVIOR MR. EPTING WENT BACK INTO HIS CELL.

144. (LATE AFTERNOON HOURS) CLASS DEPUTIES MR. HAMBELTON AND ("JOHN DOE DEFENDANT") MR. MCBRIDE WERE OBSERVED BY PLAINTIFF ENTERING

1  THE HU(2) EAST DINING AREA AND TALKING WITH MR. BUMP AND DEFENDANTS
2  MR. MCDERMOTT AND MR. LINN. SOON THEREAFTER MR. HAMBELTON AND DEFENDANT
3  MR. MCBRIDE ENTERED (2)(F) POD AND WENT DIRECTLY TO CELL (2)(F)(6). MR.
4  EPTING WAS THEN ESCORTED OUT OF THE POD TOWARDS THE VESTIBULE. MR. EPTING
5  WAS GONE FOR APPROXIMATELY 25 TO 30 MINUTES WHEN HE WAS ESCORTED
6  BACK TO HIS CELL BY THESE SAME OFFICIALS. WHILE MR. EPTINE WAS AWAY FROM HIS
7  CELL, HU(2) DEPUTY MR. BUMP AND DEFENDANTS MR. LINN AND MR. MCDERMOTT WERE NOT
8  PRESENT, PRESUMABLY PRESENT WITH DEFENDANT MR. MCBRIDE AND CLASS DEPUTY MR.
9  HAMBELTON.

10  **145.** DEFENDANT MR. MCBRIDE THEN IMMEDIATELY APPROACHED PLAINTIFF'S CELL
11  DOOR, ALONG WITH MR. HAMBELTON, AND ASKED PLAINTIFF CAN HE "ENTER" HIS CELL,
12  AT WHICH TIME PLAINTIFF STATED "YES" — AS PLAINTIFF NEVER BEEN A THREAT TO OFFICERS
13  NOR OPPOSED TO THEM ENTERING HIS CELL AT ANY TIME TO DISCUSS JAIL HOUSE INFORMATION.
14  DEFENDANT MR. MCBRIDE DID ALL THE TALKING WHILE MR. HAMBELTON STOOD AT HIS
15  SIDE, BOTH SLIGHTLY OUTSIDE THE CELL DOOR. DEPUTY MR. BUMP AND DEFENDANTS MR. LINN
16  AND MR. MCDERMOTT WERE NOT PRESENT, PRESUMABLY IN HOUSING CONTROL BOOTH
17  LISTENING IN. DEFENDANT MR. MCBRIDE ASKED WHAT PLAINTIFF WAS DOING AND
18  PLAINTIFF RESPONDED THAT HE WAS MAKING A SAFETY MECHANISM TO PREPARE FOR AN
19  ASSULT AND ONSLAUGHT OF GASSINGS BY MR. EPTING. THIS MECHANISM PLAINTIFF WAS
20  CREATING AT THE TIME WAS MADE UP OF A BUNCH OF PLASTIC BAGS TAPED TOGETHER
21  THAT PLAINTIFF WOULD HANG ON THE INSIDE OF HIS CELL DOOR SO THAT NO FECES COULD
22  BE SQUIRTED INTO THE CELL BEYOND THE MECHANISM.

23  **146.** NOTE - THAT THIS MECHANISM, THOUGH CONSTRUCTED WITH NECESSARY
24  AND JUSTIFIABLE REASONS, AND ITS MATERIALS USED IN ITS CONSTRUCTION — SPECIFICALLY
25  THE TAPE WHICH WAS FROM PLAINTIFFS COMMISSARY PURCHASED SHAMPOO BOTTLES -
26  EVENTUALLY LED TO DEPUTIES CONFISCATING A NUMBER OF PLAINTIFF'S SHAMPOO'S AND
27  DEODARANTS AND CHARGING PLAINTIFF WITH A JAIL HOUSE VIOLATION (VIOLATION NO.

109 ⟨g⟩ ALTERED FROM ORIGINAL FORM. ⟩ ⟨SEE DISCIPLINARY REPORT⟩ ⟨ATTACHED
AS **EXHIBIT E4; INFRA**⟩, THE ENTIRE VIOLATION GRIEVED SOON THEREAFTER ⟨SEE
INMATE GRIEVANCE FORM AND RESPONSE⟩ ⟨ATTACHED AS **EXHIBIT F4 ; INFRA**⟩

**147.** DEFENDANT MR. MCBRIDE THEN STATED THAT PLAINTIFF DID NOT "HAVE TO
WORRY" THAT HE "INSTRUCTED MR. EPTING NOT TO GAS" PLAINTIFF. PLAINTIFF HAD A
STRONG FEELING THAT THIS DEPUTY WAS ALREADY IN THE "KNOW" OF WHAT WAS GOING
ON, AS IT HAD BEEN HIS OWN SERGEANT WHO WAS SEEN SPEAKING TO THE DEFENDANTS
MR. MCDERMOTT AND MR. LINN EARLIER IN THE DAY, SO WHEN MR. MCBRIDE THEN
ASKED "WHAT THE PROBLEM WAS" BETWEEN PLAINTIFF AND "MR. EPTING", PLAINTIFF
STATED HE "HAD NO PROBLEM", AND THAT HE IS "JUST DOING" HIS "TIME" AND THAT
"MR. EPTING THINKS" THAT PLAINTIFF "WROTE A KITE ABOUT HIM TO THE POLICE AND
WANTS TO KILL" PLAINTIFF. MR. MCBRIDE THEN ASKED "DID YOU?", PLAINTIFF STATED
"WHETHER" HE "DID OR DID NOT IS NOT IMPORTANT — BUT NO" PLAINTIFF "DIDNT SNITCH
ON NO ONE". MR. MCBRIDE THEN STATED ONCE AGAIN THAT PLAINTIFF WILL NOT HAVE
TO WORRY ABOUT MR. EPTING, THAT "HE WILL NOT BE MESSING WITH YOU". PLAINTIFF ASKED
IF MR. EPTING CAN BE MOVED OR IF PLAINTIFF CAN BE MOVED, AT WHICH TIME MR.
MCBRIDE STATED HE COULD NOT DO THAT. MR. MCBRIDE THEN CLOSED PLAINTIFF'S DOOR
AND EXITED THE POD.

**148.** <u>NOVEMBER 3RD</u> THROUGH <u>DECEMBER 23RD 2016</u> ON NOVEMBER
3RD PLAINTIFF RECEIVED $100.00 TO HIS INMATE TRUST ACCOUNT. ON NOVEMBER
5TH PLAINTIFF RECEIVED $60.00 TO HIS INMATE TRUST ACCOUNT. PLAINTIFF PLACED AN
ORDER FOR COMMISSARY ON NOVEMBER 10TH, HOWEVER, NO ORDER EVER ARRIVED. SO
PLAINTIFF PLACED ANOTHER ORDER ON NOVEMBER 17TH, HOWEVER, ONCE AGAIN NO ORDER
EVER ARRIVED. DURING THIS TIME PLAINTIFF MADE MANY INFORMAL COMPLAINTS TO HIS
HOUSING DEPUTIES BEFORE IT FINALLY WAS LOOKED INTO BY AN OVERTIME HU⟨2⟩ DEPUTY
MR. YOUMON, WHO HAD STATED TO PLAINTIFF THAT PLAINTIFF'S MONEY WAS NOT SHOWN TO
HAVE BEEN DEDUCTED OFF HIS TRUST ACCOUNT. THIS WOULD ONLY IMPLY ONE OF TWO THINGS

1 : EITHER PLAINTIFF NEVER PLACED AN ORDER AT ALL FOR THOSE WEEKS; OR PLAINTIFF'S
2 ORDER WAS CANCELLED OUT BEFORE THE DEADLINE. ON NOVEMBER 25TH PLAINTIFF
3 RECEIVED AN ORDER WHICH WAS COMPLETELY DIFFERENT, AS IF ALTERED BY ANOTHER,
4 THAN THE ONE PLAINTIFF PLACED THE DAY BEFORE. HOWEVER, GIVEN THE FACT PLAINTIFF
5 HAD JUST WENT OVER TWO WEEKS WITHOUT COMMISSARY PRODUCTS, PLAINTIFF OPTIONED
6 TO KEEP THE PACKAGE. ON DECEMBER 16TH PLAINTIFF RECEIVED WHICH HE KNEW TO
7 HAVE BEEN COMPLETELY ALTERED, HOWEVER, THIS TIME PLAINTIFF DID NOT ACCEPT THE
8 ORDER AS IT WAS CLEAR THAT SOMEONE WAS ALTERING PLAINTIFF'S ORDER PURPOSELY
9 (SEE RECEIPT OF 12/16/17 ORDER) ⟨ATTACHED HERETO AS "EXHIBIT O"⟩.
10 PLAINTIFF HAD MENTIONED THIS FACT TO THE POD WORKER MR. WOODCOOK, AT WHICH
11 TIME MR. WOODCOOK STATED THAT INMATE MR. EPTING WAS MANIPULATING PLAINTIFF'S
12 ORDER.

13     149. NOVEMBER 26TH 2016 HU(2) POD WORKER MR. WOODCOOK
14 ENTERED THE POD TO CONDUCT LAUNDRY EXCHANGE, AT WHICH TIME MR. EPTING
15 CALLED HIM OVER TO HIS CELL. SHOWING SIGNS OF SKEPTICISM, MR. WOODCOOK
16 CAME CLOSE ENOUGH TO MR. EPTING'S CELL WITHOUT LOOKING TOO SUSPICIOUS AND
17 STATED "I'M NOT ALLOWED TO COME INTO THIS POD AND FUCK AROUND ANY MORE
18 BECAUSE MCDERMOTT SAID THERE'S A SNITCH IN HERE" AND MR. WOODCOOK NODDED
19 HIS HEAD IN THE PLAINTIFF'S DIRECTION INDICATING THAT PLAINTIFF IS WHOM HE WAS
20 REFERRING TOO. MR. WOODCOOK THEN CONCLUDED BY STATING "BUT IF YOU NEED ANYTHING
21 HE SAID TO TAKE CARE OF YOU". THE POD WORKER EXITED THE POD ONCE DONE WITH HIS TASK.

22     150. NOVEMBER 24TH THROUGH DECEMBER 23RD 2016 PLAINTIFF WAS
23 CONSTANTLY TORMENTED BY MR. EPTING, WHO HU(2) DEPUTY DEFENDANTS MR. MCDERMOTT
24 AND MR. LINN WOULD CONTINUE TO ALLOW OUT HIS CELL FOR EXTRA TIME. MR. EPTING
25 AT TIMES, WHILE OUTSIDE HIS CELL, WOULD SQUIRT A SHAMPOO BOTTLE OF FECES INTO THE
26 SIDE OF PLAINTIFFS DOOR AND INTO THE DOOR APERTURES. HOWEVER, DUE TO PLAINTIFF'S
27 PLASTIC SAFETY MECHANISM, THE LIQUID WOULD SLIDE DOWN TO THE FLOOR WHERE PLAINTIFF

1 WOULD BE FORCED TO CLEAN IT UP WITH SHAMPOO AND A TOWEL. IT WAS CLEAR THAT THESE
2 DEFENDANTS AT THIS TIME CARE ABOUT WHAT PLAINTIFF WAS OR MIGHT HAVE BEEN
3 EXPERIENCING, AT TIMES ENCOURAGING THIS PRACTICE BY LAUGHING AND/OR TURNING AN EYE.
4    **151.** THOSE OFFICIALS WHOM WITNESSED THE USE OF AND/OR THE EXISTANCE
5 OF PLAINTIFF'S SAFETY MECHANISM DURING THIS TIME WERE; MR. PRASAD, MR. SIMS,
6 MR. A. SMITH, MR. DIVINE, MR. GOLDING, MR. BOUTWELL, MR. LINN AND MR.
7 MCDERMOTT, MR. MCBRIDE AND MR. HAMBELTON. REGISTERED NURSE MRS. C. COX,
8 THE 3 P.M TILL 11 P.M SHIFT(RN) HAD WITNESSED THIS SAFETY MECHANISM WHILE
9 THE MECHANISM WAS HANGING OVER PLAINTIFF'S CELL DOOR, AND WHILE SHE WAS PASSING
10 BY PLAINTIFF'S CELL WAS OVERHEARD ASKING AN UNKNOWN DEPUTY "WHAT THE
11 PLASTIC ON FEBO'S WINDOW WAS FOR", WHERE THE DEPUTY RESPONDS "TO PREVENT FROM
12 GASSINGS".

13    **152.** NOVEMBER 24TH THROUGH DECEMBER 23RD 2016 IT IS DURING THIS
14 PERIOD THAT MR. EPTING, WHILE OUTSIDE HIS CELL, WOULD STATE OUT LOUD IN THE POD TO
15 OTHER INMATES THAT PLAINTIFF WAS A "RAT" AND A "SNITCH" AND HOW OFFICERS HAD
16 GIVEN HIM A COPY OF THE MESSAGE PLAINTIFF HAD GIVEN TO OFFICIALS. MR. EPTING
17 MADE SEVERAL COMMENTS WHILE READING OFF A PIECE OF PAPER IN WHICH HE INTENDED
18 FOR PLAINTIFF TO BELIEVE WAS THE ACTUAL MESSAGE PLAINTIFF WROTE AND QUOTED
19 THINGS IN WHICH MR. EPTINGS SHOULDNT OF KNOWN UNLESS HE WERE EITHER SHOWN
20 OR GIVEN THE ORIGINAL MESSAGE. PLAINTIFF UNDERSTOOD THIS TO MEAN MR. EPTING
21 HAD INDEED AT LEAST BEEN SHOWN THE MESSAGE, AND THAT THE OFFICIALS WERE IN KAHOOTS,
22 HOWEVER, WHETHER THEIR INTENTIONS WERE TO PASS THE MESSAGE AROUND OR NOT— ITS CLEAR
23 THAT IT LANDED IN THE WRONG HANDS. OTHER INMATES OVERHEARD THESE RANTS IN THE POD, THOSE
24 INCLUDING MR. DOMINIC WHEELER (2)(F)(3) AND MR. AJUWON MUHAMMAD (2)(F)(1).

25    **153.** NOVEMBER 24TH THROUGH JANUARY 2017 SOMETIME DURING THIS
26 TIME FRAME PLAINTIFF ATTENDED A VISIT WITH HIS THEN GIRLFRIEND MS. MARIA
27 VICTORIA VILORIA SEBASTIAN ("MS. SEBASTIAN") IN THE HU(2) VISITING COMMON

AREA, WHERE PLAINTIFF ENCOUNTERED A MEXICAN INMATE NAMED MR. EMMANUEL
HERNANDEZ WHO WAS ALSO AT VISITING. MR. EMMANUEL HERNANDEZ ("MR. HERNANDEZ")
INFORMED PLAINTIFF THAT HE HAD OVERHEARD, AS DID OTHER INMATES, OFFICERS
AND DEFENDANTS MR. McDERMOTT AND MR. LINN SPEAKING TO AN INMATE NAMED
MR. MARIO OCHOA GONZALEZ (PFN# ULV363) ("MR. OCHOA"), WHOM WAS
LOCATED IN HU(2)(B)(2). WHILE STANDING AT HIS WINDOW LOOKING INTO THE
POD AREA MR. HERNANDEZ OBSERVED DEFENDANTS ENTER THE POD AND GO DIRECTLY
TO MR. OCHOA'S CELL, OPEN THE CELL DOOR AND BEGIN A CONVERSATION, AT WHICH TIME
MR. HERNANDEZ OVERHEARD THE DEFENDANTS TALKING ABOUT PLAINTIFF, MENTIONING
HIM BY NAME, STATING HOW PLAINTIFF WAS "SNITCHING" AND THAT THEY WANTED HIM TO
"LET THE OTHERS KNOW ABOUT IT". MR. HERNANDEZ WAS LOCATED IN HU(2)(B)(4).
PLAINTIFF ASKED MR. HERNANDEZ WHO ELSE MAY HAVE OVERHEARD THIS CONVERSATION
SPECIFICALLY, AT WHICH TIME MR. HERNANDEZ STATED "CELL (B)(2) HIS NAME IS
ROB" (REFER TO HOUSING RECORDS/LOGS FOR CORROBORATION) ALSO (REFER TO
INTERNAL AFFAIRS INTERVIEW OF MR. HERNANDEZ IN JUNE OR JULY OF 2017).

154. DECEMBER 31ST 2016 PLAINTIFF OBSERVED DEPUTY MRS. SARAH
KRAUSE WORKING THE P.M. SHIFT IN HU(2). AT ONE TIME DURING THE NIGHT MRS.
KRAUSE STOPPED BY PLAINTIFF'S CELL TO HOLD A CONVERSATION WITH HIM. MRS. KRAUSE
STATED THAT SHE WOULD NO LONGER BE WORKING ON THE MAX SIDE UNITS AND THAT
SHE WOULD NOW BE WORKING THE WOMEN'S UNIT'S. THE CONVERSATION TURNED TO MR.
EPTING AT WHICH TIME PLAINTIFF SIMPLY TOLD MRS. KRAUSE TO "STAY AWAY FROM MR.
EPTING" THAT HE WAS "NO GOOD", AT WHICH TIME MRS. KRAUSE AGREED. AT NO TIME DID
PLAINTIFF WITNESS MRS. KRAUSE CONTACT MR. EPTING WHILE HE WAS PRESENT IN
HU(2)(F)(6).

155. DECEMBER 2016 (LAST WEEK OF) PLAINTIFF OBSERVES MR. EPTING
BEING RELEASED. DEFENDANT MR. McDERMOTT ESCORTS MR. EPTING OUT OF THE POD;
HOWEVER, BEFORE EXITING MR. EPTING STATES TO PLAINTIFF "WE'RE GONNA MAKE SURE

1    YOUR BIG HOMIES IN NORTH COUNTY SEE THAT KITE. YOUR CAREER IS OVER PUNK!".

2    **156.** <u>DECEMBER 19TH 2016</u> PLAINTIFF SUBMITTED A GRIEVANCE REGARDING

3    HIS RECLASSIFICATION (SEE INMATE GRIEVANCE FORM AND RESPONSE #16-2051)

4    (ATTACHED HERETO AS " **EXHIBIT P** (a), (b)") **EXTENTION** ON (1-12-17) <u>DENIED</u>

5    ON (1-20-17) BY SGT., P. KENNEDY ON GROUNDS THAT PLAINTIFF'S "PLACEMENT" IS

6    "BASED ON SEVERAL FACTORS". DUE TO PLAINTIFF'S "GANG AFFILIATION" AND "CRIMINAL ARREST

7    HISTORY", "DUE TO RACIAL PREJUDICES" AND "<u>ALWAYS</u> GETTING INTO IT WITH OTHER INMATES"

8    (id, "P(b) PARA. (2)"). PLAINTIFF ARGUES THAT THESE "ALTERCATIONS" WITH OTHER INMATES

9    WERE DONE IN SELF-DEFENSE AS AN "INMATE" HAD VIOLATED PLAINTIFF'S SPACE AS AN

10   INDIVIDUAL, AND/OR THOSE ALTERCATIONS INVOLVING "GROUPS OF INMATES" WERE ALSO DONE IN

11   SELF-DEFENSE AS PLAINTIFF'S SPACE AS AN INDIVIDUAL WAS VIOLATED, PLAINTIFF WAS ASSULTED,

12   AND/OR PLAINTIFF WAS BEING OPPRESSED BY THE AFRICAN GROUP SEGMENT WHOM HAD DENIED

13   PLAINTIFF OF HIS RIGHTS TO JAILHOUSE ENTITLEMENTS; AS STATED IN THE BEGINNING OR

14   ABOVE, THESE SITUATIONS AND ALTERCATIONS AT TIMES WERE FORESEEN AND POSSIBLY

15   ORCHESTRATED, WHEREBY PLAINTIFF WAS FORCED TO DEFEND HIMSELF. AS FOR PLAINTIFF'S

16   CRIMINAL ARREST HISTORY, PLAINTIFF HAS PETTY THEFT, POSSESSION OF STOLEN PROPERTY,

17   EVADING AND POSSESSION OF FIREARMS. PRIOR TO PLAINTIFF'S CURRENT CHARGE WHILE

18   PICKED UP IN SANTA RITA JAIL, PLAINTIFF HAS NO GANG RELATED CHARGES. AS FOR RACIAL

19   PREJUDICE, PLAINTIFF IS NOT RACIALLY PREJUDICE AGAINST NO ONE OR ONE GROUP OF PEOPLE,

20   AS THIS COMPLAINT CAN ATTEST TOO, WHERE AS PLAINTIFF IS SPEAKING OUT ON MISTREATMENT

21   TO INMATES OF ALL RACES AND LEVELS OF COMPETANCY. APPEAL **DENIED** ON (1-24-17) BY

22   LT., J. JOHNSON (BADGE # 1528) <u>CONCURRED</u> BY LT., P.H. SLAUGHTER (BADGE # 1068).

23   **157.** <u>JANUARY 2017</u> THROUGH <u>FEBRUARY 2017</u> SOMETIME DURING THIS TIME

24   MR. OCHOA WAS TRANSFERED TO NORTH COUNTY JAIL, WHICH TO PLAINTIFF'S OPINION WAS

25   NOT COINCIDENCE AND HIGHLY SUSPICIOUS. FOR THIS IS THE JAIL WHICH IS SAID TO HOUSE THE

26   NUESTRA FAMILIA (NF), THOSE INMATES WHOM ARE SAID TO BE GANG LEADERS, THE

27   OVERALL AUTHORITY FOR THE NORTHERN STRUCTURE (NS) GANG MEMBERS, AND SHOT

CALLERS FOR ALL MEXICANS OF THE NORTH COUNTY AND SANTA RITA JAILS (REFER TO JAIL TRANSFER RECORDS FOR CORROBORATION).

**158.** JANUARY 6TH 2017 PLAINTIFF WAS OUT TO COURT. WHILE OUT TO COURT PLAINTIFF'S CELL WAS SEARCHED BY DEFENDANTS MR. MCDERMOTT AND MR. LINN, AN ALLEGED RANDOM SEARCH. UPON RETURNING FROM COURT PLAINTIFF WAS INFORMED BY DEFENDANT MR. LINN THAT PLAINTIFF WOULD BE RECEIVING A DISCIPLINARY ACTION FOR HAVING PRUNO (A JAILHOUSE MADE ALCOHOL). PLAINTIFF STATED THAT HE "DIDN'T HAVE NO PRUNO" AND THAT I WAS "SET UP", AT WHICH TIME MR. LINN LAUGHED BUT MAKING NO COMMENT. PLAINTIFF LET IT GO WITHOUT INCIDENT, BELIEVING THAT THE DEFENDANTS WERE ATTEMPTING TO INCITE HIM.

**159.** JANUARY 7TH 2017 PLAINTIFF WAS AWOKEN BY DEFENDANT MR. LINN AND DEPUTY MR. SOTO (FULL INFORMATION UNKNOWN), AT WHICH TIME PLAINTIFF WAS INFORMED HE WAS BEING SERVED A DISCIPLINARY ACTION AND WAS HANDED A NOTICE OF DISCIPLINARY ACTION PENDING FORM BY DEPUTY MR. SOTO. PLAINTIFF STATED "WHATEVER" AND WALKED AWAY FROM THE DOOR (SEE DISCIPLINARY ACTION PENDING NOTICE) (ATTACHED HERETO AS "**EXHIBIT Q**"). PLAINTIFF WAS NOT READ HIS RIGHTS NOR WAS HE PROVIDED A DISCIPLINARY REPORT (A VIEWING OF THIS NOTIFICATION SERVICE IS IN NEED OF BEING VIEWED FOR CONFIRMATION AND CORROBORATION BY REFERRING TO MR. SOTO'S BODY CAMERA ON THIS DAY).

**160.** JANUARY 10TH 2017 PLAINTIFF SUBMITTED GRIEVANCE REGARDING HIS RECLASSIFICATION (SEE INMATE GRIEVANCE FORM AND RESPONSE # 17-0051) (ATTACHED HERETO AS "**EXHIBIT R (a), (b)**") **DENIED** ON (2-2-17) BY SGT. P. KENNEDY ON THE SAME GROUNDS AS GRIEVANCE RESPONSE ("P(b)"; SUPRA). APPEAL **DENIED** ON (2-6-17) BY LT, M. DENOBRIGA (BADGE # 1012) **CONCURRED** BY LT., P.H. SLAUGHTER (BADGE # 1068).

**161.** JANUARY 11TH 2017 WHILE OUT FOR RECREATION PLAINTIFF CALLED HIS THEN GIRLFRIEND MRS. SEBASTIAN AND DIRECTED HER TO HELP PLAINTIFF POST A MESSAGE

1  ON HIS FACEBOOK SOCIAL MEDIA PAGE (WHICH IS LISTED UNDER PLAINTIFFS NAME); THIS
2  MESSAGE CONCERNING THE MISTREATMENT OF PLAINTIFF AND OTHERS IN PLAINTIFF'S ENVIRONMENT,
3  TO ALSO ALERT THE PUBLIC OF THE FACT THAT OFFICERS HAD RETALIATED AGAINST PLAINTIFF
4  BY ALERTING OTHERS OF HIS MESSAGE GIVEN TO OFFICIALS ON NOVEMBER 21ST 2016 AND
5  LABLED PLAINTIFF A SNITCH (SEE COPY OF FACEBOOK POSTING) (ATTACHED AS "EXHIBIT
6  S (1)(2)" HERETO). PLAINTIFF'S THEN GIRLFRIEND STATED THAT SHE WOULD POST THE MESSAGE
7  IMMEDIATELY.

8      162. JANUARY 11TH 2017 PLAINTIFF'S CELL SEARCHED BY DEFENDANTS MR. LINN
9  AND MR. MCDERMOTT WHILE PLAINTIFF WAS AWAY AT A VISIT IN THE HU(2) VISITING COMMON
10  AREA. NO CONTRABAND WAS SAID TO BE FOUND AT THIS TIME.

11     163. JANUARY 14TH 2017 (AFTERNOON HOURS) PLAINTIFF OBSERVES DEFENDANT
12  MR. MCDERMOTT ENTER THE POD AND APPROACH CELL (2)(F)(3) MR. DOMINIC WHEELER
13  (PFN # BGW931) AT WHICH TIME MR. DOMINIC WHEELER ("MR. WHEELER") WAS HANDCUFFED
14  AND ESCORTED OUT OF THE POD OUT OF PLAINTIFF'S LINE OF SIGHT. MR. WHEELER WAS RETURNED
15  APPROXIMATELY 10 MINUTES LATER

16     164. JANUARY 14TH 2017 (EVENING HOURS) PLAINTIFF OBSERVES MR. WHEELER
17  POPPED OUT HIS CELL FOR RECREATION, AT WHICH TIME MR. WHEELER BEGAN STATING LOUDLY
18  HOW PLAINTIFF WAS A "SNITCH" AND A "RAT" AND HAD GIVEN MESSAGES TO OFFICERS. PLAINTIFF
19  HAS NEVER HAD AN ISSUE WITH MR. WHEELER PRIOR TO THIS INCIDENT, WHERE MR. WHEELER
20  THEN SQUIRTED HIS FECES INTO PLAINTIFF'S CELL, HAVING BEEN LIQUIFIED WITH WATER
21  AND INSERTED INTO PLAINTIFF'S CELL THROUGH THE CELL DOOR APERATURES, ALSO
22  SMEARING HIS FECES ONTO THE OUTSIDE OF PLAINTIFF'S WINDOW. PLAINTIFF IMMEDIATELY,
23  AND WHILE THIS ACT WAS TAKING PLACE, ALERTED THE HOUSING CONTROL TECHNICIAN
24  ("HCT") WHOM PROVIDED NO ASSISTANCE WHATSOEVER, PROVIDING NO RESPONSE
25  TO PLAINTIFF'S REQUEST FOR ASSISTANCE FROM HU(2) DEPUTIES DURING THE HAZARDOUS
26  AND HUMILIATING ONSLAUGHT

27     165. JANUARY 14TH 2017 PLAINTIFF SUBMITTED A GRIEVANCE REGARDING

THE ABOVE DESCRIBED GASSING AND THE EVENTS THAT FOLLOWED (SEE INMATE GRIEVANCE FORM AND RESPONSE # 17-0074) (ATTACHED HERETO AS "**EXHIBIT T** (a), (b)") **DENIED** ON (1-23-17) BY SGT., P. KENNEDY ON GROUNDS THAT "UNFORTUNATELY, DISRUPTIVE INMATES ARE APART OF JAIL/PRISON CULTURE" (id," T (b) PARA (1)"). PLAINTIFF ARGUES THIS RIDICULOUSNESS OF A RESPONSE, AS PLAINTIFF HAS NEVER BARED WITNESS TO THIS TYPE OF BEHAVIOR NOR ITS "CULTURE", LET ALONE BEEN PRONE TO BE A VICTIM OF ITS TYPE, IN ALL THE MANY YEARS PLAINTIFF HAS BEEN LIVING IN THE (SRJ) FACILITY OR ANY FACILITY - NOT UNTIL PLACED IN THE (2)(F) SETTING. PLAINTIFF HAD BEEN COVERED IN ANOTHER MAN'S FECES AND FORCED TO ENDURE THIS TREATMENT WITHOUT THE REQUESTED AID OF DEPUTIES, FORCED TO SANITIZE HIMSELF AND HIS CELL WITH SHAMPOO PRODUCTS. PLAINTIFF DID NOT KNOW OF MR. WHEELER'S NAME AT THIS TIME, HOWEVER, GAVE A THOROUGH POINT OF REFERENCE OF THE ACCUSED IN PLAINTIFF'S GRIEVANCE (id," T (a) LINE (1) AND (12)") HOWEVER WAS TOLD "THE INMATE" PLAINTIFF INDICATES WAS OUT DURING POD TIME DENIED ANY INVOLVEMENT" (id," T (b) PARA (1)"). PLAINTIFF NEVER KNEW MR. WHEELER TO GAS ANY ONE PRIOR TO THIS INCIDENT, IT IS TO PLAINTIFF'S OPINION THAT SINCE MR. EPTING HAD BEEN RELEASED, THE NEW DESIGNATED GASSER OR INMATE FACILITATOR APPOINTED WAS MR. WHEELER. APPEAL **DENIED** ON (2-6-17) BY LT., M. DENOBRIGA (BADGE # 1012) **CONCURRED** BY LT., P.H. SLAUGHTER (BADGE # 1068).

166. JANUARY 19TH 2017 PLAINTIFF OVERHEARD INMATE MR. RICE (2) (F)(16) BEING MISTREATED VERBALLY BY DEFENDANT MR. McDERMOTT, WHOM STATED TO MR. RICE THAT HE WOULD "NOT BE GETTING LUNCH TODAY", IT IS TO PLAINTIFF'S OPINION THAT DEFENDANT MR. McDERMOTT WAS SIMPLY EXERTING HIS POWER AND WITHOUT JUST CAUSE AS MR. RICE WAS NOT OVERHEARD ACTING OUT IN ANY WAY. LATER IN THE AFTERNOON MR. RICE WAS POPPED OUT HIS CELL FOR RECREATION BY THE HU(2)HCT, AT WHICH TIME MR. RICE WAS OBSERVED GASSING THE POD AREA, THE ENTIRE NORTHSIDE WALL WAS FULL OF FECES - INCLUDING THE STAIRCASE AND THE TELEPHONES. MR. RICE STATED " YOU KEEP FUCKING WITH ME MAN " BEFORE LOCKING BACK DOWN INTO HIS CELL. CRIME SCENE RESTORATION WAS CONTACTED

1  WHOM CAME OUT AND CLEANED BOTH THE POD STAIRCASE AND NORTH WALL. PLAINTIFF WAS,
2  IN THE NEXT AFTERNOON, POPPED OUT HIS CELL FOR RECREATION AT WHICH TIME PLAINTIFF
3  BECAME AWARE THAT THE TELEPHONES HAD NOT BEEN SANITIZED AND CLEARED OF THE
4  FECES THAT COVERED THEM. PLAINTIFF NOTIFIED DEFENDANT MR. MCDERMOTT WHO DISREGARDED
5  PLAINTIFF'S REQUEST FOR DISINFECTANT MATERIALS. PLAINTIFF LOCKED IT BACK DOWN INTO
6  HIS CELL IMMEDIATELY WITHOUT INCIDENT.

7      167. JANUARY 20TH 2017 PLAINTIFF SUBMITTED A GRIEVANCE TO DEFENDANT
8  MR. MCDERMOTT REGARDING THE SANITATION OF THE TELEPHONES WHICH WERE STILL OUT
9  OF USE DUE TO SANITATION (SEE INMATE GRIEVANCE FORM) (ATTACHED AS "**EXHIBIT U**")
10 RESOLVED AT DEPUTY LEVEL, WHEREBY DEPUTY K. PARKER (BADGE # 2259) RESPONDED
11 TO THIS GRIEVANCE ON THE NEXT SHIFT, ALLOWING PLAINTIFF TO EFFECTIVELY SANITIZE
12 THE PHONES AND HAVE TIME TO PLACE A CALL.

13     168. JANUARY 25TH 2017 PLAINTIFF WAS SCHEDULED FOR A VISIT WITH
14 HIS THEN GIRLFRIEND MRS. SEBASTIAN. PLAINTIFF WAS AWAITING ESCORT WHEN AT
15 9:25 A.M. HU(2) HCT MR. KAISER (FULL INFORMATION UNKNOWN) NOTIFIED HIM
16 VIA THE CELL INTERCOM THAT THE DEFENDANT DEPUTIES MR. LINN AND MR. MCDERMOTT
17 HAD CANCELLED PLAINTIFF'S VISIT DUE TO L.O.P (LOSS OF PRIVILEGES). PLAINTIFF STATED
18 "OKAY" AND MADE NO COMPLAINT, HAVING BELIEVED HE WAS ON L.O.P STATUS.

19     169. JANUARY 26TH 2017 PLAINTIFF RECEIVED A NOTICE OF DISCIPLINARY
20 ACTION OR OTHERWISE A NOTICE OF L.O.P, INFORMING PLAINTIFF THAT A LOSS OF
21 PRIVILEGES OF COMMISSARY AND VISITATION WOULD BEGIN THIS DAY ON (1-26-17)
22 AND LAST UNTIL (3-26-17) (SEE NOTICE OF DISCIPLINARY ACTION) (ATTACHED HERETO
23 AS "**EXHIBIT V** (a)"). PLAINTIFF BECAME IMMEDIATELY CONCERNED AND ANGERED THAT
24 HIS THEN GIRLFRIEND WOULD HAVE BEEN TREATED LIKE THAT, BEING TURNED AROUND AND
25 REFUSED A VISIT WITH PLAINTIFF SIMPLY BECAUSE THE DEFENDANTS MR. MCDERMOTT AND MR.
26 LINN THOUGHT TO HARASS PLAINTIFF BY CANCELING HIS VISITS A DAY EARLY AND BELEIVING
27 THEY COULD GET AWAY WITH IT.

170. JANUARY 26TH 2017 PLAINTIFF SUBMITTED A GRIEVANCE REGARDING THIS HARASSMENT TO PLAINTIFF'S VISITATION DESCRIBED ABOVE (SEE INMATE GRIEVANCE FORM AND RESPONSE # 17-0127) (ATTACHED AS "EXHIBIT V (b), (c)") AFFIRMED ON (3-2-17) CONCURRED BY LT., P.H. SLAUGHTER (BADGE # 1068).

171. FEBRUARY 2ND 2017 PLAINTIFF IS CONTACTED AT HIS CELL BY GRIEVANCE DEPUTY MR. PROCORPIO ("JOHN DOE" DEFENDANT) (FULL INFORMATION UNKNOWN AT THIS TIME) ("MR. PROCORPIO") REGARDING AN UNRELATED GRIEVANCE RESPONSE WHEN PLAINTIFF INQUIRED ABOUT HIS LATEST GRIEVANCE REGARDING VISITING (#17-0127). PLAINTIFF STATED THE DEFENDANTS "MR. MCDERMOTT AND MR. LINN WERE HARASSING" HIM AND "THAT THIS INCIDENT WITH VISITATION WAS ONE OF THE MANY WAYS THEY WERE DOING IT." MR. PROCORPIO STATED THAT "IT WAS AN ACCIDENT AND THAT AS SOON AS THE DEPUTIES REALIZED THE MISTAKE AFTER YOUR COMPLAINT, THEY ATTEMPTED TO CALL HER BACK BUT SHE WAS GONE." PLAINTIFF KNEW IMMEDIATELY THAT MR. PROCORPIO WAS COVERING UP FOR THE DEPUTIES ACTIONS. IT IS AT THIS TIME PLAINTIFF BEGAN TO UNDERSTAND THE UNDERLINING CRONYISM THAT EXISTED BETWEEN THE DEPUTIES AND THAT PLAINTIFF MAY NEED TO MOVE FORWARD WITH A CIVIL SUIT IN THE FEDERAL COURT AS THE (SRJ) ADMINISTRATION WOULD BE WORKING ENTIRELY AGAINST HIM. PLAINTIFF RESPONDED TO MR. PROCORPIO BY STATING "BUT SIR, I DID NOT MAKE A COMPLAINT THAT DAY, FOR I DID NOT REALIZE THERE HAD BEEN A MISTAKE UNTIL I RECEIVED MY DISCIPLINARY NOTICE IN THE INSTITUTIONAL MAIL THE NEXT DAY. SO WHY WOULD THE DEPUTIES HAVE NEEDED TO MAKE SUCH ATTEMPTS AT RECALLING MY GIRLFRIEND?". MR. PROCORPIO DID NOT HAVE A RESPONSE. PLAINTIFF CONTINUED TO EXPLAIN TO HIM THAT THERE WAS "NO NEED TO COVER FOR THEM, THEY ARE CROOKED AND THAT STORY IS BULL-SHIT, SIR!." MR. PROCORPIO STATED THAT "IT WILL BE LOOKED INTO" BEFORE DEPARTING. THE GRIEVANCE WOULD EVENTUALLY BE AFFIRMED ON (3-2-17) AS INDICATED SUPRA. HOWEVER, PLAINTIFF WOULD NOT RECEIVE HIS INMATE GRIEVANCE RESPONSE FOR THIS INCIDENT FOR MONTHS TO COME - AS IT IS TO PLAINTIFF'S OPINION THAT THE GRIEVANCE UNIT ATTEMPTED TO WITHHOLD

CIVIL RIGHTS COMPLAINT (§1983)                    PAGE 69 OF 162

1  THIS DOCUMENT (EVIDENCE) IN THE EVENT PLAINTIFF SHOULD MOVE FORWARD WITH A SUIT.

2  PLAINTIFF HAD TO EVENTUALLY GRIEVE FOR THE PRODUCTION OF SAID DOCUMENT (SEE "EXHIBIT

3  F2 (a), (b)"; INFRA).

4        172. SEPTEMBER 2016 ONGOING PLAINTIFF IS OBSERVANT TO THE FACT

5  THAT HU(2)(F) IS BEING USED TO HOUSE THIS FACILITIES MOST INDECENT, INHUMANE

6  LIVING, UNSANITARY, LOW MENTAL CAPACITY INMATES - THIS INCLUDING INMATES WHOM

7  KICK AND BANG ON DOORS, DO NOT SHOWER, AND WHOM ARE KNOWN TO GAS OTHERS WITH

8  THEIR FECES AN /OR URINE OR FLOOD THEIR CELLS AND /OR THE TIER WITH FECES AND /OR

9  URINE WATER. CLASS DEPUTIES AND HOUSING DEPUTIES ARE MOVING THESE INMATES

10  INTO THIS POD WHICH CREATES AND MAINTAINS ONE BIG UNSANITARY ENVIRONMENT, ALL

11  THE WHILE CONTINUING TO KEEP PLAINTIFF HOUSED IN THIS ENVIRONMENT AND MADE TO

12  ENDURE THE CONDITIONS DESPITE HIS MANY PROTESTS AND GRIEVANCES. PLAINTIFF WILL

13  ATTEMPT TO DESCRIBE MANY OF THESE INCIDENTS WHICH AFFECTED HIM AS BEST HE CAN.

14        173. SEPTEMBER 2016 ONWARD PLAINTIFF OBSERVED FUNCTIONING AS

15  REGULAR HOUSING DEPUTIES IN THE HU(2) SETTING, EITHER ALONGSIDE ONE ANOTHER

16  AND /OR INDEPENDENTLY FROM ONE OR THE OTHER, HOWEVER, AT ONE POINT OR ANOTHER,

17  AND WHOM CAN AND SHOULD ATTEST TO THE MANY CUSTOMS, ON-GOINGS, CIRCUMSTANCES

18  AND CONDITIONS OF THE HU(2)(F) ENVIRONMENT, THE FOLLOWING DEPUTIES, HOWEVER

19  NOT LIMITED TO THE FOLLOWING DEPUTIES : MR. A. SMITH (BADGE # 1679), MR. GOLDING,

20  MR. BOUTWELL, MR. MCDERMOTT, MR. LINN (BADGE # 2248), MR. SOTO, MR. REESE,

21  MR. PERRIERA, MR. BLAKER, MR. SOLOPOW, MS. SARTIN, MR. BRYNING, MR. HAYES,

22  MR. SALLAM, MR. L. THOMAS, MR. HARTMAN, MR. WILLIS, MR. K. PARKER, MR. FRYE,

23  MR. GAINOR, MR. HAMMOD, MR. E. PEREZ-GARCIA, MR. K. JONES, MR. LAGORIO,

24  MR. KISS, MR. C. NELSON, MR. MORUZA, MR. SINGH, MR. TEVLIN, MR. VINCENT,

25  AND MR. CANDELARIO.

26        174. SEPTEMBER 2016 ONWARD PLAINTIFF OBSERVED FUNCTIONING AS

27  CLASSIFICATION OFFICIALS WHILE PRESENT IN THE HU(2) SETTING, EITHER ALONGSIDE

1  ONE ANOTHER AND/OR INDEPENDENTLY FROM ONE OR THE OTHER, HOWEVER, AT ONE POINT OR

2  ANOTHER, AND WHOM CAN AND SHOULD ATTEST TO THE MANY CUSTOMS, ON-GOINGS, CIRCUMSTANCES,

3  AND CONDITIONS OF THE HU(2)(F) ENVIRONMENT, THE FOLLOWING DEPUTIES: MR. BOUNDS,

4  MR. WILKENSON, MR. LATU, MR. EVANS, MR. HALL AND MR. MCBRIDE (THOUGH MR.

5  MCBRIDE WAS NOT OBSERVED CONDUCTING CLASS DUTIES IN THE HU(2) SETTING, THIS

6  DEPUTY HAS MADE IT CLEAR ON A NUMBER OF OCCASSIONS THAT HE IS CLASSIFICATION,

7  AND HAS MADE MANY ATTEMPTS TO DISCUSS CLASSIFICATION MATTERS WITH PLAINTIFF).

8  175. FEBRUARY 17TH 2017 PLAINTIFF OBSERVES INMATE MR. DANIEL RAMOS

9  WHOM POSSIBLY RESIDED IN (2)(F)(13), AND WHILE OUT HIS CELL FOR RECREATION, SHOW

10  SIGNS OF HAVING HEAD LICE. PLAINTIFF KNOWS THIS INMATE TO BE ONE OF THE MANY WHO DO

11  NOT SHOWER. PLAINTIFF ALERTED A NUMBER OF HU(2) DEPUTIES REQUESTING FOR THE INMATE

12  TO BE QUARANTINED AND/OR BE RID OF THE LICE BY HAVING HIS BODY SHAVED. PLAINTIFF

13  MADE THESE REQUESTS FROM THIS DAY (2-17-17) UNTIL (3-8-17) TO THE FOLLOWING

14  HU(2) DEPUTIES: MR. REESE, MR. SOTO, MR. MORUZA, AND MR. MCDERMOTT; HOWEVER,

15  WITH NO RESPONSE OR ASSISTANCE TO HIS INFORMAL (VERBAL) REQUESTS. PLAINTIFF WAS

16  THE ONLY INMATE PRESENT WITH LONG HAIR, THUS HIS CONCERN FOR HIS ENVIRONMENT.

17  176. FEBRUARY 25TH 2017 PLAINTIFF WAS CONTACTED AT HIS CELL BY DEFENDANT

18  MR. MCDERMOTT AND HU(2) DEPUTY MR. SOTO, AT WHICH TIME DEFENDANT MR. MCDERMOTT

19  ASKS PLAINTIFF IF HE WANTS "POD TIME" THIS DAY. PLAINTIFF STATED "YES". PLAINTIFF WAS

20  THEN INFORMED THAT HE WOULD BE RECEIVING POD TIME IN (2)(E) POD. PLAINTIFF STATED

21  "OKAY". PLAINTIFF DID NOT UNDERSTAND THE PURPOSE OF THIS MODIFICATION AT THE TIME,

22  HOWEVER, DID SO SOON THEREAFTER HIS ARRIVAL TO (2)(E) POD. PLAINTIFF ASKED MR. SOTO

23  WHY WAS HE BEING PLACED INTO (2)(E) POD FOR RECREATION? AT WHICH TIME MR. SOTO

24  STATED "BECAUSE YOUR YOU!". PLAINTIFF BEGAN HIS RECREATION IN (2)(E), WHICH WAS

25  COMPLETELY EMPTY AT THE TIME FOR UNKNOWN REASONS, WHERE PLAINTIFF OVERHEARD INMATE

26  MR. JAMES DUCKETT (2)(F)(2) BEING POPPED OUT OF HIS CELL JUST NEXT DOOR IN (2)

27  (F) POD BY THE HOUSING CONTROL. PLAINTIFF KNEW IT TO BE THIS INMATE FROM THE SOUND

1  OF HIS VOICE DURING WHICH TIME MR. DUCKETT WAS STATING "AHHH, YA'LL DONE FUCKED
2  UP NOW. FUCKING WITH MY BOY MCDERMOTT, NOW I GOTS TO PLAY WITH THIS DOOH DOOH".
3  PLAINTIFF THOUGHT TO HIMSELF "SO THIS IS WHY THEY MOVED ME OUT, SO I WOULD NOT
4  BE A WITNESS TO THE PRACTICE FOR WHICH THEY OBVIOUSLY HAD NOT PUT A HALT TOO". PLAINTIFF
5  WAS CONTACTED APPROXIMATELY 10 MINUTES INTO THE RECREATION BY DEFENDANT MR.
6  MCDERMOTT VIA THE POD INTERCOM — WHICH MEANT DEFENDANT MR. MCDERMOTT WAS IN THE
7  HOUSING CONTROL AT THE TIME — AT WHICH TIME DEFENDANT MR. MCDERMOTT ASKS PLAINTIFF
8  "HOW LONG" DOES HE "WISH" TO STAY OUT FOR POD TIME?", PLAINTIFF STATED "AS LONG AS YOU
9  SHALL ALLOW SIR!". MR. MCDERMOTT STATED HE WOULD "CONTACT" PLAINTIFF TO LET HIM
10 KNOW BUT TO "ENJOY" HIS POD TIME. DURING PLAINTIFF'S TIME OUT HE HAD OVERHEARD
11 MR. DUCKETT YELLING AND HOLLERING AT INMATES IN THE (2)(F) POD, MAKING
12 STATEMENTS SUCH AS "DONT CALL THE POLICE, DONT HIT YOUR BUTTON, THE POLICE
13 DONT GIVE A FUCK ABOUT YOU" AND "HOW DO YOU LIKE MY SHIT?" AND "YOU WANT
14 SOME OF THIS SHIT TOO. PLAINTIFF WAS CONTACTED A LITTLE OVER 1 HOUR LATER
15 BY DEFENDANT MR. MCDERMOTT VIA THE POD INTERCOM AND WAS INFORMED THAT HE
16 "CAN REMAIN OUT FOR POD TIME FOR ANOTHER HOUR OR TWO". PLAINTIFF STATED "OKAY"
17 AND WENT BACK TO WATCHING T.V.. MR. DUCKETT HAD REMAINED OUT HIS CELL THE ENTIRE
18 TIME AS WELL, AS PLAINTIFF COULD OVERHEAR THE ACTIVITY THE ENTIRE TIME THROUGH THE
19 PASS THROUGH DOORS. THE TECHNICIAN ON DUTY THIS DAY WAS MR. ATKINSON.
20      **177.** UPON ARRIVING BACK TO (2)(F) POD, ESCORTED UNCUFFED BY DEPUTY MR.
21 SOTO AND DEFENDANT MR. MCDERMOTT, PLAINTIFF NOTICED IMMEDIATELY THE FRESH SMELL
22 OF FECES. LOOKING AROUND, PLAINTIFF THUS, NOTICED FECES SMEARED ON THE OUTSIDE OF
23 CELL DOOR (2)(F)(13) WHICH HOUSED MR. KENNETH WATKINS, ALSO ON THE OUTSIDE OF
24 CELL DOOR (2)(F)(4) WHICH HOUSED MR. VINCENT CHARAN. PLAINTIFF ALSO NOTICED
25 THAT HIS CELL WAS COMPLETELY FLOODED, AS WAS CELL (2)(F)(4), PLAINTIFF OVERHEARD
26 MR. WATKINS INFORMING THE DEPUTIES THAT HE HAD FECES IN HIS "CELL" AND NEEDED "TO
27 BE MOVED", AT WHICH TIME HE WAS TOLD TO "SHUT UP" BY DEFENDANT MR. MCDERMOTT,

WHOM THEN – AT PLAINTIFF'S REQUEST – ALLOWED PLAINTIFF TO CLEAN UP THE FLOOD MESS BEFORE LOCKING DOWN IN HIS CELL. AS PLAINTIFF WAS CLEANING THE FLOOD – WITH TOWELS – DEFENDANT MR. MCDERMOTT MADE – WHAT WAS TO PLAINTIFF'S UNDERSTANDIEG – A SIDE REMARK TO CELL (2)(F)(4) STATING THAT "[WE] LIKE TO PLAY MIND GAMES AROUND HERE". DEFENDANT MR. MCDERMOTT THEN ASKS DEPUTY MR. SOTO "WHAT DO YOU FEEL ABOUT THAT?". MR. SOTO'S RESPONSE WAS "OH, YOU KNOW HOW I FEEL ABOUT THAT!." INDICATING – IN PLAINTIFF'S OPINION – HE WAS NOT AGAINST SAID TACTICS. PLAINTIFF THEN ENTERED HIS CELL WITHOUT INCIDENT. THE POD WENT WITHOUT BEING SANITIZED THIS DAY.

178. FEBRUARY 26TH 2017 PLAINTIFF OBSERVES OVERTIME DEPUTIES MR. REESE AND MRS. BOUGHMAN WORKING THE HU(2). PLAINTIFF OVERHEARS INMATE MR. WATKINS INFORM MRS. BOUGHMAN OF HIS LIVING CONDITIONS THAT WERE IMPOSED UPON HIM THE DAY BEFORE. ADHERING TO PLAINTIFF'S COMPLAINTS MRS. BOUGHMAN WAS OVERHEARD STATING THAT CRIME SCENE RESTORATION WOULD BE CALLED OUT. PLAINTIFF WAS SOON THEREAFTER POPPED OUT HIS CELL FOR RECREATION, DURING WHICH TIME – AT APPROXIMATELY 10:00 A.M. – THE CRIME SCENE WORKER ARRIVED. MS. BOUGHMAN THEN OPTED TO ALLOW PLAINTIFF TO FINISH HIS RECREATION IN (2)(E) POD, AS IT WAS STILL EMPTY, WHICH PLAINTIFF AGREED TOO. PLAINTIFF WAS LATER IN THE AFTERNOON TAKEN TO THE YARD BY MRS. BOUGHMAN. THE CRIME SCENE WORKER REMAINED IN THE (2)(F) POD UNTIL APPROXIMATELY 5:00 P.M. AT WHICH TIME, OR SOON THERE AFTER, WAS ESCORTED BACK TO HIS CELL WITHOUT INCIDENT. THE TECHNICIAN ON DUTY THIS DAY WAS MR. KAISER.

179. MARCH 6TH 2017 PLAINTIFF OBSERVES INMATE MR. WHEELER (2) (F)(3) POPPED OUT HIS CELL FOR RECREATION TIME, AT WHICH TIME MR. WHEELER EXITS HIS CELL WITH SHAMPOO BOTTLES (AT LEAST TWO THAT PLAINTIFF SEEN) AND, APPROACHING PLAINTIFF'S CELL, BEGAN TO GAS PLAINTIFF. MR. WHEELER SQUIRTED THE FECES INTO PLAINTIFF'S CELL THROUGH THE CELL DOOR APERTURES AT WHICH POINT PLAINTIFF IMMEDIATELY PRESSED HIS CELL INTERCOM BUTTON TO ALERT THE HU(2) HCT AND RECEIVED A "WHAT?" AT WHICH TIME PLAINTIFF STATED HOW "THE SAME DUDE IS

GASSING ME AGAIN. I WANT TO PRESS CHARGES ON HIM." PLAINTIFF RECEIVED NO RESPONSE. MR. WHEELER BEGAN CALLING PLAINTIFF A "SNITCH" AND A "FAKE GANG MEMBER" AND BEGAN URINATING ONTO PLAINTIFF'S CELL DOOR WHICH URINE BEGAN SEEPING INTO THE CELL THROUGH THE CELL DOOR TRAY SLOT. PLAINTIFF WAS FORCED TO CLEAN HIMSELF AND THE CELL WITH SHAMPOO AND HOT WATER. PLAINTIFF OVERHEARD MR. WHEELER GASSING A FEW OTHER INMATES WITH A SHAMPOO BOTTLE. PLAINTIFF HAD ATTEMPTED TO MAKE CONTACT WITH THE HU(2)HCT TO HELP THE OTHER INMATES, BUT RECEIVED NO RESPONSE. THE POD WAS NOT CLEANED THIS NIGHT.

180. MARCH 7TH 2017 PLAINTIFF SUBMITTED A GRIEVANCE REGARDING THE INCIDENT DESCRIBED ABOVE (SEE INMATE GRIEVANCE FORM AND RESPONSE # 17-0296)(ATTACHED HERETO AS "EXHIBIT W (a),(b)") DENIED ON (4-3-17) BY SGT., P. KENNEDY AND REFERRED TO GRIEVANCE (# 17-0074)(SEE "EXHIBIT T (a),(b)"; SUPRA) WHICH HAD BEEN DENIED. PLAINTIFF ARGUES SEXUAL. HARASSMENT, REQUESTING FOR A (KSF) KEEP SEPERATE FROM MR. WHEELER, HOWEVER, DID NOT BE TAKEN SERIOUS BY GRIEVANCE NOR HOUSING OFFICIALS. PLAINTIFF REFUSED TO SIGN THE GRIEVANCE RESPONSE - AUTOMATIC APPEAL DENIED ON (4-12-17) BY LT., J. MCCOMAS (BADGE # 1063) CONCURRED ON (4-19-17) BY LT., P.H. SLAUGHTER (BADGE # 1068)(REFER TO FACT # 183 AND # 184 REGARDING REFERRED RESPONSE).

181. MARCH 8TH 2017 PLAINTIFF OBSERVES INMATE MR. WHEELER POPPED OUT HIS CELL FOR RECREATION, AT WHICH TIME HE APPROACHES PLAINTIFF'S CELL AND INFORMS PLAINTIFF THAT HU(2) DEPUTY MR. A. SMITH (BADGE # 1679) TOLD HIM THAT PLAINTIFF SNITCHED ON HIM (MR. WHEELER) AND TO STAY AWAY FROM PLAINTIFF'S DOOR. MR. WHEELER BEGAN MAKING THREATS TO PLAINTIFF STATING THAT HE WISHES PLAINTIFF WOULD PUT HIS (MR. WHEELER'S) NAME ON A GRIEVANCE OR A KITE, THAT THIS WAS "ALL HE NEEDED", THAT HE WOULD "LET EVERYONE KNOW", AND THAT "IT WOULD NOT BE A PROBLEM" BECAUSE "THE POLICE ALREADY TOLD US ABOUT YOU". MR. WHEELER THEN REVEALED TO PLAINTIFF THAT HE WAS A MEMBER OF THE "BORDER BROTHER" GANG.

CIVIL RIGHTS COMPLAINT (§1983)                    PAGE 74 OF 162

PLAINTIFF WAS MADE TO ENDURE MR. WHEELER'S BEHAVIOR FOR WEEKS TO COME, WHERE MR. WHEELER WOULD CONTINUE TO GAS PLAINTIFF'S CELL DOOR BY SQUIRTING URINE AS HE WALKS BY AND ALSO WOULD TRASH TALK PLAINTIFF. AT NO TIME DID PLAINTIFF RETALIATE AGAINST MR. WHEELER FOR ALL OF HIS HARASSMENT.

182. MARCH 8TH 2017 PLAINTIFF OBSERVES INMATE MR. DANIEL RAMOS (2)(F)(13) FINALLY CONTACTED BY A NURSE AND SEEN FOR HIS HEAD LICE, WHICH BY NOW WERE COMPLETELY COVERING HIS HAIR AND HIS CLOTHES. MR. RAMOS WAS RELOCATED TO CELL (2)(F)(4) - HIS OLD CELL BEING LEFT UNOCCUPIED FOR EX AMOUNT OF DAYS - WHERE HE WAS OBSERVED BEING HANDED A SHAMPOO LIKE TREATMENT. MR. RAMOS DID NOT USE THE TREATMENT. PLAINTIFF IMMEDIATELY REQUESTED OF HU(2) DEPUTY MR. MORUZA TO PLEASE NOT PLACE MR. RAMOS NEXT TO HIM AS PLAINTIFF WAS THE ONLY ONE WITH LONG HAIR AND WOULD BE AT RISK HAVING THIS INMATE HOUSED NEXT TO HIM. PLAINTIFF WAS NOT ACCOMODATED. MR. RAMOS DID NOT USE THE TREATMENT AND AFTER SEVERAL INFORMAL (VERBAL) COMPLAINTS TO HU(2) DEPUTIES, MR. RAMOS WAS FINALLY CONTACTED BY HU(2) DEPUTY MR. MORUZA AND ESCORTED OUT THE POD APPROXIMATELY 2 TO 3 DAYS LATER. MR. RAMOS RETURNED APPROXIMATELY 30 MINUTES LATER FULLY SHAVED (REFER TO MR. RAMOS MEDICAL RECORDS) (REFER TO HU(2) HOUSING LOGS FOR CORROBORATION).

183. MARCH 29TH 2017 PLAINTIFF WAS CONTACTED AT HIS CELL BY GRIEVANCE UNIT OFFICER MR. R.A. FIRMEZA (BADGE # 1552) WHOM ASKED PLAINTIFF IF HIS INMATE GRIEVANCE FORM (#17-0296) WAS REGARDING THE SAME INDIVIDUAL AS THE PREVIOUS GRIEVANCE REGARDING THE ISSUES. PLAINTIFF STATED "YES, THE SAME INDIVIDUAL AND THE SAME TYPES OF ISSUES". MR. FIRMEZA STATED "THANK YOU" AND DEPARTED.

184. APRIL 6TH 2017 PLAINTIFF WAS CONTACTED AT HIS CELL BY GRIEVANCE UNIT MR. R.A FIRMEZA REGARDING GRIEVANCE (#17-0296) (SEE "EXHIBIT W (a)(b)" SUPRA) AND THE GRIEVANCE UNIT'S RESPONSE. PLAINTIFF REFUSES TO SIGN THE RESPONSE, FOR THE GRIEVANCE UNIT HAD NOT CORRECTED THE SITUATION AND HAD DONE

CIVIL RIGHTS COMPLAINT (§1983)                    PAGE 75 OF 162

1  NOTHING TO THUS FAR AMELIORATE PLAINTIFF'S HARDSHIP. THE GRIEVANCE WAS DENIED
2  AND REFERRED TO GRIEVANCE (#17-0074) ON (4-3-17) BY SGT., P.KENNEDY.
3  PLAINTIFF ARGUES THAT THE SITUATION IS TWO SEPERATE SITUATIONS OR INCIDENTS,
4  AND THUS CANNOT BE REFERRED TO ONE OR THE OTHER, AS PLAINTIFF INDICATED THE
5  DATE OF THE INCIDENT IN THE "DATE GRIEVANCE OCCURRED" SECTION (id," W (a)")
6  NO (KSF) WAS DOCUMENTED AND NO (PREA) REPORT INITIATED, NOR WAS MR. WHEELER
7  EVEN MOVED/RELOCATED. PLAINTIFF REFUSED TO SIGN. AUTOMATIC APPEAL DENIED ON
8  (4-12-17) BY LT., J. MCCOMAS (BADGE# 1063) CONCURRED BY LT., P.H.SLAUGHTER
9  (BADGE #1068), PLAINTIFF BELIEVES THIS ORDEAL TO BE A COVER UP TO HIS CLAIMS.
10  **185.** MARCH 29TH THROUGH APRIL 6TH 2017 SOME TIME DURING THIS
11  PERIOD, SUBSEQUENTLY AND SUSPICIOUSLY INMATE MR. WHEELER - THE INMATE WHO
12  PLAINTIFF INDICATED AS THE GASSER IN BOTH GRIEVANCE (#17-0074) AND (#17-0296)-
13  WAS TRANSFERED OUT OF HU(2) (REFER TO INMATE RECORDS FOR CORROBORATION).
14  **186.** MAY 2ND 2017 PLAINTIFF IS CONTACTED AT HIS CELL BY DEPUTY
15  MR. STAVERT (FULL INFORMATION UNKNOWN) ("JOHN DOE" DEFENDANT) AND TOLD TO
16  "CUFF UP". PLAINTIFF WAS THEN ESCORTED TO THE HU(2) QUASI YARD WHERE IT WAS JUST
17  MR. STAVERT AND PLAINTIFF PRESENT. IT IS AT THIS TIME MR. STAVERT INFORMS PLAINTIFF
18  THAT AN INVESTIGATION WAS BEING CONDUCTED AND THAT MANY OFFICERS "WERE BEING
19  QUESTIONED ABOUT MISTREATMENT ALLEGEDLY DONE BY MR. LINN AND MR. MCDERMOTT."
20  AT THIS TIME PLAINTIFF WAS UNAWARE OF ANY INVESTIGATION AND WHOM WAS DOING THE
21  INVESTIGATING AND SO JUST STATED "OKAY". MR. STAVERT ASKED PLAINTIFF WHAT PLAINTIFF
22  "PLANNED ON DOING" AND "WHERE" PLAINTIFF WAS "GOING WITH THIS ?." PLAINTIFF STATED HE
23  WAS GOING ALL THE WAY" AND "REPORTING THE OFFICERS". MR. STAVERT THEN TOLD PLAINTIFF
24  TO "NOT SPEAK ON MR. LINN" TO ONLY IMPLEMENT" MR. MCDERMOTT "CUZ HE DOESN'T "KNOW
25  HIM", AND THAT IF PLAINTIFF DID SPEAK ON MR. LINN THAT HE (MR. STAVERT) WOULD BE
26  "FORCED TO SPEAK ON MR. LINN'S BEHALF". PLAINTIFF DID NOT RESPOND, MR. STAVERT THEN
27  CONTINUED STATING HOW "EVERYONE" KNEW THAT PLAINTIFF IS AN INMATE THAT "STANDS FOR

THINGS", HAS "MORALS" AND "RESPECT", A "GOOD REPUTATION", BUT THAT PLAINTIFF WAS "GOING TO DO WHAT" PLAINTIFF WAS "GOING TO DO", YET HE (MR. STAVERT) KNEW PLAINTIFF "WILL DO THE RIGHT THING". PLAINTIFF MADE NO RESPONSE OTHER THAN A NONCHALANT HEAD NOD INDICATING HE UNDERSTOOD. PLAINTIFF WAS THEN ESCORTED BACK TO HIS CELL. WITNESSES TO THIS ENCOUNTER WERE HU(2) DEPUTY MR. REESE AND HU(2) HCT MRS. FROZAE (FULL INFORMATION UNKNOWN) (REFER TO HOUSING LOGS).

187. PLAINTIFF TOOK THIS AT FIRST TO BE AN INDIRECT, YET CLEAR, DEMAND FOR HIM TO NOT SPEAK ON DEPUTY MR. LINN OR THERE WOULD BE CONSEQUENCES, AS PLAINTIFF HAS ALREADY MENTIONED MANY ROUGE OFFICERS REPUTATION FOR VIOLENCE AND MISTREATMENT, INCLUDING MR. STAVERTS. PLAINTIFF ALSO TOOK THIS TO BE A DIRECT THREAT TO HIS REPUTATION, AN INSULT TO HIS CHARACTER, AND ULTIMATELY AN UNAUTHORIZED INTEROGATION SET TO BRIBE PLAINTIFF BY PLAYING ON HIS STRINGS OF MORALE AND IGNORANCE. PLAINTIFF KNOWS OFFICER MR. LINN TO HAVE TWO BROTHERS WHO ARE EMPLOYED AS SHERIFF DEPUTIES AND THUS THIS FACT WIEGHED HEAVY ON PLAINTIFF AS HE WAS TORMENTED BY THE FEAR OF POSSIBLE RETALIATION AND SO REMAINED IN A CONSTANT BATTLE OF ANXIETY.

188. <u>MAY 5TH 2017</u> PLAINTIFF REQUESTS TO BE SEEN BY MENTAL HEALTH (CJMH) DUE TO HAVING SEVERE SYMPTOMS OF PARANOIA, ANXIETY, AND ILLNESS. PLAINTIFF WAS REFERRED TO (CJMH) BY HU(2) NURSE MS. ZENAIDA GUTMAN. PLAINTIFF WAS NOT SEEN BY (CJMH) UNTIL (5-30-17).

189. MAY 6TH 2017 PLAINTIFF STILL FEELING ILLNESS, HAVING PARANOIA AND ANXIETY, REQUESTED TO BE SEEN BY NURSE. PLAINTIFF WAS REFERRED TO (CJMH) BY HU(2) NURSE HYUN CHOI. PLAINTIFF WAS NOT SEEN BY (CJMH) UNTIL (5-30-17).

190. <u>MAY 8TH 2017</u> PLAINTIFF SUBMITTED GRIEVANCE REGARDING PLAINTIFF'S UNSANITARY LIVING CONDITIONS AS WELL AS THE SUBJECTION OF LIVING AMONGST INDECENT BEHAVING INMATES (SEE INMATE GRIEVANCE FORM AND RESPONSE #17-0692) (ATTACHED HERETO AS "**EXHIBIT X** (a), (b)") <u>DENIED</u> ON (5-24-17) BY SGT., P.

1  KENNEDY ON GROUNDS OF CLASSIFICATION DETERMINATIONS. PLAINTIFF ARGUES
2  THAT HE IS HOUSED IN THE WRONG SECTION OF AD.-SEG. HOUSING AND ONLY GRIEVES TO
3  BE PLACED INTO A MORE HUMANE SETTING. APPEAL **DENIED** ON ⟨5-26-17⟩ BY LT.,
4  LANNCE E. DELBRIDGE ⟨BADGE #1404⟩ **CONCURRED** BY LT., P.H. SLAUENTER ⟨BADGE# 1068⟩.
5      **191.** MAY 12TH 2017 PLAINTIFF SUBMITTED LEGAL MAIL TO HU(2) DEPUTY
6  MR. MORUZA ⟨BADGE #2296⟩ REQUESTING HIS ASSISTANCE IN PLACING SAID MAIL INTO
7  THE DAYS INSTITUTIONAL MAIL SYSTEM - TO BE DELIVERED TO INMATE SERVICE UNIT.
8  MR. MORUZA SIGNED OFF ON THE INMATE MESSAGE REQUEST FORM THAT WAS SCOTCH
9  TAPED TO THE MANILLA ENVELOPE. SAID LEGAL MAIL WAS ~~SEALED~~ SEALED IN, AND STATED THAT
10  HE WOULD PLACE IT IN THE MAIL. THE DESCRIPTION OF SAID LEGAL MAIL IS AS FOLLOWS:
11  MARSDEN MOTION, NOTICE OF MOTION AND DECLARATION SUPPORTING MOTION ⟨IN -
12  REGARDS TO PLAINTIFF'S CRIMINAL DEFENSE ATTORNEY⟩; A LETTER COMPOSED TO THE
13  HONORABLE JUDGE DAN GRIMMER OF HAYWARD SUPERIOR COURT DEPT. NO. 513 REGARDING
14  CONDITIONS OF CONFINEMENT; AND A LETTER COMPOSED TO THE CALIFORNIA BAR ASSOCIATION.
15  PLAINTIFF'S REQUEST TO INMATE SERVICE UNIT WAS FOR ASSISTANCE IN MAKING COPIES OF
16  THESE DOCUMENTS. NO COPY OF MESSAGE REQUEST FORM MADE BY PLAINTIFF.
17      **192.** MAY 17TH 2017 PLAINTIFF IS CONTACTED AT HIS CELL BY HU(2)
18  DEPUTY MR. SOTO WHO STATES TO PLAINTIFF "I FOUND YOUR LEGAL WORK AND MESSAGE
19  REQUEST FOR COPIES JUST SITTING IN THE TECH'S BOOTH. I THOUGHT I WOULD RETURN
20  IT TO YOU". PLAINTIFF STATED THANK YOU. PLAINTIFF DOES NOT KNOW WHETHER THIS WAS
21  AN ACT OF DIRECT YET SUBTLE INTIMIDATION BY MR. SOTO, LETTING PLAINTIFF KNOW
22  THAT SUCH TYPE OF MATERIALS WILL NOT BE SENT OUT THE BUILDING ON THAT SHIFT - OR
23  WHETHER THIS INDIVIDUAL THOUGHT TO AID PLAINTIFF IN SECURING HIS LEGAL WORK,
24  INDIRECTLY LETTING PLAINTIFF KNOW THAT HE ⟨MR. SOTO⟩ DOES NOT APPROVE OF HIS FELLOW
25  OFFICERS AND/OR TECHNICIANS ⟨HCT's⟩ ACTS OF WITHHOLDING SUCH MATERIALS. PLAINTIFF'S
26  OPINION IS THAT IT IS THE FORMER ACT. THE ENVELOPE WAS UNSEALED AND NO COPIES ENCLOSED.
27  MR. SOTO STATED AT HIS DEPARTURE THAT PLAINTIFF OUGHT TO ADDRESS THE MATTER WITH DEPUTY MR. MORUZA.

193. <u>MAY 18TH 2017</u> PLAINTIFF INQUIRES ABOUT HIS WITHHELD LEGAL MAIL AND REQUEST WHILE BEING ESCORTED TO VISITING BY DEPUTY MR. MORUZA. MR. MORUZA STATED THAT HE WAS UNAWARE OF PLAINTIFF'S LEGAL MAIL AND REQUEST BEING WITHHELD. PLAINTIFF INFORMED MR. MORUZA HOW DEPUTY MR. SOTO HAD RETURNED SAID MAIL STATING THAT IT HAD "BEEN FOUND IN HOUSING CONTROL" AND THAT PLAINTIFF OUGHT TO ADDRESS THIS WITH MR. MORUZA". PLAINTIFF INFORMED MR. MORUZA THAT IT WAS CLEAR THAT PLAINTIFF'S MAIL AND REQUEST HAD BEEN HARBORED AND THAT IT NEVER MADE IT OUT OF THE BUILDING. MR. MORUZA ASKED IF PLAINTIFF HAD THE MAIL AND REQUEST FORM, PLAINTIFF STATED "YES". MR. MORUZA THEN RE-WROTE PLAINTIFF'S MESSAGE REQUEST - DISPOSING OF THE ORIGINAL REQUEST - AND REATTACHED IT TO THE MANILLA ENVELOPE, SEALED IT AND PLACED IT BACK INTO THE MAIL BAG WHICH IS LOCATED IN HOUSING CONTROL ( BODY CAMERA FOOTAGE MAY OR MAY NOT BE AVAILABLE FOR CORROBORATION REGARDING FACTS #191,192,193).

194. <u>MAY 15TH 2017</u> PLAINTIFF SUBMITTED A GRIEVANCE CHALLENGING THE AUTHENTICITY OF AN OLD GRIEVANCE RESPONSE WHICH STATED PLAINTIFF HAD ONCE "BROUGHT DRUGS INTO THE FACILITY" AS BEING ONE OF THE FACTORS OF PLAINTIFF'S AD.-SEG. HOUSING PLACEMENT [( SEE INMATE GRIEVANCE RESPONSE # 14-1599 ) ( ATTACHED HERETO AS "**EXHIBIT Y** ") <u>DENIED</u> ON ( 10-31-14 ) ( QUOTATIONS, id " Y PARA (2)" )] PLAINTIFF REQUESTED A THOROUGH INVESTIGATION INTO THESE FALSE CLAIMS AND REQUESTING THE ALLEGATIONS BE REMOVED FROM HIS FILE (SEE INMATE GRIEVANCE FORM # 17-0737 ) ( ATTACHED AS "**EXHIBIT D (9)**"; SUPRA ) <u>DENIED</u> ON ( 5-25-17 ) BY SGT., P. KENNEDY ON GROUNDS OF CLASSIFICATION DETERMINATIONS. PLAINTIFF ARGUES THAT THE ISSUE OF DRUG ALLEGATIONS WERE NOT ADDRESSED IN THE GRIEVANCE UNIT'S RESPONSE, FOR PLAINTIFF'S GRIEVANCE TO BE REFERRED TO ANOTHER UNRELATED GRIEVANCE ISSUE IS A MISUSE OF THE GRIEVANCE RESPONSE SYSTEM. APPEAL <u>DENIED</u> ON ( 5-26-17 ) BY LT., L.E. DELBRIDGE ( BADGE # 1404) <u>CONCURRED</u> BY LT., P.H. SLAUGHTER (BADGE # 1068). THIS ISSUE WAS GRIEVED AGAIN ON A LATER DATE - INCORPORATED INFRA ).

195. MAY 21ST 2017 PLAINTIFF SUBMITTED GRIEVANCE REGARDING THE PROCESS OF IN-HOUSE LEGAL MAIL REQUESTS FOR COPIES DUE TO THE INCIDENTS THAT OCCURRED ON MAY 12TH, MAY 17TH AND MAY 18TH, REQUESTING A CHANGE IN SAID PROCESS (SEE INMATE GRIEVANCE FORM AND RESPONSE #17-0780) (ATTACHED HERETO AS "EXHIBIT Z (a), (b)") RESOLVED ON (6-19-17) BY SGT. P. KENNEDY - DUE TO INMATE SERVICES ASSIGNED PRO PER OFFICER MR. MARTINEZ (FULL INFORMATION UNKNOWN) HAVING CONTACTED PLAINTIFF AT HIS CELL ON (6-14-17) AND EXPLAINED A NEW PROCESS IN WHICH WOULD BE OFFERED TO PLAINTIFF WHEN REQUESTED. PLAINTIFF AGREED TO MR. MARTINEZ'S SOLUTION (REFER TO BODY CAMERA FOOTAGE FOR CORROBORATION).

196. MAY 22ND 2017 PLAINTIFF'S LEGAL MAIL AND REQUEST FOR COPIES MAILED OUT (5-18-17) WERE RETURNED WITH 3 COPIES EACH. PLAINTIFF'S MOTION, NOTICE OF MOTION, LETTER TO HONORABLE JUDGE AND LETTER TO CALIFORNIA BAR ASSOCIATION WERE ALL MAILED OUT ON (5-24-17) TO THEIR RESPECTIVE ADDRESSES.

197. MAY 24TH 2017 PLAINTIFF IS GASSED BY YET ANOTHER INMATE WHOM DID NOT KNOW PLAINTIFF, HOWEVER STATED "YOUR THE GUY SNITCHING ON THE GUYS GASSING. YOUR A SNITCH!" THIS INMATE IS NAMED MR. ERICK WINSTON (2)(F)(6) WHOM SQUIRTED FECES INTO PLAINTIFF'S CELL, SQUIRTED URINE INTO PLAINTIFF'S CELL, AS WELL AS OUTSIDE OF PLAINTIFF'S CELL DOOR. MR. ERIC WINSTON ("MR. WINSTON") THEN DECIDED TO SQUIRT THE REMAINDER OF HIS STORED FECES AND URINE ONTO PLAINTIFF'S NIEGHBORING CELLS - AS PLAINTIFF HAD PLACED A MAKESHIFT SAFETY MECHANISM OVER THE DOOR APERTURES. PLAINTIFF MADE ATTEMPTS AT ALERTING THE HOUSING DEPUTY MR. REESE (BADGE #1333). MR. REESE WITNESSED MR. WINSTON'S ACTIONS AND ASKED HIM TO LOCK IT DOWN INTO HIS CELL, ATTEMPTS THAT WERE FUTILE. PLAINTIFF HAD TO SANITIZE HIS CELL WITH SHAMPOO AND HOT WATER. ONCE MR. WINSTON DID LOCK HIMSELF BACK INTO HIS CELL, MR. REESE MADE A NUMBER OF UNNECESSARY COMMENTS SUCH AS "I'M SHUTTING THIS PROGRAM DOWN FOR THE DAY SINCE YOU GUYS WANNA ACT LIKE KIDS, YOU GUYS CAN

1  THANK MR. WINSTON IN CELL ⟨6⟩ FOR THAT, WHO HAS ⟨13⟩ PRIORS FOR GASSING. NOW
2  I HAVE TO CALL CRIME SCENE AND CLEAN UP HAZARDOUS MATERIALS – I REPEAT HAZARDOUS
3  MATERIALS – SO YOU GUYS ARE SAFE." MR. REESE MADE IT A POINT TO DIRECT THE COMMENTS
4  IN PLAINTIFF'S DIRECTION, MAKING PLAINTIFF FEEL LIKE HE SHOULD NOT SPEAK OUT AGAINST
5  INMATE GASSINGS – THAT THEY ARENT THAT SERIOUS. PLAINTIFF IS OF A DIFFERENT MIND,
6  HOWEVER. PLAINTIFF REFUSES TO BE SUBJECTED TO SUCH TREATMENT AND CONDITIONS OF
7  LIVING, AND WILL CONTINUE TO ADDRESS THIS ISSUE.

8      **198.** MAY 25TH 2017 PLAINTIFF SUBMITTED A GRIEVANCE REGARDING THE
9  MR. WINSTON GASSING AND THE ATTEMPTS OF INCITING INMATES BY DEPUTY MR. REESE ON
10  ⟨5-24-18⟩ (SEE INMATE GRIEVANCE FORM AND RESPONSE # 17-0816) (ATTACHED HERETO
11  AS "**EXHIBIT A2** ⟨a⟩, ⟨b⟩") <u>**RESOLVED**</u> ON ⟨6-21-17⟩ BY SGT., P. KENNEDY ON
12  GROUNDS THE INMATE MR. WINSTON WAS RELOCATED ON ⟨5-30-17⟩. PLAINTIFF DID NOT
13  APPEAL. RESOLUTION <u>**CONCURRED**</u> BY LT., P.H. SLAUGHTER ⟨BADGE # 1068⟩. THE EXPEDIENT
14  RESOLUTION CAME DUE TO A CONTINUANCE OF GASSINGS BY MR. WINSTON – AS DESCRIBED
15  BELOW. MR. REESE'S COMMENTS WERE NOT ADDRESSED, PLAINTIFF DID NOT PRESS THAT ISSUE.

16      **199.** MAY 24TH 2017 PLAINTIFF OBSERVES CRIME SCENE RESTORATION
17  WORKER ARRIVE TO HU ⟨2⟩ ⟨F⟩ AND SANITIZE CELLS ⟨2⟩⟨F⟩⟨2⟩, ⟨2⟩⟨F⟩⟨3⟩, ⟨2⟩⟨F⟩
18  ⟨4⟩, AND ⟨2⟩⟨F⟩⟨7⟩. PLAINTIFF BY THAT TIME HAD ALREADY CLEANED HIS LIVING AREA.

19      **200.** MAY 25TH 2017 PLAINTIFF COMPOSES AN INMATE LIVES ADDRESSMENT
20  LETTER WITH THE INTENT OF REACHING OUT TO ORGANIZATIONS THAT CAN HELP ADDRESS DEPUTY
21  SHERIFF MISCONDUCT IN THE SANTA RITA JAIL. PLAINTIFF MAILS THIS LETTER OUT TO HIS SISTER
22  WITH INSTRUCTIONS TO MAIL THE ADDRESSMENT OUT TO A NUMBER OF ORGANIZATIONS (SEE A
23  COPY OF INMATES LIVES MATTER ADDRESSMENT) ⟨ATTACHED HERETO AS "**EXHIBIT B2** ⟨a⟩⟨1⟩
24  THROUGH ⟨a⟩⟨7⟩").

25      **201.** <u>MAY 28TH 2017</u> PLAINTIFF'S CELL IS ONCE AGAIN TARGETED BY MR.
26  WINSTON ⟨2⟩⟨F⟩⟨6⟩ WHOM, UPON HIS POD TIME DECIDED TO GAS PLAINTIFF'S CELL WITH
27  FECES, CALLING PLAINTIFF A "SNITCH". MR. WINSTON SQUIRTS FECES INTO PLAINTIFF'S

1  CELL AT WHICH TIME PLAINTIFF ATTEMPTS TO BLOCK THE GASSING WITH A MAKESHIFT
2  SAFETY MECHANISM OVER THE DOOR APERTURES, AT WHICH TIME MR. WINSTON
3  RETURNED TO HIS CELL FOR APPROXIMATELY 1 MINUTE ONLY TO RETURN TO PLAINTIFF'S
4  CELL HOLDING A COUNTY ISSUED MILK CARTON FULL OF FECES. MR. WINSTON THEN
5  SMEARS THE FECES OVER PLAINTIFF'S CELL DOOR WINDOW, APERTURES AND INTO THE DOOR
6  JAM CRACKS. PLAINTIFF OVERHEARS MR. WINSTON CONTINUE WITH HIS GASSING
7  BEHAVIOR ON INMATE MR. JAMES DUCKETT (2)(F)(2) WHERE HE SMEARS FECES ONTO
8  MR. DUCKETTS CELL WINDOW AS WELL. MR. WINSTON EVENTUALLY LOCKS HIMSELF BACK
9  INTO HIS CELL. HU(2) DEPUTY MR. JONES (BADGE #2128) IS THEN OVERHEARD
10 ENTERING (2)(F) POD AND RELEASING MR. DUCKETT FROM HIS CELL WITH DIRECTIONS TO
11 "CLEAN HIS CELL" AND THEN "CLEAN MR. FEBO'S CELL" (THE OUTSIDE OF CELL). PLAINTIFF
12 WOULD HAVE RATHER HAD THE OUTSIDE SANITIZED BY CRIME SCENE RESTORATION
13 WORKERS, HOWEVER, RECOGNIZING THAT MR. JONES MAY BE ATTEMPTING TO ACT
14 QUICKLY SO TO CONTINUE THE DAYS PROGRAM, PLAINTIFF DID NOT PRESS THE ISSUE. PLAINTIFF
15 ASKS MR. JONES TO PLEASE RELOCATE MR. WINSTON, HOWEVER, MR. JONES STATES HE CAN
16 NOT DO SO.

17       202. MAY 30TH 2017 PLAINTIFF IS ONCE AGAIN TARGETED BY MR. WINSTON
18 (2)(F)(6) WHOM, UPON HIS POD TIME DECIDED TO SQUIRT FECES INTO PLAINTIFF'S
19 CELL DOOR APERTURES, HOWEVER, GIVEN PLAINTIFF'S MAKESHIFT SAFETY MECHANISM —
20 PLAINTIFF WAS ABLE TO KEEP THE URINE FROM ENTERING HIS CELL. MR. WINSTON, NOT
21 HAVING ANY FECES AVAILABLE, DECIDES TO SMEAR LEFT OVER BEANS OVER PLAINTIFF'S WINDOW
22 AND OTHERS WINDOWS AS WELL, INCLUDING MR. DUCKETT'S (2)(F)(2). MR. WINSTON THEN
23 BEGINS TO TRASH THE ENTIRE (2)(F) POD, SMEARING FOOD AND THEN DAMAGING THE
24 POD TELEPHONES — RENDERING THEM ALL USELESS. PLAINTIFF ASKS MR. JONES ONCE AGAIN
25 TO RELOCATE MR. WINSTON, AT WHICH TIME MR. JONES HAD CONTACTED HU(1) DEPUTY
26 MR. STAVERT WHO ARRIVED AND WAS ABLE TO CALM MR. WINSTON DOWN AND DECIDED
27 TO RELOCATE MR. WINSTON TO HU(1) AD.-SEG. HOUSING. MR. STAVERT INFORMED PLAINTIFF

THAT HE WAS ALREADY CLEARED BY CLASSIFICATION OFFICIALS TO RELOCATE MR. WINSTON. THE POD WAS LATER CLEANED BY POD WORKERS AND THE TELEPHONES REPLACED BY PHONE TECHNICIANS.

203. MAY 31ST 2017 PLAINTIFF IS CONTACTED AT HIS CELL BY (CJMH) CLINICIAN MR. DANIEL (FULL INFORMATION UNKNOWN AT THIS TIME) AT WHICH TIME PLAINTIFF EXPLAINED TO MR. DANIEL THE MANY SYMPTOMS HE WAS EXPERIENCING AND HAD BEGAN EXPERIENCING OVER THE COURSE OF THE LAST YEAR, SUCH AS PARANOIA, FEAR OF RETALIATION, ANXIETY, INSOP DEPRIVATION, BIPOLAR TYPE MOOD SWINGS, AND HAD REQUESTED MEDICATION FOR DEPRESSION. PLAINTIFF WAS SUFFERING FROM A CONSTANT STATE OF ANXIETY AND PANIC FROM A COMPLETE LOSS OF TRUST IN LAW ENFORCEMENT. PLAINTIFF IS TOLD BY MR. DANIEL THAT PLAINTIFF WOULD BE REFERRED TO PSYCHIATRIST MR. EDWARDS, MD.

204. MAY 2017 (AS OF THIS MONTH) PLAINTIFF OBSERVES THAT DEFENDANT MR. LINN IS NO LONGER WORKING AS A HU(2) DEPUTY, HIS NEW POST IS UNKNOWN, HOWEVER, IS FURTHER OBSERVED BY PLAINTIFF PERIODICALLY IN HU(2) HANGING OUT WITH DEFENDANT MR. MCDERMOTT AND DEPUTY MR. SOTO IN THE HU(2) EAST DEPUTY OFFICE. AT NO TIME WHILE DEFENDANT MR. LINN WORKED IN THE HU(2) SETTING DID PLAINTIFF RETALIATE AGAINST MR. LINN IN ANY WAY. PLAINTIFF MADE NO THREATS OF ANY KIND, AND MR. LINN HAD MANY ENCOUNTERS WITH PLAINTIFF WITH WHICH PLAINTIFF WAS NOT HANDCUFFED.

205. MAY 2017 PLAINTIFF OBSERVES DEFENDANT MR. MCDERMOTT ENTER (2) (F) POD AND BEGIN TO OPEN CELL DOOR TRAY SLOTS FOR P.M. CHOW TIME. PLAINTIFF OVERHEARS SOME WORDS BEING EXCHANGED BETWEEN DEFENDANT MR. MCDERMOTT AND INMATE MR. JEFFERY MCMASTERS (2)(F)(6), TO WHICH PLAINTIFF COULD NOT REMEMBER VERBATIM, BECAUSE HE HAD NOT BEEN FULLY AWARE AT THAT MOMENT, HOWEVER, HEARD BOTH PARTIES STATE "FUCK YOU" TO EACH OTHER AND PLAINTIFF OVERHEARS A SPLASH, THE COMMON SOUND OF A GASSING. PLAINTIFF BELIEVES MR. MCMASTERS THROUGH A CUP OF WATER AT DEFENDANT MR. MCDERMOTT, BECAUSE THE MESS WAS NOT CLEANED UP AND PLAINTIFF COULD SEE FROM HIS TRAY SLOT THE CLEAR

1  LIQUID ON THE FLOOR JUST 2-3 FEET AWAY. DEFENDANT MR. MCDERMOTT THEN EXITED
2  THE POD. AFTER P.M. CHOW WAS COLLECTED MR. MCDERMOTT THEN RETURNED TO CLOSE THE
3  CELL DOOR TRAY SLOTS. ONCE ALL DOOR TRAY SLOTS WERE CLOSED, INCLUDING MR. MCMASTERS
4  HE DOUBLED BACK TO MR. MCMASTERS CELL AND ASKED HIM "WHY DID YOU DO THAT". PLAINTIFF
5  HEARD NO REPLY. DEFENDANT MR. MCDERMOTT THEN WENT TO EXIT THE POD AT WHICH TIME
6  HE STOPPED IN THE CENTER OF THE POD, TURNED AROUND AND STATED "ITS ALL GOOD JEFFERY,
7  WHAT GOES AROUND COMES AROUND. IT COULD HAPPEN TOMORROW OR IT COULD HAPPEN YEARS
8  FROM NOW, AND IT MIGHT NOT EVEN BE ME, IT MAY BE SOMEONE ELSE," AT WHICH TIME
9  DEFENDANT MR. MCDERMOTT DEPARTED. IT IS VERY IMPORTANT FOR PLAINTIFF TO NOTE THAT
10 WHILE DEFENDANT MR. MCDERMOTT WAS MAKING THIS STATEMENT ADDRESSED TO MR. MCMASTERS,
11 HE WAS LOOKING AT PLAINTIFF, AND PLAINTIFF UNDERSTOOD THIS TO BE AN INDIRECT THREAT TO
12 PLAINTIFF, AS BY THIS TIME DEFENDANT WAS ALREADY FULLY AWARE OF PLAINTIFF'S COOPERATION
13 WITH INTERNAL AFFAIRS REGARDING HIS MISTREATMENT, AND HE WANTED PLAINTIFF TO KNOW
14 THAT IT DOES NOT END HERE. THE STATEMENT MADE BY DEFENDANT MR. MCDERMOTT WAS
15 TO COMPLEX OF A MESSAGE TO BE GIVEN TO AN INMATE LIKE MR. MCMASTERS, AND DEFENDANT
16 MR. MCDERMOTT KNEW THIS, THUS SIEZING THE OPPERTUNITY TO VOICE HIS TRUEST INTENT:
17 REVENGE. HOWEVER, PLAINTIFF DID NOT RESPOND TO THE COMMENT.
18     AND THEN APPROXIMATELY (30) MINUTES LATER PLAINTIFF OBSERVES DEPUTY MR. J
19 BAILEY (BADGE #2239.) ENTER THE POD AND WALK DIRECTLY TO (2)(F)(6) MR. JEFFERY
20 MCMASTERS, AT WHICH TIME MR. J. BAILEY ALL THE WHILE IS PULLING OUT HIS PEPPER
21 SPRAY AND SHAKING IT SO TO READY IT FOR USE. PLAINTIFF OVERHEARS MR. BAILEY OPEN
22 MR. MCMASTERS FOOD TRAY SLOT (←OR-CUFFING PORT, AS THEY ARE INTERCHANGABLY
23 REFERRED AS) AND A LONG BURST OF SPRAY THAT WAS REPEATED (3) TIMES. PLAINTIFF
24 HEARD MR. MCMASTERS GROWL, SIMILAR TO AN ANGRY BEAST AND, TO PLAINTIFF'S CONCLUSION,
25 RUNS TOWARD THE DOOR AT MR. BAILEY, BECAUSE AT THAT TIME MR. BAILEY IS HEARD
26 SLAMMING THE TRAY SLOT CLOSED AND KEYING IT LOCKED. MR. BAILEY THEN STROLLS OUT
27 OF THE POD LIKE A MACHO MAN, CLEARLY HAVING DISPLAYED AN ACT OF RETALIATION FOR

CIVIL RIGHTS COMPLAINT (§1983)          PAGE 84 OF 162

1  DEFENDANT MR. MCDERMOTT. MR. MCMASTERS WAS NOT OFFERED A SHOWER.

2  AND THEN LATER THIS DAY AN INMATE NAMED MR. BRUCE BROW ⟨2⟩⟨F⟩⟨11⟩

3  ARRIVED WHOM STATED TO PLAINTIFF THAT HE HAD OVERHEARD DEFENDANT MR.

4  MCDERMOTT TALKING WITH DEPUTY MR. BAILEY AND SPECIFICALLY ABOUT INMATE ⟨2⟩

5  ⟨F⟩⟨6⟩" WHO HAD "GASSED" DEFENDANT MCDERMOTT AND HOW MR. BAILEY WAS GOING

6  TO "SPRAY" HIM. INMATE MR. BRUCE BROWN STATED THAT HE WAS LOCATED IN THE HU⟨2⟩

7  ISOLATION CELL AT THE TIME.

8  **205.** <u>JUNE 1ST 2017</u> PLAINTIFF'S SISTER INFORMS HIM THAT SHE RECEIVED

9  ALL LEGAL MAIL SENT OUT ON ⟨5-24-17⟩. SHE STATED SHE WOULD TAKE CARE OF

10  EVERY THING AND ENSURED THE MAIL WOULD BE MAILED TO ADVOCATE GROUPS.

11  **206.** JUNE 2ND 2017 PLAINTIFF SUBMITTED A GRIEVANCE REGARDING

12  THE LACK OF TRANSPORTATION TO DENTAL APPOINTMENT ⟨SEE INMATE GRIEVANCE FORM

13  AND RESPONSE # 17-0866⟩ ⟨ATTACHED HERETO AS "**EXHIBIT: C2** ⟨a⟩, ⟨b⟩"⟩

14  **DENIED** ON ⟨7-10-17⟩ BY SGT., P. KENNEDY ON GROUNDS THAT THE GRIEVANCE WAS

15  "NOT A GRIEVABLE ISSUE" ⟨id," C2⟨b⟩ PARA ⟨2⟩"⟩, HOWEVER, PLAINTIFF WAS PROVIDED

16  ANOTHER APPOINTMENT DATE FOR ⟨7-17-17⟩ AND SINCE THIS WAS THE REQUEST IN

17  PLAINTIFF'S GRIEVANCE, PLAINTIFF DID NOT PRESS THE ISSUE. NO APPEAL. DENIAL WAS

18  <u>CONCURRED</u> BY LT., P.H. SLAUGHTER ⟨BADGE # 1068⟩.

19  **207.** ON ⟨6-2-17⟩ PLAINTIFF HAD ATTEMPTED TO REQUEST TRANSPORTATION

20  THROUGH HIS HU⟨2⟩ DEPUTY - DEFENDANT MR. MCDERMOTT - ALSO REQUESTING HIM TO

21  PLACE A CALL TO THE CLINIC, WHICH HE REFUSED, THUS PROMPTING PLAINTIFF'S GRIEVANCE

22  DUE TO DEPUTY NOT BEING ABLE TOO, OR WANTING TO AID IN THE RESOLUTION OF THE

23  MATTER ⟨SEE "CANNOT BE RESOLVED AT DEPUTY LEVEL" SECTION⟩ ⟨id," C2⟨a⟩"⟩.

24  **208.** <u>JUNE 4TH 2017</u> PLAINTIFF OBSERVES CRIME SCENE RESTORATION

25  WORKER ⟨AN OUTSIDE AGENCY CONTRACTED BY THE SANTA RITA JAIL TO CLEAN HAZARDOUS

26  SCENES IN THE JAIL, IE., FECES, BLOOD, URINE, ETC.-⟩ ENTER ⟨2⟩⟨F⟩ POD TO CLEAN

27  A NUMBER OF CELLS ON THE TOP TIER DUE TO SANITARY ISSUES ⟨REFER TO HU⟨2⟩ LOGS⟩.

209. JUNE 6TH 2017 PLAINTIFF SUBMITTED A GRIEVANCE REGARDING HAVING NOT BEEN SEEN BY HU(2) PSYCHIATRIST AFTER DEALING WITH AN ANXIETY CRISIS AND BEING REFERRED TO PSYCHIATRIST BY (CJMH) CLINICIAN (SEE INMATE GRIEVANCE FORM AND RESPONSE # 17-0902) (ATTACHED HERETO AS **"EXHIBIT D2 (a), (b)"**) _DENIED_ ON (6-28-17) BY SGT., P. KENNEDY ON GROUNDS THAT PLAINTIFF WAS "PROVIDED ADEQUATE MENTAL HEALTH TREATMENT IN A TIMELY MANNER" FOR HIS "CONDITION" (id, "D2 (b) PARA (5)") AND WAS "SCHEDULED TO MEET WITH THE PSYCHIATRIST ON (6-7-17)" (id, "D2 (b) PARA (3)"). THOUGH PLAINTIFF WAS NEVER SEEN BY THE PSYCHIATRIST ON (6-7-17), NOR ANY DAY THEREAFTER, PLAINTIFF WAS GIVEN A NEW DATE (7-10-17) TO MEET WITH (CJMH). NO APPEAL. DENIAL _CONCURRED_ BY LT., P.H. SLAUGHTER (BADGE # 1068)

210. JUNE 5TH 2017 PLAINTIFF RECEIVED POSTCARD FROM OFFICE OF CHIEF TRIAL COUNSEL/INTAKE (SEE INQUIRY CARD # 17-08853) (ATTACHED HERETO AS **"EXHIBIT E2"**).

211. MAY 2017 TO JUNE 2017 SOMETIME DURING THE LAST WEEK OF MAY 2017 AND THE FIRST WEEK OF JUNE 2017 PLAINTIFF OBSERVES DEFENDANT MR. MCDERMOTT AND HU(2) DEPUTY MR. SOTO ENTER (2) (F) POD AND GO DIRECTLY TO CELL (2) (F) (3) MR. KENNETH WATKINS. PLAINTIFF OBSERVES DEFENDANT MR. MCDERMOTT AND MR. SOTO ENTER INTO MR. WATKINS CELL THROUGH THE REFLECTION OF THE (2) (F) POD GLASS PARTITION, WHICH IS DIRECTLY IN FRONT OF PLAINTIFF'S CELL AND MR. WATKINS CELL AND ALLOWS FOR PLAINTIFF TO SEE IN MR. WATKINS DIRECTION TO SOME DEGREE. PLAINTIFF THEN OVERHEARS SCUFFLING, BOOT SCREECHING, A SLAMMING, SOME MUFFLING IN VOICES, AND THEN AGAIN PLAINTIFF OBSERVES DEFENDANT MR. MCDERMOTT AND MR. SOTO EXIT MR. WATKINS CELL SLAMMING THE DOOR SHUT BEHIND THEM AND EXIT THE POD. PLAINTIFF OVERHEARS MR. WATKINS GROANING AND ABOUT 1 MINUTE LATER SAY OUT LOUD " THEY FUCKED ME UP BRO..... I DIDNT EVEN DO NOTHING." THE TECHNICIAN ON DUTY THIS PARTICULAR SHIFT WAS MR. ATKINSON.

PLAINTIFF WAS OF THE STRONGEST OPINION THAT MR. WATKINS WAS A VICTIM OF ASSULT
BY DEFENDANT MR. MCDERMOTT AND DEPUTY MR. SOTO. WHEN LATER QUESTIONED BY
PLAINTIFF, MR. WATKINS CONFIRMS THAT HE WAS ASSULTED AND YET DID NOT KNOW
WHY. CELL (2)(F)(2) MR. JAMES DUCKETT WAS ALSO A WITNESS TO THIS ASSULT.

212. JUNE 6TH 2017 PLAINTIFF SUBMITTED A GRIEVANCE CHALLANGING
THE VIOLATION TO HIS RIGHTS TO A HEARING REGARDING SOLITARY CONFINEMENT AS
WELL AS CONDITIONS OF THAT SOLITARY CONFINEMENT AS WELL AS REASONS FOR PROLONGED
SOLITARY CONFINGMENT (SEE INMATE GRIEVANCE FORM AND RESPONSE # 17-0900)
(ATTACHED AS "**EXHIBIT I** ⟨a⟩, ⟨b⟩"; SUPRA) **DENIED** ON ⟨6-27-17⟩ BY
SGT., P. KENNEDY ON GROUNDS OF SEVERAL NEW FACTORS SUCH AS "ASSULT HISTORY,
HISTORY OF DEFEATING CELL DOOR LOCKING MECHANISM AND ATTEMPTS AT MANIPULATING
STAFF"⟨**id,** "**I** ⟨b⟩ PARA ⟨3⟩"⟩. PLAINTIFF DENIES THESE ALLEGATIONS AND QUESTIONS
THE OPINION OF "ONGOING THREAT TO INMATES AND STAFF"⟨**id,** "**I** ⟨b⟩ PARA ⟨3⟩"⟩
AND HOW THIS HAS ANYTHING TO DO WITH PLAINTIFF BEING HELD IN SOLITARY FOR OVER
(3) YEARS WITH NO DISCIPLINARY HEARINGS OR ACTIONS FOR ANY OF THE STATED
"FACTORS". APPEAL **DENIED** ON ⟨6-29-17⟩ BY LT., L.E. DELBRIDGE ⟨BADGE # 1404⟩
**CONCURRED** BY LT., P.H. SLAUGHTER ⟨BADGE # 1068⟩.

213. JUNE 6TH 2017 PLAINTIFF SUBMITTED GRIEVENCE REGARDING
THE GRIEVANCE UNIT WITHHOLDING / HARBORING INMATE GRIEVANCE RESPONSE COPY NO.
⟨17-0127⟩ WHICH HAD BEEN AFFIRMED ON ⟨3-8-17⟩ AND VIEWED BY PLAINTIFF ON
⟨3-9-17⟩ ⟨SEE INMATE GRIEVANCE FORM AND RESPONSE # 17-0901⟩ ⟨ATTACHED
HERETO AS "**EXHIBIT F2** ⟨a⟩, ⟨b⟩"⟩ **DENIED** ON ⟨6-20-17⟩ BY SGT., P. KENNEDY
ON GROUNDS THAT PLAINTIFF SIGNED GRIEVANCE RESPONSE ⟨ORIGINAL⟩ "INDICATING YOU
SAW THE RESULT OF THIS RESPONSE ON ⟨3-9-17⟩"⟨**id,** "**F2** ⟨b⟩ LINE ⟨1⟩"⟩. PLAINTIFF IS
OF THE OPINION THAT THIS STATEMENT IS MADE IN A LAST MINUTE JUSTIFICATION FOR FAILING
TO PROVIDE PLAINTIFF WITH HIS RIGHTFUL COPY. PLAINTIFF WAS HOWEVER, PROVIDED A COPY OF SAID
DOCUMENT ON ⟨6-15-17⟩ THEREFORE DID NOT APPEAL. THE DENIAL WAS **CONCURRED** BY

1  LT., P.H. SLAUGHTER (BADGE# 1068). THE GRIEVANCE RESPONSE (#17-0127) HAS
2  ALREADY BEEN ATTACHED (SEE "EXHIBIT V (C)"; SUPRA).

3     214. JUNE 7TH 2017 PLAINTIFF DIRECTS HIS BROTHER TO CONTACT DEFENSE
4  ATTORNEY MR. MICHAEL CARDOZA FOR LEGAL ASSISTANCE.

5     215. JUNE 12TH 2017 PLAINTIFF BECOMES AWARE OF INMATE GEORGE
6  THORNTON (2)(F)(6) AND HIS SCABBIES OUTBREAK (REFER TO MR. THORNTONS MEDICAL
7  FILE) AND DIRECTS HIM TO ALERT A NURSE. INMATE MR. THORNTON WAS SEEN BY A NURSE AND
8  SCABBIES WAS CONFIRMED. INMATE MR. THORNTON WAS NOT QUARANTINED NOR ISOLATED
9  UNTIL TREATED. MR. THORNTON IS AN INHUMANE LIVING INMATE, WHO DOES NOT SHOWER,
10 AND DOES NOT CLEAN HIS CELL. THE CELL CONSTANTLY REEKS OF URANE, AS MR. THORNTON
11 PURPOSEFULLY URINATES ONTO HIS CELL FLOOR. AT TIMES MR. THORNTON'S CELL WAS FLOODED
12 AND HIS URINE WATER WOULD FLOOD INTO PLAINTIFF'S CELL. PLAINTIFF HAD TO DEAL WITH
13 MR. THORNTON'S MESS CONSTANTLY, INCLUDING SMELL HIS URINE; THROUGHOUT JUNE
14 2017 THROUGH SEPTEMBER 2017. PLAINTIFF HAD ASKED HU(2) DEPUTY MS. C. SARTIN
15 (BADGE# 2234) TO "PLEASE NOT MOVE MR. THORNTON NEXT DOOR" TO HIM, HOWEVER, WAS
16 TOLD "HE HAS TO GO INTO THIS CELL". PLAINTIFF CLEANS MR. THORNTON'S FLOODING WITH
17 SHAMPOO AND A TOWEL.

18    216. JUNE 13TH 2017 PLAINTIFF WAS CONTACTED AT HIS CELL BY HU(2)
19 DEPUTIES AND ESCORTED TO THE VISITING ROOM INTERVIEW AREA WHERE PLAINTIFF MEETS
20 WITH ATTORNEY MR. MICHAEL CARDOZA WHOM STATED HE HAD BEEN PAID A SMALL FEE
21 TO COME OUT TO SEE PLAINTIFF TO DISCUSS POSSIBLE RETAINER. PLAINTIFF STATED "YES"
22 THAT HE WAS SEEKING TO RETAIN PRIVATE COUNSEL. PLAINTIFF AND MR. CARDOZA WENT
23 OVER PLAINTIFF'S TWO CRIMINAL CASES AND ALSO BRIEFLY DISCUSSED PLAINTIFF'S POSSIBLE
24 CIVIL SUIT AT WHICH TIME PLAINTIFF ASKED MR. CARDOZA IF HE COULD LOOK OVER PLAINTIFF'S
25 SUIT AND MAIL IT TO THE COURTS OR DELIVER IT TO PLAINTIFF'S THEN GIRLFRIEND MS.
26 SEBASTIAN. MR. CARDOZA AGREED TO "LOOK IT OVER" AND DEPARTED WITH THE SUIT.
27 PLAINTIFF MADE SEVERAL CALLS BETWEEN (6-13-17) TO (6-19-17) TO PLAINTIFF'S

1 THEN GIRLFRIEND MS. SEBASTIAN REQUESTING AN UPDATE ON THE STATUS OF HIS SUIT.
2 PLAINTIFF WAS INFORMED BY MS. SEBASTIAN THAT MR. CARDOZA'S OFFICE STATED THEY
3 CANNOT RELINQUISH PLAINTIFF'S SUIT TO THE COURTS NOR TO MS. SEBASTIAN BECAUSE
4 IT WOULD GET TOO MANY PEOPLE IN TROUBLE. PLAINTIFF ADVISES MS. SEBASTIAN TO
5 GO TO THE POLICE AND FILE A REPORT. MS. SEBASTIAN THEN STATES THE NEXT DAY THAT
6 MR. CARDOZA'S OFFICE AGREED TO MAIL THE SUIT BACK DIRECTLY TO PLAINTIFF. THE SUIT
7 WAS RECEIVED ON ⟨7-27-17⟩. THIS PROCESS HINDERING PLAINTIFF'S ATTEMPTS AT FILING.

8   217. JUNE 17TH 2017 PLAINTIFF SUBMITTED GRIEVANCE CHALLANGING
9 STATEMENTS MADE IN GRIEVANCE UNIT RESPONSES THAT ARE USED AGAINST PLAINTIFF IN
10 CLASSIFICATION MATTERS AND THE FACT THAT PLAINTIFF HAD ADDRESSED THESE SAME
11 ISSUES BEFORE. ⟨SEE INMATE GRIEVANCE FORM AND RESPONSE # 17-1111⟩ ⟨ATTACHED
12 HERETO AS "EXHIBIT G2 ⟨a⟩, ⟨b⟩"⟩ DENIED ON ⟨7-27-17⟩ BY SGT., P. KENNEDY
13 ON GROUNDS WHICH WERE NOW PLAINTIFF HAD BEEN "SUSPECTED OF HAVING CONCEALED
14 DRUGS SENT INTO THE JAIL" ⟨id," G-2⟨b⟩ LINE ⟨1⟩"⟩. PLAINTIFF ARGUES THAT HE WANTS
15 THE ALLEGATIONS "RENDERED INSUFFICIENT INREGARDS TO THE USE AGAINST ME IN
16 ANY CLASSIFICATION DECISIONS" ⟨id," G-2 ⟨a⟩ LINES ⟨17-19⟩"⟩. APPEAL DENIED ON
17 ⟨8-1-17⟩ BY LT., J. MCCOMAS ⟨BADGE # 1063⟩ CONCURRED BY LT., P.H. SLAUGHTER
18 ⟨BADGE # 1068⟩. THE MATTERS IN THE ABOVE GRIEVANCE HAD INITIALLY BEEN DISREGARDED
19 IN GRIEVANCE NO. ⟨17-0737⟩ ⟨SEE "EXHIBIT D⟨a⟩, ⟨b⟩"; SUPRA⟩.

20   218. JUNE 19TH 2017 PLAINTIFF MAILS A LETTER TO THE PRISON LAW
21 OFFICE MR. DONALD SPECTOR REQUESTING FOR ASSISTANCE IN REPRESENTATION
22 REGARDING A SUIT AGAINST THE ALAMEDA SHERIFF'S DEPARTMENT. PLAINTIFF RECEIVED
23 NO RESPONSE.

24   219. JUNE 15TH 2017 PLAINTIFF IS CONTACTED AT HIS CELL BY
25 DEPUTIES AND IS ESCORTED TO THE HU⟨2⟩ VISITING COMMON AREA WHERE HE MEETS
26 WITH INTERNAL AFFAIRS OFFICIALS MR. SMITH AND MR. HOBBES ⟨FULL INFORMATION
27 UNKNOWN⟩ IN THE INTERVIEW ROOM FOR THE FIRST OF THREE TIMES. PLAINTIFF

WAS GIVEN THE OPTION TO SPEAK WITH OFFICIALS OR TO REMAIN SILENT IN REGARDS TO ACTIVITY IN THE JAIL. PLAINTIFF CHOSE TO SPEAK WITH INVESTIGATORS AND WAIVED HIS RIGHTS ⟨REFER TO INTERNAL AFFAIRS INTERVIEW DOCUMENTS / RECORDINGS, CASE NO. 17-9738⟩, WHERE PLAINTIFF WAS ASKED A NUMBER OF QUESTIONS PERTAINING TO ALLEGATIONS OF MISTREATMENT IN THE HU⟨2⟩⟨F⟩ POD. PLAINTIFF STATED OFFICERS NAMES INVOLVED, INMATES INVOLVED — BOTH SUSPECT AND VICTIM — AS WELL AS SOME OF THE INCIDENTS OF MISTREATMENT. PLAINTIFF GAVE DETAILS BEST HE COULD ON ALL PARTIES. THE INTERROGATION LASTED APPROXIMATELY ⟨3⟩ HOURS WHERE THEN PLAINTIFF WAS ESCORTED BACK TO HIS CELL.

220. JUNE 15TH 2017 PLAINTIFF MAILS OUT A LEGAL REQUEST FOR A DUECES TECUM TO THE ⟨LRA⟩ LEGAL RESEARCH ASSOCIATES.

221. JUNE 24TH 2017 PLAINTIFF RECEIVED LEGAL MAIL FROM THE ⟨LRA⟩, HOWEVER, NO DUECES TECUM PROVIDED, NIETHER A PACKET NOR DEMO ENCLOSED ⟨REFER TO LEGAL INFORMATION REQUEST — MATERIAL RECEIPT TRACKING #'s 1316; 1353; 1358⟩

222. JUNE 2017 PLAINTIFF OVERHEARS INMATE MR. JAMES DUCKETT ⟨2⟩⟨F⟩⟨2⟩, WHILE HIS DOOR WAS OPEN FOR RECREATION — HOWEVER WHILE STILL INSIDE HIS CELL — HAVING A CONVERSATION WITH HU⟨2⟩ HCT MR. KAISER, AT WHICH TIME PLAINTIFF OVERHEARS TECHNICIAN MR. KAISER STATE "... I'M NOT CROOKED LIKE THOSE GUYS MCDERMOTT AND LINN ... THEIR BAD COPS". MR. DUCKETT CONFIRMED THIS CONVERSATION WHEN PLAINTIFF ASKED HIM ABOUT IT.

223. JUNE 2017 ⟨AS OF THIS MONTH⟩ PLAINTIFF OBSERVES THAT DEFENDANT MR. MCDERMOTT IS NO LONGER WORKING AS A HU⟨2⟩ DEPUTY, HIS NEW POST IS UNKNOWN. AT NO TIME WHILE DEFENDANT MR. MCDERMOTT WORKED IN THE HU⟨2⟩ SETTING DID PLAINTIFF RETALIATE AGAINST MR. MCDERMOTT IN ANY WAY. PLAINTIFF MADE NO THREATS OF ANY KIND, AND MR. MCDERMOTT HAD MANY ENCOUNTERS WITH PLAINTIFF WITH WHICH PLAINTIFF WAS NOT HANDCUFFED. UPON

DEFENDANTS MR. MCDERMOTT'S LAST DAY IN HU (2) HE MADE IT A POINT TO STOP
AT PLAINTIFF'S CELL AND STATES THAT HE DOESN'T KNOW WHAT PLAINTIFF'S "GOT GOING ON"
BUT HE HAD NEVER DONE ANYTHING TO "PLAINTIFF. PLAINTIFF STATED THAT "IF THERE IS
ANYTHING GOING ON BETWEEN US, IT IS BECAUSE MR. MCDERMOTT HAD "MADE THE FIRST
MOVE". DEFENDANT MR. MCDERMOTT STATED "I THINK YOUR JUST GOING CRAZY FROM
BEING IN THAT CELL FOR TOO LONG." THEN CONCLUDED WITH "PREACHER KNOWS HOW TO
PLAY THE SYSTEM", AND THEN HE EXITED THE POD.

224. JULY 8TH 2017, PLAINTIFF OBSERVES CRIME SCENE RESTORATION
WORKER ENTER (2)(F) POD AFTER BEING CALLED OUT TO SANITIZE THE (2)(F) RECREATION
AREA, DUE TO AN INMATE (UNKNOWN) GASSING THE POD AREA WITH FECES.

225. JULY 8TH 2017, PLAINTIFF SUBMITTED A GRIEVANCE ALERTING THE
ALAMEDA COUNTY SHERIFF OF MISTREATMENT AT THE HANDS OF HOUSING DEPUTIES INCLUDING
DEFENDANTS MR. MCDERMOTT AND MR. LINN, THE MANY VICTIMS OF THEIR ACTIONS AND
THE LACK OF ASSISTANCE RECEIVED SINCE THEN (11/2016), DESCRIBING MANY OF THE
VIOLATIONS SUFFERED AS WELL AS THE INTENTIONS OF FILING A COMPLAINT (SEE INMATE
GRIEVANCE FORM AND RESPONSE #17-1188) (ATTACHED HERETO AS "**EXHIBIT H2 (a)**
(1) THROUGH (5), (b)") **DENIED** ON (7-27-17) BY SGT., P. KENNEDY ON GROUNDS
THAT PLAINTIFF WAS SEEKING ASSISTANCE FROM THE WRONG VENUE. PLAINTIFF ARGUES
THAT HIS GRIEVANCE, ALTHOUGH IT MENTIONS LEGAL PROCEEDINGS AND ACTIONS, WAS
CHALLENGING THE LACK OF ASSISTANCE FROM (SRJ) ADMINISTRATION TO AMELIORATE
PLAINTIFF'S LIVING CONDITIONS. APPEAL **DENIED** ON (8-4-17) BY LT., J. JOHNSON
(BADGE #1528) **CONCURRED** BY LT., P.H. SLAUGHTER (BADGE #1068).

226. JULY 8TH 2017, PLAINTIFF SUBMITTED A GRIEVANCE ALERTING THE
ALAMEDA COUNTY SHERIFF OF MISTREATMENT AT THE HANDS OF CLASSIFICATIONS DEPUTIES
INCLUDING ("JOHN DOE" DEFENDANT) MR. BOUNDS, THEIR ORCHESTRATING OF FORCE OF VIOLENCE
BY PLACING PLAINTIFF IN HOSTILE ENVIRONMENTS AND MIS HOUSING LATINO AND AFRICAN
INMATES WITH UNFAIR AND DANGEROUS RATIOS (SEE INMATE GRIEVANCE FORM #17-1191)

⟨ATTACHED AS "**EXHIBIT** C ⟨a⟩ THROUGH ⟨i⟩", SUPRA⟩ ⟨SEE INMATE GRIEVANCE
RESPONSE # 17-1191⟩ ⟨ATTACHED HERETO AS " **EXHIBIT** H2⟨C⟩"⟩ <u>DENIED</u> ON
⟨8-1-17⟩ BY SGT., P. KENNEDY ON GROUNDS THAT PLAINTIFF HAD VOICED HIS INTENT TO
LITIGATE WITH THE WRONG "VENUE" ⟨id," H2⟨C⟩ LINE ⟨1⟩"⟩. PLAINTIFF ARGUES THAT
HIS GRIEVANCE, ALTHOUGH IT MENTIONS LEGAL PROCEEDINGS AND ACTIONS, WAS CHALLENGING
THE PRACTICES OF CLASSIFICATION'S UNFAIR HOUSING METHODS THAT WHICH HAVE — AND WILL CONTINUE
TOO — LEAD TO HOSTILE LIVING CONDITIONS. APPEAL <u>DENIED</u> ON ⟨8-4-17⟩ BY LT.,
J. JOHNSON ⟨BADGE # 1528⟩ <u>CONCURRED</u> BY LT., P.H. SLAUGHTER ⟨BADGE# 1068⟩.

227. <u>JULY 8TH 2017</u> PLAINTIFF SUBMITTED AN INMATE MESSAGE REQUEST
FORM ⟨NO COPY PROVIDED⟩ REGARDING AN INMATE NAME MR. KEVIN MCCULLOM FOR
SEXUAL HARASSMENT AND HIS ATTEMPTS AT UNLOCKING HIS CELL DOOR TO ATTACK
PLAINTIFF. PLAINTIFF DOES NOT KNOW WHY THIS INMATES BEHAVIOR HAD CHANGED,
POSSIBLY DUE TO THE USE OF NARCOTICS, BECAUSE PLAINTIFF DID NOT HAVE ANY ISSUES
WITH HIM PRIOR TO THESE INCIDENTS. INMATE MESSAGE REQUEST WAS RESPONDED TO BY
HU⟨2⟩ DEPUTY MR. J. PLOSSER ⟨BADGE # 2202⟩ WHOM TOOK PLAINTIFF'S STATEMENT AND
RELOCATED MR. MCCULLOM IMMEDIATELY ⟨REFER TO PRISON RAPE ELIMINATION ACT —
PREA — REPORT NO. 17-011850⟩.

228. <u>JULY 10TH 2017</u> PLAINTIFF SUBMITTED GRIEVANCE REGARDING
⟨SRJ⟩ CONTRACTED LEGAL AID FIRM ⟨LRA⟩ LEGAL RESEARCH ASSOCIATES SPECIFICALLY
FOR THEIR CONTINUEOUS FAILURE TO PROVIDE PLAINTIFF WITH HIS REQUESTS FOR "DUECES
TECUM ⟨SUBPEONA⟩" PACKET AND / OR DEMO FORM ⟨SEE INMATE GRIEVANCE FORM AND
RESPONSE # 17-1202⟩ ⟨ATTACHED HERETO AS "**EXHIBIT** I2 ⟨a⟩, ⟨b⟩"⟩
<u>DENIED</u> ON ⟨8-1-17⟩ BY SGT., P. KENNEDY ON GROUNDS THAT PLAINTIFF'S CLAIMS
WERE "UNFOUNDED" ⟨id," I2 ⟨b⟩ PARA ⟨3⟩" DUE TO PLAINTIFF BEING PROVIDED WITH A
"PITCHESS MOTION" WHICH IS THE "REQUIRED MOTION FOR THE PRODUCTION OF A POLICE
OFFICER'S PERSONNEL RECORDS" ⟨id," I2 ⟨b⟩ PARA ⟨1⟩"⟩. PLAINTIFF ARGUES THAT HE DID
NOT REQUEST THE PRODUCTION OF A POLICE OFFICERS PERSONNEL RECORDS, RATHER HE

1  REQUESTED A "DUECES TECUM ⟨SUBPEONA FOR THE PRODUCTION OF TANGIBLE
2  THINGS ⟩" PACKET OR DEMO FORM SO THAT PLAINTIFF COULD SERVE A MOTION FOR
3  THE PRODUCTION OF HIS OWN SANTA RITA JAIL RECORDS. APPEAL **DENIED** ON
4  ⟨8-4-17⟩ BY LT., J. JOHNSON ⟨BADGE # 1528⟩ **CONCURRED** BY LT., P. H. SLAUGHTER
5  ⟨BADGE # 1068⟩.

6      **229.** JULY 10TH 2017 PLAINTIFF WAS NOT CONTACTED BY ⟨CJMH⟩ MENTAL
7  HEALTH CLINICIAN OR PSYCHIATRIST AS SCHEDULED ⟨SEE "**EXHIBIT D2** ⟨b⟩ PARA ⟨4⟩" SUPRA⟩.
8  PLAINTIFF MAKES SEVERAL INFORMAL ⟨VERBAL⟩ COMPLAINTS AND REQUESTS TO A.M. HU⟨2⟩
9  DEPUTIES REGARDING PLAINTIFF'S NEED TO SPEAK WITH THE PSYCHIATRIST AND/OR ⟨CJMH⟩
10 CLINICIAN. PLAINTIFF TOLD HE WAS NOT SCHEDULED.

11     **230.** JULY 11TH 2017 PLAINTIFF MAILS OUT ANOTHER LEGAL REQUEST
12 FORM FOR A "DUECES TECUM" SUBPEONA PACKET AND/OR DEMO FORM – MAILED TO THE
13 ⟨LRA⟩ LEGAL RESEARCH ASSOCIATES.

14     **231.** JULY 12 TH 2017 PLAINTIFF IS CONTACTED AT HIS CELL BY CLASS
15 DEPUTIES MR. WILKENSON ⟨FULL INFORMATION UNKNOWN⟩ AND ⟨"JOHN DOE" DEFENDANT⟩
16 MR. BOUNDS. PLAINTIFF ASKS TO BE MOVED TO A MORE DECENT ENVIRONMENT ⟨POD⟩.
17 PLAINTIFF WAS DENIED AND TOLD HE CAN ONLY BE HOUSED IN THE AD.-SEG. ⟨F⟩ POD
18 SETTING. PLAINTIFF REQUESTED CLASSIFICATION TO CLARIFY THE DIFFENCE BETWEEN
19 AD.-SEG. HOUSING, P/C SEGREGATION ⟨PROTECTIVE CUSTODY⟩, AND DISCIPLINARY
20 SEGREGATION. MR. WILKENSON STATED THERE WAS "NO SUCH THING AS DISCIPLINARY
21 SEGREGATION." FURTHER, PLAINTIFF STATES THAT THE ⟨2⟩⟨F⟩ POD IS BEING TREATED UNFAIRLY
22 THAN THE REST OF THE HU⟨2⟩ PODS, THAT PLAINTIFF IS BEING SUBJECTED TO LIVING IN
23 UNSANITARY CONDITIONS AND THAT DEPUTIES MISTREAT INMATES IN ⟨2⟩⟨F⟩ POD AND DO NOT
24 FOLLOW POLICIES TO MEET PLAINTIFF'S RECREATION REQUIRMENTS. PLAINTIFF WAS TOLD THAT
25 HE IS IN ⟨2⟩⟨F⟩ POD BECAUSE IT IS SPECIFICALLY FOR RECALCITRANT INMATES IN THE EVENT
26 THEY DO NOT WISH TO LOCK DOWN IN THEIR CELLS OFFICERS HAVE ROOM TO EXTRACT THE
27 INMATE. PLAINTIFF STATES THAT HE POSES NO SUCH THREAT TO STAFF OR RULES. PLAINTIFF

1  IS TOLD THAT HE WILL REMAIN WHERE HE IS AT, AND THAT SHOULD HE HAVE ANY

2  INQUIRES OR CONCERNS THAT PLAINTIFF IS TO FORWARD THEM TO MR. WILKENSON

3  THEREIN.

4      232. JULY 13TH 2017 PLAINTIFF WAS CONTACTED AT HIS CELL BY HU(2)

5  DEPUTIES AND ESCORTED TO THE HU(2) VISITING COMMON AREA FOR A SCHEDULED

6  VISIT WITH PLAINTIFF'S FATHER MR. ERIBERTO CISNEROS JR. WHILE AWAITING FOR

7  HIS VISITOR PLAINTIFF OBSERVED VISITING OFFICERS MR. MAHAFFEY AND MR. DIVINE

8  ENTER THE HU(2) VISITING AREA AND GO DOWN THE HALLWAY INTO HU(2) VESTIBULE.

9  PLAINTIFF WAITED THE ENTIRE VISIT WITH NO VISITOR AND WAS TOLD – WHEN

10  ASKED – BY VISITING TECHNICIAN THAT PLAINTIFF'S VISITOR WAS A NO SHOW. PLAINTIFF

11  WAS RETURNED BACK TO HIS CELL WITHOUT INCIDENT.

12      233. JULY 16TH 2017 PLAINTIFF PLACES A COLLECT CALL TO HIS FAMILY

13  AT WHICH TIME HE WAS INFORMED THAT HIS FATHER MR. ERIBERTO CISNEROS JR. HAD

14  INDEED COME TO VISIT PLAINTIFF ON ⟨7-13-17⟩ AND WAS DENIED ENTRY AND

15  RUDELY TOLD TO NEVER COME BACK ONTO JAIL PROPERTY. PLAINTIFF'S FATHER STATED

16  HE FELT HUMILIATED AND THAT HE IMMEDIATELY FELT SOMETHING WASN'T RIGHT AND

17  KNEW IT WAS AN ACT OF HARASSMENT, AS HE HAS VISITED PLAINTIFF A NUMBER OF TIMES.

18      234. JULY 16TH 2017 PLAINTIFF SUBMITTED A GRIEVANCE CHALLANGING

19  THE DENIAL OF PLAINTIFF'S VISIT FROM HIS FATHER ON ⟨7-13-17⟩ BY ⟨SRJ⟩ VISITING

20  DEPUTIES ⟨SEE INMATE GRIEVANCE FORM AND RESPONSE # 17-1252⟩ ⟨ATTACHED

21  HERETO AS "EXHIBIT J2 ⟨a⟩, ⟨b⟩"⟩ DENIED ON ⟨8-9-17⟩ BY SGT., P. KENNEDY

22  ON GROUNDS THAT PLAINTIFF'S GRIEVANCE IS "MERELY YOUR OPINION NOT BASED ON ANY

23  FACTUAL EVIDENCE" ⟨id," J2 ⟨b⟩ PARA ⟨2⟩"⟩, THAT AS LONG AS PLAINTIFF'S VISITORS ARE

24  VISITING IN ACCORDANCE WITH THE AGENCY'S POLICY, THEY WILL BE ALLOWED TO ENTER THE

25  FACILITY. PLAINTIFF ARGUES THAT THE JAILS POLICY STATED IN GRIEVANCE RESPONSE ⟨id," J2

26  ⟨b⟩ PARA ⟨1⟩"⟩ THAT IS NOW BEING APPLIED IS A MISUSE OF JAIL POLICY AND A LAST

27  MINUTE MANUFACTURED JUSTIFICATION TO PLAINTIFF'S VISITOR BEING DENIED ENTRY INTO

1  THE JAIL, AS PLAINTIFF'S FATHER HAD BEEN ALLOWED ENTRY INTO THE JAIL A NUMBER OF
2  TIMES PRIOR TO VISIT PLAINTIFF ALONGSIDE PLAINTIFF'S THEN GIRLFRIEND MS. SEBASTIAN
3  WITHOUT INCIDENT. THAT UNLESS PLAINTIFF'S THEN GIRLFRIEND MS. SEBASTIAN WAS
4  AN INFORMANT AND THE (SRJ) COMMANDING OFFICIALS WERE ALLOWING HER TO
5  VISIT PLAINTIFF ALONGSIDE PLAINTIFF'S FATHER AS PART OF A STING OPERATION
6  (SPECIFICALLY SURVEILLANCE), THAN THERE SHOULD BE NO REASON WHY PLAINTIFF'S
7  FATHER SHOULD BE RANDOMLY BARRED PER THIS POLICY OF BEING A FELON. PLAINTIFF
8  FURTHER ARGUES HARASSMENT DUE TO HIS COOPERATION WITH INTERNAL AFFAIRS OFFICIALS.
9  APPEAL **DENIED** ON (8-24-17) BY LT., J. JOHNSON (BADGE # 1528) **CONCURRED**
10  BY LT., P.H. SLAUGHTER (BADGE # 1068).

11       235. JULY 17TH 2017 PLAINTIFF RECEIVED A RESPONSE BACK FROM THE
12  STATE BAR OF CALIFORNIA IN LOS ANGELES — THE OFFICE OF CHIEF TRIAL COUNSEL
13  INTAKE UNIT — INQUIRY NO. 17-08853. MS. NANCY C. BROWN — DEPUTY TRIAL COUNSEL,
14  STATED PLAINTIFF'S CASE WOULD BE CLOSED FOR HAVING NO SUFFICENT EVIDENCE
15  REGARDING ATTORNEY'S FOUL PLAY AND COLLUSION WITH PROSECUTOR IN PLAINTIFF'S
16  CRIMINAL PROCEEDINGS (SEE STATE BAR LETTER OF RESPONSE) (ATTACHED HERETO
17  AS "**EXHIBIT K2** (a) (1) THROUGH (5)". PLAINTIFF PROVIDES A COPY OF THIS
18  RESPONSE LETTER TO SHOW THE COURTS THAT ATTEMPTS AT ALERTING ORGANIZATIONS /
19  AGENCIES OF ANY KIND WERE MADE IN REGARDS TO THE JAIL OFFICIALS MISCONDUCT
20  AND THE UNSANITARY CONDITIONS OF CONFINEMENT PLAINTIFF WAS SUBJECTED TOO WHILE
21  AWAITING TRIAL, AS PLAINTIFF'S DEFENSE PUBLIC DEFENDERS MR. MARIO ANDREWS
22  NOR MR. TODD BEQUETTE ASSIST PLAINTIFF IN THIS MATTER WHATSOEVER. PLAINTIFF
23  WAS DIRECTED BY MS. NANCY C. BROWN TO PRESENT PLAINTIFF'S COMPLAINTS TO THE
24  APPROPRIATE SUPERVISORS (id," K2 (a) (5) PARA (2) LINES (6-9)".)

25       236. THE ORIGINAL LETTER OF COMPLAINT TO THE STATE BAR IS ALSO BEING ENCLOSED
26  FOR INFORMATIONAL PURPOSES BUT TO BE ENTERED AS EVIDENCE RESPECTIVELY AS IT PROVIDES INFORMATION
27  RELEVANT TO PLAINTIFF'S CLAIMS (SEE LETTER TO STATE BAR OF CALIFORNIA )

BLANK PAGE

BLANK PAGE

⟨Attached hereto as "EXHIBIT L2⟨a⟩,⟨1⟩ through ⟨12⟩"⟩.

**237.** <u>July 17th 2017</u> Plaintiff is escorted to the ⟨2⟩ East dining area by HU⟨2⟩ Deputies Mr. L. Thomas ⟨Badge #2344⟩ and Mr. K. Jones ⟨Badge #2128⟩ whom both remained on stand by while Plaintiff was to meet with ⟨CJMH⟩ Social worker Ms. Jessica Osmond. Plaintiff requested interview to discuss his feelings of anxiety, depression, sleep deprivation, paranoia, and mood swings, as well as his conditions of confinement, as these conditions were in part triggering and causing the said feelings. Ms. Osmond stated that Plaintiff's description of symptoms did not prove the need for medication, Plaintiff however, would still be referred to the HU⟨2⟩ Psychiatrist for assessment. Plaintiff attempted to talk of his conditions of confinement, what Plaintiff has been through ⟨gassings⟩ and what Plaintiff still goes through ⟨harassment by Deputies and inmates⟩, to give Ms. Osmond a better understanding why Plaintiff is experiencing mental health issues. Ms. Osmond stated she "could not get into that". Plaintiff had then asked her to please view some of his grievance's and journal entries, which Plaintiff had brought with him to the interview⟩ however, Ms. Osmond stated she is not allowed to look at any documents". Plaintiff declined further discussion with Ms. Osmond and was then escorted back to his cell without incident.

**238.** <u>July 17th 2017</u> Plaintiff was scheduled for a dental appointment ⟨see "EXHIBIT C2⟨b⟩ para. ⟨1⟩", supra⟩ however, Plaintiff was again denied transportation to the clinic, nor given an explanation as to why. Plaintiff submitted an Inmate Message Request to HU⟨2⟩ Deputies as the Grievance Unit had directed Plaintiff to do ⟨id, "C2⟨b⟩ para. ⟨2⟩"⟩ and received a response from HU⟨2⟩ Deputy Mr. J. Frye ⟨Badge #2290⟩ on ⟨7-24-17⟩ stating there is no scheduled appointment for Plaintiff ⟨see Inmate Message Request and Response⟩⟨Attached hereto as "EXHIBIT M2"⟩.

**239.** <u>July 17th 2017</u> Plaintiff observes Dept. of Justice officials

CIVIL RIGHTS COMPLAINT ⟨§1983⟩                    PAGE 97 OF 162

enter (2)(F)Pod, a total of 3 officials entered the pod escorted by Deputy Mr. Solvek (full information unknown) and there were approximately another 7 Dept. of Justice ("DOJ") officials who remained outside of the pod in the HU(2) East dining area. These officials arrived approximately 10:30a.m., at which time Plaintiff spoke with a female official (information unknown) who he had called over to his cell. The female official stated she was from the (DOJ) and Plaintiff then told her of the conditions of confinement he was subjected to and the harassment/retaliation problems he was having with deputies. The female official then asked for Plaintiff's name, at which time Plaintiff gave her his full name, and the female official then stated "oh, your Mr. Febo, I know who you are. I received your letter (unsure of which letter she was referring to), this is why we chose to tour this pod, to personally see the conditions". Plaintiff told her that he was grateful that she was looking into this. The female official concluded that her Dept. would be in town investigating the jail for 1 week. Plaintiff stated thank you and she exited the pod.

240. July 19th 2017 Plaintiff observes officials from the (DOJ) once again enter (2)(F)Pod, a total of 2 female officials (information unknown) who were escorted by officers Mr. K. Klinck (full information unknown) Mr. C. Fiore (full information unknown) and Mr. Hammod (full information unknown). Plaintiff again observes the (DOJ) officials speaking with inmates and taking notes. The (DOJ) officials spoke specifically to inmates Mr. James Duckett (2)(F)(2) and Mr. Jeffrey McMasters (2)(F)(9) before exiting the pod. Approximately 7 other (DOJ) officials were observed outside of the pod in the (2) East dining area, whom were also observed entering into other pods as well. This observation took place from approximately 1:30p.m to 3:45 p.m..

241. July 22nd 2017 Plaintiff observes, at approximately 2:00p.m., a cleaning crew which consisted of a number of minimum security inmates enter

(2)(F)POD AND PRESSURE WASH THE POD SHOWERS. THESE INMATES WERE ACCOMPANIED BY DEPUTIES MR. A. DUENAS AND MR. W. JOHNSON. IT IS TO PLAINTIFF'S KNOWLEDGE THAT ALL PODS IN HU(2) WERE DONE THE SAME.

242. JULY 24TH 2017 PLAINTIFF OBSERVES THE SAME CLEANING CREW OF INMATES AND DEPUTIES PRESENT ON (7-23-17) ENTERING (2) EAST DINING AREA AND SETTING UP TO PROFESSIONALLY SHAMPOO ALL HU(2) PODS CARPETS. THE (2)(F) POD DOES NOT HAVE A CARPET. IT IS TO PLAINTIFF'S KNOWLEDGE THAT ALL PODS IN HU(2) WERE SHAMPOO'D ON THIS DAY AND (7-25-17). IT IS AT THIS TIME PLAINTIFF THOUGHT (2)(F) POD WOULD RECEIVE A PROFESSIONAL CLEANING WHICH WAS MUCH NEEDED, HOWEVER, DID NOT. THE FAILURE TO CREATE AND MAINTAIN A PRESSURE WASHING ROUTINE AND/OR A ROUTINE CLEANING METHOD OF ANY TYPE IN THE (2)(F) POD DURING THIS TIME WAS A SUCCESS AT ALLOWING THE (2)(F) POD TO BECOME AN INCUBATOR FOR BACTERIA WHICH IS A HAZARD AND UNSANITARY AND FAILING TO MEET HEALTH AND SAFETY CODE REQUIREMENTS. THESE ARGUMENTS CONTINUED TO GO UNRESPONDED TOO.

243. JULY 24TH 2017 PLAINTIF OBSERVES A CHANNEL 2 FOX NEWS BROADCASTING - AT APPROXIMATELY 10:00 P.M. - REGARDING (SRJ) MENTAL HEALTH HOUSING AND TREATMENT, HOWEVER, NOTHING ON THE MISTREATMENT OF MENTAL HEALTH INMATES NOR THE ABUSE ALLEGATIONS RELATED TO THE MISTREATMENT OF MENTAL HEALTH INMATES BY THE DEFENDANTS MR. MCDERMOTT AND MR. LINN.

244. JULY 25TH 2017 PLAINTIFF RECEIVES MAIL FROM THE (LRA) LEGAL RESEARCH ASSOCIATES. NO "DUECES TECUM" (SUBPEONA) PACKET OR DEMO FORM. PLAINTIFF, THUS FAR, HAS BEEN DENIED THE OPPERTUNITY TO SUBPEONA THE (SRJ) CLASS. RECORDS AND HOUSING RECORDS OF PLAINTIFF FOR HIS CRIMINAL PROCEEDINGS IN THE ALAMEDA COUNTY SUPERIOR COURT. PLAINTIFF'S COURT APPOINTED ATTORNEY'S HAVE FAILED TO CARRY OUT PLAINTIFF'S REQUESTS THUS PROMPTING PLAINTIFF TO FILE A MARSDEN MOTION AND DECLARATION IN THE HAYWARD SUPERIOR COURTROOM - DEPT. NO. 513 - WITH HONORABLE JUDGE MR. DAN GRIMMER (NOW RETIRED) ON (6-6-17). PLAINTIFF HAS ATTACHED A

1 COPY OF HIS MOTION FOR SUBSTITUTE OF COUNSEL FOR INFORMATIONAL PURPOSES BUT
2 TO BE ENTERED AS EVIDENCE RESPECTFULLY AS IT PROVIDES INFORMATION RELEVANT TO
3 PLAINTIFF'S CLAIMS (SEE MOTION AND ATTACHEMENTS) (ATTACHED HERETO AS
4 "EXHIBIT N2 (a)(1)(2),(b)(1)THROUGH(4)"). MOTION AND ATTACHMENTS
5 CERTIFIED BY ALAMEDA COUNTY HAYWARD SUPERIOR COURT CLERK DEPUTY K.K.SANCHEZ
6 (6-9-17). THE (LRA)TRACKING NO. 1555 / NO. 1556.

7     245. JUNE 2017 THROUGH OCTOBER 2017 PLAINTIFF FOUND IT DIFFICULT
8 BEING HOUSED IN THE (2)(F)POD. HU(2)DEPUTIES WERE CONSTANTLY MOVING THE
9 MOST DIRTIEST, LOUDEST, UNSANITARY, UNCIVILIZED, AND INDECENT INMATES INTO THE
10 (2)(F)POD, THIS INCLUDES DRUG INDUCED, HOMOSEXUAL AND SEXUAL PREDATOR INMATES.
11 PLAINTIFF FOUND IT HARD TO SLEEP, PARANOIA AND ANXIETY WERE OVERWHELMING AND THE
12 UNSANITARY CONDITIONS TO PLAINTIFFS IMMEDIATE AREA (CELL) WERE CONTINUOUS (CAUSED BY
13 OTHER INMATES). IT IS DURING THIS TIME THAT HU(2)DEPUTIES BEGAN TO OPENLY DISPLAY VIOLATIONS
14 TO PLAINTIFF'S RECREATIONAL/LAUNDRY ENTITLEMENTS. PLAINTIFF MADE ATTEMPTS TO
15 GRIEVE THESE MANY ISSUES OVER THIS TIME SPAN.

16     246. JULY 29TH 2017 PLAINTIFF SUBMITTED A GRIEVANCE REGARDING THE
17 LACK OF A SUFFICIENT YARD PROGRAM, THE DENIAL OF YARD PRIVILEGES IN THE MONTH OF
18 JULY (2017) AND PLAINTIFF'S CELL TIME EXCEEDING UP TO (80)HOURS BETWEEN POD/
19 RECREATION OPPERTUNITIES (SEE INMATE GRIEVANCE FORM AND RESPONSE #17-1350)
20 (ATTACHED HERETO AS "EXHIBIT O2(a),(b)") DENIED ON (8-9-17) BY
21 SGT., P. KENNEDY ON GROUNDS THAT "THE TITLE (15), DOES NOT DIFFERENTIATE
22 BETWEEN YARD TIME AND POD TIME; THEY ARE BOTH CONSIDERED RECREATION" (id," O2(b)
23 PARA (1)") AND THAT A MINIMUM OF (3) THREE HOURS OF RECREATION IS TO BE
24 DISTRIBUTED OVER A PERIOD OF (7)SEVEN DAYS. PLAINTIFF IS SAID TO HAVE RECEIVED (3)
25 HOURS OF POD TIME EACH WEEK BETWEEN "(6-25-17) AND (7-22-17)" (id," O2
26 (b) PARA (2)") THUS THERE IS NO VIOLATION. PLAINTIFF ARGUES THAT SOME KIND OF
27 YARD ROUTINE MUST BE IMPLEMENTED TO ENSURE HU(2)DEPUTIES DO NOT PURPOSEFULLY